THE UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

| | |
|---|---|
| Jurisdiction of the Armed Forces and Chaplaincy,<br><br>*Plaintiff,*<br><br>v.<br><br>Anglican Church in North America,<br><br>*Defendant.* | Case No.: 2:25-cv-12848-RMG<br><br>**VERIFIED COMPLAINT FOR PRELIMINARY INJUNCTIVE RELIEF AND DAMAGES**<br><br>**Jury Trial Demanded for Legal Claims** |

Plaintiff JURISDICTION OF THE ARMED FORCES AND CHAPLAINCY ("Plaintiff" or the "Jurisdiction") by and through its undersigned counsel, brings this action against Defendant ANGLICAN CHURCH IN NORTH AMERICA ("Defendant" or "ACNA") for temporary, preliminary, and permanent injunctive relief and damages under the Trademark and unfair competition laws of the United States and the State of South Carolina for violations of Sections 32 and 43(a) of the Lanham Act, 15 U.S.C. §§ 1114(1) and 1125(a), and the South Carolina Unfair Trade Practices Act, S.C. Code Ann. 39-5-10 *et seq*.

## SUMMARY OF COMPLAINT

1. Plaintiff, an Alabama church corporation, has invested years of effort, and millions of dollars, to become the entity designated by the U.S. Department of War and other agencies to endorse Anglican Chaplains for service in military and civilian agencies. Other Anglican provinces and dioceses, except for the Episcopal Church USA, may submit individuals for consideration to become Anglican Chaplains through transfer to Plaintiff's jurisdiction. Plaintiff owns three valuable trademarks that identify it and its services.

2. Defendant, the Anglican Church in North America ("ACNA"), has used Plaintiff's

1

registered trademarks to interfere with Plaintiff's relationships with other Anglican church institutions and chaplains. On September 21, 2025, Defendant staged a failed corporate takeover, claiming, without authority, to suspend Plaintiff's corporate president and designating a stranger to exercise his functions. When Plaintiff terminated its relationship with Defendant the following day, ACNA contacted Plaintiff's governmental and civilian partners to induce them to end their relationships with Plaintiff. ACNA also published reports accessible to all of the hundreds of chaplains endorsed by Plaintiff, using Plaintiff's registered marks while deprecating Plaintiff and falsely claiming that it had assumed Plaintiff's power to endorse Anglicans for chaplaincy services. In the past two weeks, ACNA's aggressively hostile public relations campaign has significantly harmed Plaintiff's good reputation. ACNA's misrepresentations and use of Plaintiff's marks have induced approximately half of Plaintiff's chaplains, and at least two thirds of Plaintiff's affiliated missions, chapels and parishes, to end their affiliation with Plaintiff.

3.     The instant action for trademark infringement, unfair competition and injunctive relief seeks to halt Defendant's attempt to destroy Plaintiff and usurp its ministry.

## **PARTIES**

4.     Plaintiff JURISDICTION OF THE ARMED FORCES AND CHAPLAINCY is a not-for-profit corporation formed and validly existing in good standing under the laws of the State of Alabama. Its principal office for the conduct of business is located at 101 Tony Holmes Drive, Pelham, Alabama 35124. *See* Exhibit A attached hereto and incorporated herein.

5.     Defendant ANGLICAN CHURCH IN NORTH AMERICA is a not-for-profit corporation formed and validly existing in good standing under the laws of the State of Pennsylvania. Its principal office for the conduct of business is located at 440 Whilden Street, Mt. Pleasant, South Carolina, which is the Office of its Archbishop, who also resides in South Carolina.

## JURISDICTION AND VENUE

6.      This court has subject matter jurisdiction over the instant case pursuant to 28 U.S.C. § 1332 (Diversity of Citizenship) because the parties are of diverse citizenship, Plaintiff is from out of state and Plaintiff's damages exceed the jurisdictional minimum, and pursuant to 28 U.S.C. § 1338 (Trademarks and Unfair Competition) and 15 U.S.C. §1121 Trademarks and Unfair Competition) because this action seeks injunctive relief, damages, profits, costs, attorneys fees and statutory damages under Sections 32 and 43(a) of the Lanham Act.  This Court has supplemental jurisdiction under 28 U.S.C. § 1367 over Plaintiff's claim for a violation of the South Carolina Unfair Trade Practices Act ("SCUTPA") because it is so related to the federal claims in the action that they form part of the same case or controversy.

7.      Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(1) because the Defendant resides in the State of South Carolina, and pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events giving rise to the claim occurred in the District of South Carolina.

8.      Under Local Rule 3.01(A)(1) (D.S.C.), venue is proper in the Charleston Division of the District Court of South Carolina because a substantial part of the events giving rise to the claims in this action occurred in Charleston, South Carolina.

## ALLEGATIONS COMMON TO ALL CLAIMS

9.      The United States Constitution forbids the government to engage in religion, but our national heritage encourages religious people to serve in government, including in military service. The military services and other government institutions, when appropriate, are permitted to employ chaplains to provide religious worship services and instruction to active-duty personnel and others. However, government officials are not allowed to determine on their own who is

qualified to serve as a chaplain. They are required by law to rely upon ecclesiastical endorsing organizations to train, qualify and supervise chaplains.

*Plaintiff has endorsed Anglican Chaplains since 2007*

10.     Plaintiff was founded in 2007 as an independent religious organization by Lieutenant Colonel (USAF) (Ret.) Derek L.S. Jones (now Bishop Jones) and others for the purpose of providing a spiritual residence, training and oversight to Anglican Chaplains ™ who serve in the military and other occupations, and to endorse chaplains from the Anglican tradition for Government service. Plaintiff's original name was The Deanery for the Armed Forces and Chaplaincy. Plaintiff also oversees churches established by them and under their oversight.

11.     Plaintiff was created as part of the Convocation of Anglicans in North America ("CANA"), which was in turn part of the Church of Nigeria (Anglican Communion). Bishop Jones has been Plaintiff's head from its inception.

12.     Plaintiff and CANA both owed their existence to foundational disagreements over theological and social issues within the Episcopal Church in the United States. CANA was founded in 2005 to provide oversight to orthodox Anglican churches for African immigrant communities in North America and to other congregations that had left the Episcopal Church over these disagreements.

13.     After the schism in the Episcopal Church, former Episcopal clergy who wished to serve as Chaplains could no longer in good conscience qualify for endorsement in government service by the Episcopal Church. Bishop Jones founded Plaintiff in response to this need.

14.     Plaintiff has been providing endorsement of Anglican chaplains as an essential element of its purpose and function since its founding in 2007.

15.     In 2009, Plaintiff was approved by the Armed Forces Chaplaincy Board as the

ecclesiastical endorsing organization for Anglican chaplains serving the U.S. Department of Defense.

16.    ACNA was founded in 2009, as a new Anglican entity with which the Convocation of Anglicans in North America became a ministry partner. At that time, ACNA joined Plaintiff's clientele of Anglican provinces and dioceses from which it endorsed Chaplains for government chaplaincy service.

17.    The Anglican Church, as whole, consists of dozens of individual religious organizations, each autonomously governed, which credit The Church of England as part of their spiritual heritage. The creation and dissolution of the British Empire gave rise to many national churches, including the Church of Nigeria. In North America, congregations withdrawing from the Episcopal Church founded multiple Anglican church groupings, of which ACNA was only one among many. In Anglican church parlance, Anglican church groupings have autonomous existence as "dioceses" or "provinces," and from time to time such groups have shifted, and continue to shift, their alliances and affiliations with each other.

18.    In the past, Plaintiff maintained affiliations with the Church of Nigeria (Anglican Communion) and the Defendant. Currently Plaintiff is an independent ecclesiastical entity unaffiliated with any other diocese or province of the Anglican Church.

19.    In 2007, Bishop Jones was first consecrated as an Anglican bishop working for the Church of Nigeria (Anglican Communion) (but not as a Church of Nigeria bishop) and CANA.

20.    In the same year, CANA first called upon Bishop Jones to become an endorser of chaplains who work for the U.S. Government.

21.    In 2010, Bishop Jones was received into the Church of Nigeria (Anglican Communion) and CANA, and he assumed the title "Bishop of the Armed Forces and Chaplaincy."

22.     In 2012, the Deanery became known as the Diocese of the Armed Forces and Chaplaincy. Plaintiff expanded its scope of its activity to provide endorsement of Anglican Chaplains who were from Anglican provinces and dioceses outside of CANA.

23.     In 2013, Plaintiff adopted the name Special Jurisdiction of the Armed Forces and Chaplaincy.

*Plaintiff's Incorporation and Trademark Ownership*

24.     In 2016, Plaintiff incorporated in Alabama under the name "Special Jurisdiction of the Armed Forces and Chaplaincy." As a not-for-profit corporation and church, Plaintiff is tax exempt under Section 501(c)(3) of the Internal Revenue Code. Plaintiff is governed by a board of directors called its Executive Committee.

25.     From 2012 to the present, Plaintiff has provided ecclesiastical endorsement services to the ACNA and other Anglican provinces and dioceses solely as an independent supplier of such services to its clients.

26.     Pursuant to regulations governing the endorsement of chaplains to serve in U.S. federal governmental institutions, Plaintiff is the entity authorized to endorse Anglican Chaplains, including chaplains referred to Plaintiff from the ACNA as well as other dioceses, bishoprics, and provinces of the Anglican communion.

27.     As an element of its relationship as ecclesiastical endorser, in most cases, Plaintiff receives "letters dimissory" from each of the provinces and dioceses, including ACNA, that transfer the canonical residency of the chaplain candidates to Plaintiff.

28.     From ACNA's founding in 2009 until now, no members of ACNA's churches became authorized to serve as Anglican Chaplains in government service except through transfer to Plaintiff's jurisdiction and with Plaintiff's endorsement.

29.     From 2013 until February 1, 2024, Plaintiff's ecclesiastical and corporate name was "Special Jurisdiction of the Armed Forces and Chaplaincy."

30.     From 2014 until September 22, 2025, Plaintiff authorized ACNA to use its name (or former name), "Special Jurisdiction of the Armed Forces and Chaplaincy," to refer to Plaintiff's ministry, although Plaintiff did not approve of Defendant's uses of the phrase in its draft Canons.

31.     In 2020, Plaintiff applied to the US Trademark and Patent Office to register the name "Jurisdiction of the Armed Forces and Chaplaincy" as a service mark (the "Service Mark") and to register as trademarks the phrase "Anglican Chaplains"™ (the "Trademark") and Plaintiff's logo containing the phrase "Anglican Chaplains Ad Gloriam Dei"™ (the "Trademarked Logo").

32.     In 2024, the USPTO approved Plaintiff's Service Mark and Trademark applications and granted registration of the three requested marks. A copy of the USPTO's online registry page showing Plaintiff's marks is attached as Exhibit B. In the same year, Plaintiff changed its corporate name to "Jurisdiction of the Armed Forces and Chaplaincy."

*Plaintiff was a substantial enterprise on September 21, 2025*

33.     Plaintiff's chaplaincy endorsement function is a corollary to its existence as an Anglican church entity, which primarily performs sacramental and religious ministry for its parishes, missions, and chapels throughout the United States. As of September 21, 2025, Plaintiff had more than thirty such churches, missions, and chapels for military and for non-military membership in the US and abroad.

34.     As of September 21, 2025, Plaintiff was the ecclesiastical endorsing organization for numerous employers of Anglican Chaplains in a variety of governmental and non-governmental institutional settings including hospitals, hospices, and the armed forces, as well as correctional and educational institutions, and in a variety of other settings around the world.

Plaintiff endorses Anglican Chaplains who provide ministry on university campuses, on Naval warships with Sailors and Marines, with U.S. Special Forces in Africa, in hospitals and correctional facilities, with American Soldiers at war, at U.S. Air Force Bases in Europe and Asia, internationally to other Anglican provinces, at rodeos, with bikers, with Civil Air Patrol cadets, in cities within refuse dumps in Latin America, and more.

35.     Plaintiff supplies Anglican Chaplains to serve the United States Armed Forces; the U.S. Veterans Administration; the U.S. Department of Justice; Bureau of Prisons; Secret Service; as well as a host of non-governmental agencies who require their chaplains to have ecclesiastical endorsement.  As a "Form 100" endorsing agency with the Department of Defense, Plaintiff is the endorsing agency for chaplains who profess membership as Anglicans. Thus, as a matter of employer (including governmental) regulation, Plaintiff must accept and serve chaplains who come from all Anglican provinces, dioceses, and other Anglican religious institutions, including ACNA.

36.     As of September 21, 2025, Plaintiff was the ecclesiastical endorsing organization for nearly three hundred Anglican Chaplains in the employment of U.S. Government agencies and other organizations. In addition, Plaintiff was providing (and on information and belief, still provides) ecclesiastical endorsements for chaplains from, *inter alia*, the Church of Nigeria; the Church of Ghana; the Church of Kenya; and the Reformed Episcopal Church. In providing these endorsements, Plaintiff acts as a contractor for Anglican dioceses and provinces, including ACNA.

37.     Plaintiff has been a great success story among the Anglican church as it built Anglican chaplaincy from a single chaplain in 2007 to a corps of more than 300 Anglican Chaplains in 2025. As of September 21, 2025, Plaintiff benefited from annual income, mainly from the gifts and tithes of its membership, of approximately $1,200,000.

*ACNA's Campaign to Usurp Plaintiff and its Essential Relationships*

38.    On September 21, 2025, ACNA interfered with the governance of Plaintiff by purporting to "inhibit" the activities of Plaintiff's President and ecclesiastical head, Bishop Jones. The inhibition was designed to enable ACNA to usurp Plaintiff's chaplain-endorsement authority and take over control of Plaintiff's global network of parishes, missions and chapels. This interference was and is unacceptable to Plaintiff and Plaintiff made this clear to ACNA.

39.    On September 21, 2025, Stephen Wood, acting as Archbishop of the Defendant, sent a letter "to the Chaplains Domiciled in or Licensed by the Special Jurisdiction of the Armed Forces and Chaplaincy" (the "9/21 Wood Letter"). A copy of the 9/21 Wood Letter is attached as Exhibit C. On information and belief, Wood sent the 9/21 Wood letter to all chaplains who are currently endorsed by the Plaintiff. About 80% of the Anglican Chaplains who are endorsed by the Plaintiff are canonically resident (members of, or domiciled) in the JAFC while 20% are merely licensed to function as chaplains while canonically resident elsewhere.

40.    In the 9/21 Wood Letter, ACNA represented to the Anglican Chaplains and the wider world that Bishop Jones had been "inhibited . . . from the exercise of his ministry" and that "the Vicar General of the Special Jurisdiction will serve as the interim endorser of chaplains."

41.    ACNA had no authority to designate its Vicar General to serve as an endorser of chaplains. Plaintiff is the authority for the endorsement of Anglican Chaplains, by designation from the U.S. Government. ACNA possesses no "endorsement" authority from any governmental or civil entity. ACNA's 9/21 Wood Letter interfered with Plaintiff's endorsing relationships, both with the Anglican Chaplains and with the agencies with whom the Anglican Chaplains serve.

42.    Plaintiff's governing documents specify that Bishop Jones is the officer responsible for exercising Plaintiff's authority to endorse chaplains; and in the event Bishop Jones is

unavailable to do so, the authority is to be exercised by Plaintiff's Bishop Coadjutor or Bishop Suffragan (of which Plaintiff possesses two, neither of whom is ACNA's "Vicar General").

43.    Eight persons are directors and members of Plaintiff's Executive Committee: Lt. Col. David van Esselstyn (USMC Retired), Chairman; Colonel Laura B. Strange (USA, Retired), Recording Secretary and Chaplain; Dr. William Crunk; Colonel Randy Puhrmann (USAF, Retired); The Venerable David James Baker; Bill Carroll; Joseph M. Saloom, Esq.; and Samantha Vance. Bishop Jones is Plaintiff's President.

44.    On September 22, 2025, Archbishop Wood sent his misleading information to "all of the SJFAC chaplains for whom the province has contact information, with the request that they forward this communication to other chaplains who are Domiciled in or Licensed by the Special Jurisdiction for the Armed Forces and Chaplaincy." On information and belief, ACNA intended this communication to be circulated to all Anglican Chaplains endorsed by the Plaintiff.

45.    On September 22, 2025, in a letter (the "Termination Letter") signed by Executive Committee Chairman David van Esselstyn, Plaintiff notified ACNA "that the Jurisdiction of the Armed Forces and Chaplaincy is terminating its affiliation with the ACNA . . . ." The letter went on to instruct ACNA that "You may not meet nor contact our member Chaplains or use the trademark Anglican Chaplains." A copy of the Termination Letter is attached as Exhibit D.

46.    On September 23, 2025, Plaintiff's lawyers sent a "cease and desist letter" to the ACNA. *Inter alia*, Plaintiff instructed ACNA not to use its registered marks, including without limitation its service mark "Jurisdiction of the Armed Forces and Chaplaincy" or its trademark "Anglican Chaplains," and not to interfere with the contracts and business relationships of Plaintiff and Bishop Jones. ACNA was instructed specifically not to use the phrase "Special Jurisdiction of

the Armed Forces and Chaplaincy" or any variation of it in any publication. A copy of the "cease and desist letter" is attached as Exhibit E.

47.     ACNA has flatly disregarded Plaintiff's warnings and has continued to appropriate Plaintiff's protected marks, usurp Plaintiff's ecclesiastical and commercial identity, and disparage Plaintiff and its leadership. ACNA's communications are designed to mislead the general public, including Plaintiff's members and persons with whom Plaintiff has longstanding official relations and contracts, into believing that ACNA has replaced Plaintiff as the endorsing agency for Anglican Chaplains working for the U.S. Government and others around the world.

48.     Until September 21, 2025, ACNA had never used the phrase "Special Jurisdiction of the Armed Forces and Chaplaincy" except to refer to Plaintiff and its ministry to Anglican Chaplains, and Plaintiff never authorized ACNA to use the phrase in any other way.

49.     Plaintiff's termination of affiliation with ACNA on September 22, 2025, did not alter its status as endorsing entity for Anglican Chaplains, nor did it affect Plaintiff's willingness, ability or commitment to continue to endorse chaplains referred by the ACNA (and specifically by its member dioceses). However, it revoked from ACNA any appearance of authority to use Plaintiff's service-marked name, "Jurisdiction of the Armed Forces and Chaplaincy," and Plaintiff's prior corporate name, "Special Jurisdiction of the Armed Forces and Chaplaincy."

50.     Nevertheless, on or about September 22, 2025, ACNA began to use Plaintiff's former name, "Special Jurisdiction of the Armed Forces and Chaplaincy" together with Plaintiff's trademarked logo in a vigorous public relations campaign designed to mislead the general public, including without limitation other Anglican religious institutions, U.S. Government agencies, and Plaintiff-endorsed chaplains, into believing that ACNA had assumed control of Plaintiff and taken charge of Plaintiff's governmentally-licensed function of endorsing Anglican Chaplains.

51.    On September 22, 2025, Archbishop Wood sent a letter (the "9/22 Wood Letter") to Colonel David Wake, the Executive Director of the Armed Services Chaplains Board, one of Plaintiff's most important governmental contacts. In the letter, Wood told the AFCB that "[t]he ACNA's former endorser, Bishop Derek Jones, has withdrawn from the ACNA and thus can no longer serve as the Ecclesiastical Endorser for ACNA Chaplains." This statement contained two misrepresentations: first, that Bishop Jones was personally the designated ecclesiastical endorser of Anglican Chaplains (it's the Plaintiff, not its Bishop), and second, that through Bishop Jones, the Plaintiff could no longer endorse chaplains of ACNA (which it can and, if requested, must continue to do). A copy of the 9/22 Wood Letter is attached as Exhibit F.

52.    The 9/22 Wood letter implicitly acknowledged that ACNA's decision to discontinue accrediting ACNA member chaplains through the Plaintiff left it, for a time, without a path for endorsement of ACNA chaplains: it represented to the AFCB that "ACNA is in the process of appointing a new Ecclesiastical Endorser . . . to ensure continuity of pastoral care and compliance with Department of Defense requirements."

53.    While ACNA was acknowledging to the AFCB that it needed to locate a new "endorser," it was still knowingly misrepresenting to the general public, through the 9/21 Wood Letter, that its Vicar General "will serve as the interim endorser of [*all*] chaplains."

54.    As a result of the Wood 9/22 Letter, on September 24, 2025, Colonel Wake provisionally changed Plaintiff's relationship with the AFCB to "'pending status' for reapplication once a suitable Religious Organization is identified and provides written authority to the Jurisdiction of Armed Forces and Chaplaincy to act on their behalf." A copy of Colonel Wake's September 24 letter is attached as Exhibit G.

55.     After corresponding with Plaintiff, the AFCB rescinded its September 24 notice and restored Plaintiff's ecclesiastical endorsing organization status on September 26.  A copy of the AFCB September 26 rescission letter is attached as Exhibit H.

56.     On September 23, 2025, ACNA published a letter (the "9/23 Wood Letter") promoting the "Special Jurisdiction of the Armed Forces and Chaplaincy" and declaring that "[t]he Special Jurisdiction, *under which the chaplains serve*, continues to exist within the ACNA regardless of Bishop Jones's withdrawal or the withdrawal of any entities under his control." (emphasis added). A copy of the 9/23 Wood Letter is attached as Exhibit I.

57.     The statements in the 9/23 Wood Letter were materially false. Anglican Chaplains serve under the authority of the ecclesiastical endorsing organization that endorses them. By designation of the Armed Forces Chaplaincy Board, the United States Veterans Administration, and numerous other government and non-Governmental departments and agencies, Plaintiff, not ACNA, has been designated as the endorsing organization for Anglican Chaplains.

58.     ACNA's assertion that Anglican Chaplains "serve" ACNA through its purportedly continuing "Special Jurisdiction of the Armed Forces and Chaplaincy" was false: all Anglican Chaplains "serve" under the authority of Plaintiff as they are required to do to receive Plaintiff's endorsement. ACNA has never been designated as an ecclesiastical endorsing organization, no recognized Anglican Chaplains "serve" it in their capacity as chaplains, and absent institutional designations which it lacks, it has no power to confer ecclesiastical endorsements for institutional chaplaincy.

59.     As a legacy of its former relationship with Plaintiff, ACNA has an empty space in its governing documentation that still uses Plaintiff's name to refer to a ministry—Plaintiff's ministry of institutional chaplaincy—which ACNA can no longer claim to perform. Yet ACNA's

documentation still holds itself out as having a "Special Jurisdiction of the Armed Forces and Chaplaincy" governed by a "Bishop of the Armed Forces and Chaplaincy." ACNA is using Plaintiff's name and Bishop Jones's title to recruit chaplains to ACNA for a chaplaincy endorsement service that it cannot deliver.

60.     On September 25, 2025, ACNA published a new press release (the "9/25 Release") on its website announcing that it had deposed Bishop Jones from his title as Bishop of the Armed Forces and Chaplaincy and elected Bishop Jerome R. Cayangyang to replace him. It announced that "Bishop Cayangyang will provide leadership, pastoral care, and oversight for Anglican clergy serving as chaplains in the United States Armed Forces, federal and state agencies, hospitals, and other specialized institutions to ensure these chaplains remain connected to the wider church in their unique callings and provide spiritual covering for their families and ministries." These functions are a part of what Plaintiff does for all its chaplains including those who are affiliated with ACNA. A copy of the 9/25 Release is attached as Exhibit J.

61.     ACNA's actions did not, in fact, depose Bishop Jones from his bishopric as Bishop of the Armed Forces and Chaplaincy. He continues in that role as head of Plaintiff. But by purporting to give Bishop Cayangyang an identical title, ACNA appropriated the mantle of Plaintiff's head and cast Bishop Jones into ill repute.

62.     The 9/25 Release appeared to concede that ACNA had misrepresented its authority to endorse its own chaplains when it noted that ACNA had contacted the armed forces, the Department of Veterans Affairs and the Federal Bureau of Prisons about its intention to find another entity to replace Plaintiff as the Ecclesiastical Endorsing Organization for ACNA-affiliated chaplains, and had received an assurance from Colonel Wake that no chaplain should be "concerned about their endorsement or ability to serve the Armed Forces" in the interim.

63. Most recently, on September 26, 2025, ACNA published a letter from Bishop Phil Ashey (the "Ashey Letter") which falsely asserted that ACNA had created Plaintiff (referring to Plaintiff's name from 2013 to 2024). The Ashey Letter also contained the following statement: "Bishop Jones has no authority . . . to declare that all ACNA Chaplains in the SJAFC are no longer a part of the ACNA." But this was a misrepresentation: Bishop Jones never made any such declaration. To the contrary, as the endorser of Anglican Chaplains, Plaintiff considers itself duty-bound to continue to endorse ACNA-related chaplains. A copy of the Ashey Letter is attached as Exhibit K.

64. ACNA's campaign to replace Plaintiff has caused confusion among Plaintiff's partners, and on information and belief has already harmed Plaintiff by reducing Plaintiff's income by at least fifty percent and causing 25 of Plaintiff's approximately 30 missions, parishes and chapels to disaffiliate with Plaintiff.

65. ACNA's campaign to replace Plaintiff is also harming Plaintiff by causing Anglican Chaplains to disassociate with Plaintiff. On information and belief, ACNA's campaign of unfair competition has induced at least one hundred Anglican Chaplains (out of approximately 300) to cut ties with Plaintiff, with continuing losses.

66. Plaintiff will need to cut its staff as a direct result of ACNA's attacks on Plaintiff's reputation and its raid on Plaintiff's membership.

### COUNT I – Infringement of Registered Service Mark

67. Plaintiff repeats and realleges herein every allegation stated above in Paragraphs 1 through 66, which are incorporated as if fully set forth herein.

15

68.     Plaintiff is engaged in the ministry of providing endorsements of individual chaplains who follow the Anglican form of Christian religion to serve with government agencies and other institutions that require chaplains to have an ecclesiastical sponsor.

69.     Plaintiff's current name "Jurisdiction of the Armed Forces and Chaplaincy" (the "Service Mark") has been duly registered with the United States Patent and Trademark Office as a protected service mark with USPTO serial number 90265640.

70.     The term "Anglican Chaplains" is similarly a trademarked term, with USPTO serial number 87202112. The Trademarked Logo has been trademarked, with USPTO serial number 87202220.

71.     Plaintiff adopted the Service Mark to identify itself and promote public understanding of its role and function in the oversight and endorsement of institutional chaplains.

72.     The registration of the Service Mark was recorded under Plaintiff's former corporate name, "Special Jurisdiction of the Armed Forces and Chaplaincy (non-profit corporation; Alabama, USA)." The Service Mark's registration belongs to Plaintiff and is still "live."

73.     Plaintiff has actively used the Service Mark as its name since 2024, when it adopted its present name. No other entity, to the best of Plaintiff's knowledge, has ever used or claimed to own the Service Mark. Every public announcement, item of correspondence, government application and chaplaincy endorsement issued by Plaintiff since February 2024 has used the Service Mark to identify Plaintiff, comprising thousands of communications and documents.

74.     All of Plaintiff's annual income is connected to the recognition of Plaintiff, as known by its Service Mark, by its members, their employers and the Anglican community, as an

invaluable supplier of spiritual services to chaplains, chaplain families, and the military and civilian organizations.

75.    In 2024, Plaintiff's income was approximately $1.2 million.

76.    The Service Mark is associated solely with the Plaintiff. No other individual or entity had ever used the mark, or any phrase similar to the Service Mark, except with Plaintiff's temporary authorization, prior to September 22, 2025.

77.    During the period when Plaintiff was affiliated with it, ACNA used the Service Mark with the addition of the word "Special" to authorize ACNA's client relationship with Plaintiff. The phrase that ACNA used, and continues to use, "Special Jurisdiction of the Armed Forces and Chaplaincy," was in fact Plaintiff's official corporate name until February 2024.

78.    After Plaintiff terminated its affiliation with the ACNA, Defendant asserted that it controlled the "Special Jurisdiction of the Armed Forces and Chaplaincy," not Plaintiff.

79.    ACNA used the phrase "Special Jurisdiction of the Armed Forces and Chaplaincy" to refer to itself in, *inter alia*, the 9/21 Wood Letter, the 9/23 Wood Letter, the 9/25 Press Release, the Ashey Letter and a page of its website entitled "News and Updates On the inhibition of Bishop Derek Jones And The Status Of The Special Jurisdiction Of The Armed Forces And Chaplaincy" ("SJAFC").

80.    ACNA also asserted that it would arrange for an alternative endorsement for ACNA-affiliated chaplains who are currently endorsed by Plaintiff and assume all other functions currently performed by Plaintiff.

81.    ACNA declared that the position occupied by Bishop Derek Jones, as Bishop of the Armed Forces and Chaplaincy, was "vacant," and announced that it had elected someone to replace him as Bishop of the Armed Forces and Chaplaincy.

82.     Since Bishop Jones continues to hold his position as Bishop of the Armed Forces and Chaplaincy, ACNA is misrepresenting his "vacancy." By electing a so-called successor, also misleadingly called a "Bishop of the Armed Forces and Chaplaincy," ACNA has created a duplicate, or sham, bishopric that misleads the community of government agencies for which Plaintiff supplies ecclesiastical endorsements and dilutes the value of Plaintiff's Service Mark.

83.     ACNA's use of Plaintiff's former name, containing the full text of Plaintiff's Service Mark, and of an ecclesiastical title that was created for Bishop Jones and which he still holds, is a concerted attempt to deceive users of Plaintiff's goods and services into believing that ACNA was the supplier and provider of Plaintiff's services all along

84.     ACNA is attempting to usurp Plaintiff's identity and role in the minds of Plaintiff's customer base and is using Plaintiff's Service Mark unfairly to confuse government agencies and chaplains into abandoning Plaintiff's services and adopting ACNA itself or its new designee as an endorsing agency in replacement of Plaintiff.

85.     By endeavoring to usurp Plaintiff's role, ACNA's behavior constitutes unfair competition.

86.     Plaintiff's registration of the Service Mark gives Plaintiff the exclusive right to use it.

87.     Plaintiff told ACNA not to use Plaintiff's Service Mark in a "cease and desist" letter on September 25, 2025.

88.     In brazen defiance of Plaintiff's request, ACNA has violated Plaintiff's exclusive right to use its Service Mark and is continuing to violate it.

89.     ACNA intentionally used the Service Mark, knowing such mark to be counterfeit, in connection with the offering or distribution of services, in violation of Plaintiff's rights.

90.    ACNA's use of the Service Mark was willful after September 22, 2025, having received Plaintiff's termination letter on that date and Plaintiff's "cease and desist" letter on September 25, 2025.

91.    ACNA's use of the Service Mark entitles Plaintiff to recover (1) defendant's profits, (2) any damages Plaintiff sustained, or such sum as the court shall find to be just, according to the circumstances of the case. and (3) the costs of the action pursuant to 15 U.S.C. § 1117(a).

92.    Pursuant to 15 U.S.C. §1118, Plaintiff is also entitled to a court order requiring Defendant to destroy all articles within its possession and control that infringe upon Plaintiff's protected marks.

93.    ACNA's intentional use of a counterfeit duplicate of the Service Mark makes ACNA liable for an award of treble profits or damages, together with Plaintiff's attorney's fees and costs, pursuant to U.S.C. § 1117(b).

94.    ACNA's willful use of a counterfeit duplicate of the Service Mark makes ACNA liable for statutory damages of up to two million dollars per counterfeit mark pursuant to 15 U.S.C. § 1117(c).

95.    ACNA's receipt of Plaintiff's termination letter on September 22, 2025, and Plaintiff's "cease and desist" letter on September 25, 2025, put an end to any claim on ACNA's part that it might have any authorization to use the Service Mark.

WHEREFORE, Plaintiff requests that the Court award profits, damages, costs, attorney's fees and/or statutory damages, whichever shall be greater, in an amount to be determined at trial to Plaintiff and against Defendant, for the conduct set forth in this Cause of Action.  Plaintiff also requests that the Court enter a Permanent Injunction against Defendant from use of its Service Mark or any part thereof.

## COUNT II – Infringement of Registered Trademarks

96.     Plaintiff repeats and realleges herein every allegation stated above in Paragraphs 1 through 95, which are incorporated as if fully set forth herein.

97.     The Trademarked Logo is a distinctive logo. It contains the legend "Anglican Chaplains Ad Dei Gloriam" in a two-pointed curved shield. It displays the symbols "Alpha" and "Omega," a small Saint George's cross shield and a bishop's crook with two crossed keys in purple and gold in front of a diagonally-divided red-and-white field.

98.     Bishop Jones designed the Trademarked Logo.

99.     Plaintiff's registration of the Trademarked Logo gives Plaintiff the exclusive right to use it.

100.     Plaintiff told ACNA not to use Plaintiff's trademarks in the "cease and desist" letter on September 25, 2025.

101.     In brazen defiance of Plaintiff's request, ACNA has violated Plaintiff's exclusive right to use its Trademarked Logo and is continuing to violate it.

102.     ACNA's website, located at the URL https://anglicanchurch.net/, displayed the Trademarked Logo (incorporating Plaintiff's Trademark "Anglican Chaplains") prominently on its home page as of September 30, 2025. A copy of the page is attached as Exhibit L.

103.     As of September 30, 2025, ACNA also displayed the Trademarked Logo (incorporating Plaintiff's Trademark "Anglican Chaplains") on the web at the URL https://anglicanchurch.net/archbishop-wood-addresses-the-status-of-jafc/. A copy of the page is attached as Exhibit M.

104.   As of September 30, 2025, ACNA also displayed the Trademarked Logo (incorporating Plaintiff's Trademark "Anglican Chaplains") on the web at the URL https://www.acna.org/admin_units/29. A copy of the page is attached as Exhibit N.

105.   As of September 30, 2025, ACNA also displayed the Trademarked Logo (incorporating Plaintiff's Trademark "Anglican Chaplains") on the web at the URL https://www.acna.org/admin_units?q%5Bkind_eq%5D=Diocese. A copy of the page is attached as Exhibit O.

106.   As of September 30, 2025, ACNA also displayed the Trademarked Logo (incorporating Plaintiff's Trademark "Anglican Chaplains") on the web at the URL https://anglicanchurch.net/news/. A copy of the page is attached as Exhibit P.

107.   On information and belief, ACNA has used the Trademarked Logo and the Trademark at other times and in other publications since September 22, 2025, for the purpose of confusing Plaintiff's valuable contacts into believing that they possessed Plaintiff's properties, rights, powers and identity.

108.   ACNA's use of the Trademarked Logo is also an infringement of the Trademark, because the Trademarked Logo incorporates the trademarked phrase, "Anglican Chaplains."

109.   ACNA intentionally used the Trademarked Logo and Trademark, knowing such marks to be counterfeit marks, in connection with the offering or distribution of services, in violation of Plaintiff's rights.

110.   ACNA's use of the Trademarked Logo and Trademark was willful after September 22, 2025, having received Plaintiff's termination letter on that date and Plaintiff's "cease and desist" letter on September 25, 2025.

111.    ACNA's use of the Trademarked Logo and the Trademark entitles Plaintiff to recover (1) defendant's profits, (2) any damages Plaintiff sustained, or such sum as the court shall find to be just, according to the circumstances of the case. and (3) the costs of the action pursuant to 15 U.S.C. § 1117(a).

112.    ACNA's intentional use of a counterfeit duplicate of the Trademarked Logo and the Trademark makes ACNA liable for an award of treble profits or damages together with Plaintiff's attorney's fees and costs, pursuant to U.S.C. § 1117(b).

113.    ACNA's willful use of a counterfeit duplicate of the Trademarked Logo and the Trademark makes ACNA liable for statutory damages of up to two million dollars per counterfeit mark pursuant to 15 U.S.C. § 1117(c).

114.    Pursuant to 15 U.S.C. §1118, Plaintiff is also entitled to a court order requiring Defendant to destroy all articles within its possession and control that infringe upon Plaintiff's protected marks.

115.    ACNA received Plaintiff's termination letter on September 22, 2025, which put an end to any claim on ACNA's part that it might have any authorization to use the Trademarked Logo and the Trademark.

WHEREFORE, Plaintiff requests that the Court award profits, damages, costs, attorney's fees and/or statutory damages, whichever shall be greater, in an amount to be determined at trial to Plaintiff and against Defendant, for the conduct set forth in this Cause of Action.  Plaintiff also requests that the Court enter a Permanent Injunction against Defendant from use of its Trademarked Logo and Trademark or any part thereof.

**COUNT III – Commercial Misrepresentation – Lanham Act §43(a)(1)(A)**

116. Plaintiff repeats and realleges herein every allegation stated above in Paragraphs 1 through 115, which are incorporated as if fully set forth herein.

117. Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a), provides *inter alia* that:

(1) Any person who, on or in connection with any goods or services, [ ] uses in commerce any word, term, name, symbol, or device, or any combination thereof, or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which—

(A) is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person, or

(B) in commercial advertising or promotion, misrepresents the nature, characteristics, qualities, or geographic origin of his or her or another person's goods, services, or commercial activities, shall be liable in a civil action by any person who believes that he or she is or is likely to be damaged by such act.

118. ACNA's violation of Section 43(a) entitles Plaintiff to a remedy.

119. Plaintiff originated the use of the term "Special Jurisdiction of the Armed Forces and Chaplaincy" in interstate commerce in 2013, and from 2016 until 2024 that was Plaintiff's corporate name.

120.    Plaintiff continues to conduct under its present name the same activities that it conducted from 2016 to 2024 under the name "Special Jurisdiction of the Armed Forces and Chaplaincy," and it never surrendered its right to the name to ACNA or any other person or entity.

121.    ACNA is now using the term "Special Jurisdiction of the Armed Forces and Chaplaincy" in interstate commerce.

122.    ACNA has used Plaintiff's Trademark and Trademarked Logo in interstate commerce after September 21, 2025, and on information and belief, is continuing to do so.

123.    Starting on September 21, 2025, ACNA began to use the term "Special Jurisdiction of the Armed Forces and Chaplaincy" in interstate commerce to refer to itself and not to Plaintiff.

124.    Both ACNA and Plaintiff are engaged in interstate commerce.

125.    ACNA has misled Anglican Chaplains and their employers to believe that ACNA possesses the capacity to endorse Anglican chaplains for employment and that Plaintiff and Bishop Jones do not.

126.    ACNA has misled Anglican Chaplains and their employers to believe that Plaintiff is led by Bishop Jay Cayangyang and not by Bishop Jones and the Plaintiff's Executive Committee.

127.    ACNA has misled Anglican Chaplains and their employers to believe that the ACNA's Vicar General has the power to endorse Anglican Chaplains for employment, which he does not have.

128.    ACNA is attempting to persuade the Anglican community that ACNA's "Special Jurisdiction," and not Plaintiff, has been endorsing Anglican Chaplains all along.

129. ACNA is attempting to persuade the Anglican community that ACNA's ineffective deposition of Bishop Jones from the leadership of Plaintiff has caused Plaintiff to lose the power to endorse Anglican Chaplains.

130. ACNA's publications are likely to and have caused confusion among Anglican Chaplains and their employers.

131. ACNA's publications are likely to deceive Anglican Chaplains and their employers.

132. ACNA's publications misrepresent the ACNA's ability to endorse Anglican Chaplains.

133. ACNA's publications misrepresent Plaintiff's power to endorse Anglican Chaplains.

134. ACNA's publications impugn Plaintiff's continued legitimacy as an endorser of Anglican Chaplains.

135. ACNA's publications misrepresent the identity of the person who is authorized to decide upon an endorsement of Anglican Chaplains.

136. ACNA's false and misleading publications are confusing the general public, including Anglican Chaplains and their employers.

137. ACNA has tried to convince employers of Anglican Chaplains including, without limitation, the U.S. Department of Defense, that Plaintiff no longer is qualified to endorse chaplains.

138. On information and belief, ACNA has taken the foregoing actions with malice toward Plaintiff, intending to harm Plaintiff.

WHEREFORE, Plaintiff respectfully asks the Court permanently to enjoin ACNA from publishing misrepresentations about Plaintiff, its services and staff, including without limitation enjoining defendant from the use of the terms "Special Jurisdiction of the Armed Forces and Chaplaincy," "Bishop of the Armed Forces and Chaplaincy," "Anglican Chaplains" and "Jurisdiction of the Armed Forces and Chaplaincy" in interstate commerce, and to award profits or treble damages, costs, and attorney's fees, whichever shall be greater, in an amount to be determined at trial to Plaintiff and against Defendant, for the conduct set forth in this Cause of Action.

### COUNT IV – False Advertising - Lanham Act §43(a)(1)(B)

139.     Plaintiff repeats and realleges herein every allegation stated above in Paragraphs 1 through 138, which are incorporated as if fully set forth herein.

140.     ACNA has misrepresented its own services by claiming it has authority to endorse Anglican Chaplains.

141.     ACNA has misrepresented Plaintiff's services by claiming that Plaintiff and its leaders no longer have authority to endorse Anglican Chaplains.

142.     ACNA's misrepresentations were made in commerce.

143.     ACNA made its false and misleading statements in web publications, emails and regular mails to Plaintiff's clients and endorsed chaplains to promote its own services and to deprecate Plaintiff's services, and otherwise to further ACNA's own business advantage.

144.     On information and belief, ACNA's misrepresentations were made with malice and an intent to harm Plaintiff.

145.     Plaintiff has suffered and reasonably believes it is likely to suffer damages from ACNA's false and misleading representations.

WHEREFORE, Plaintiff respectfully asks the Court permanently to enjoin ACNA from publishing misrepresentations about Plaintiff, its services and staff, including without limitation enjoining defendant from the use of the terms "Special Jurisdiction of the Armed Forces and Chaplaincy," "Bishop of the Armed Forces and Chaplaincy," "Anglican Chaplains" and "Jurisdiction of the Armed Forces and Chaplaincy" in interstate commerce, and to award profits or treble damages, costs, and attorney's fees, whichever shall be greater, in an amount to be determined at trial to Plaintiff and against Defendant, for the conduct set forth in this Cause of Action.

## COUNT V – Violation of the South Carolina Unfair Trade Practices Act

146. Plaintiff repeats and realleges herein every allegation stated above in Paragraphs 1 through 145, which are incorporated as if fully set forth herein.

147. ACNA's unauthorized use of Plaintiff's former name, its Service Mark, its Trademark and its Trademarked Logo for the purpose of deceiving Plaintiff's members and luring them away from membership in Plaintiff's organization, is a deceptive practice and competes unfairly against Plaintiff in trade and commerce.

148. ACNA's false claims that it deposed Plaintiff's bishop from his position and appointed a new Bishop of the Armed Forces and Chaplaincy to replace him, are a deceptive practice.

149. ACNA's telephone and email outreach to Plaintiff's members seeking to persuade them to leave Plaintiff and join ACNA while publishing false information about itself and Plaintiff on its website constitute an unfair competitive practice.

150. On information and belief, ACNA's communications with the AFCB and other military and civil employers of Anglican Chaplains, attempting to persuade them *inter alia* that

Plaintiff has lost its ecclesiastical competency to endorse chaplains and that Plaintiff's bishop has been deposed from his position and replaced with ACNA's designee, are deceptive and unfair.

151.    ACNA 's claims to have the capacity to endorse chaplains for military and civilian service were untrue when made.

152.    ACNA engaged in deceptive and unfair competitive conduct toward Plaintiff willfully and with an intention to damage Plaintiff's reputation and acquire Plaintiff's members for itself.

WHEREFORE, Plaintiff respectfully asks the Court permanently to enjoin ACNA from publishing misrepresentations about Plaintiff, its services and staff, including without limitation enjoining defendant from the use of the terms "Special Jurisdiction of the Armed Forces and Chaplaincy," "Bishop of the Armed Forces and Chaplaincy," "Anglican Chaplains" and "Jurisdiction of the Armed Forces and Chaplaincy" in interstate commerce, and to award profits or treble damages, costs, and attorney's fees, whichever shall be greater, in an amount to be determined at trial to Plaintiff and against Defendant, for the conduct set forth in this Cause of Action.

## COUNT VI – Misappropriation of Corporate Identity

153.    Plaintiff repeats and realleges herein every allegation stated above in Paragraphs 1 through 152, which are incorporated as if fully set forth herein.

154.    Plaintiff invested substantial time and effort, and millions of dollars, over the course of the past eighteen years in building its organizational identity as the ecclesiastical endorsing organization for Anglican Chaplains.

155.    ACNA is using the phrase "Special Jurisdiction of the Armed Forces and Chaplaincy," the title "Bishop of the Armed Forces and Chaplaincy," the Phrase "Anglican

Chaplains" and Plaintiff's registered logo to make others believe that ACNA has assumed Plaintiff's powers and functions.

156.     ACNA is using its appointment of a new so-called Bishop of the Armed Forces and Chaplaincy to make others believe that Plaintiff's head, Bishop Jones, is no longer the Bishop of the Armed Forces and Chaplaincy.

157.     ACNA is using Plaintiff's Trademarked Logo and the Trademark to masquerade as Plaintiff or to act as a successor to Plaintiff's identity by appropriating Plaintiff's trade dress and proprietary names in its online communications with the world.

158.     By misusing the names and symbols that are associated with Plaintiff's services and identity, ACNA is attempting to appropriate the fruits of Plaintiff's labor at little or no cost to itself.

159.     ACNA's misuse of Plaintiff's names derives from years of Plaintiff's service to it and its members, during which time ACNA and Plaintiff engaged in discussions for Plaintiff to become fully integrated into ACNA, but which ACNA intentionally delayed and frustrated until changes in the ACNA's leadership ended any desire for combination on Plaintiff's part. ACNA was only ever authorized to use Plaintiff's names in connection with Plaintiff itself.

160.     The termination of ACNA's confidential relationship with Plaintiff ended all rights of ACNA to use any marks, symbols or proprietary terminology pertaining to Plaintiff's identity. ACNA's current use of those names to supplant Plaintiff, usurp its employer and chaplain relationships, and end Plaintiff's independent existence is a violation of law and right.

WHEREFORE, Plaintiff respectfully asks the Court permanently to enjoin ACNA from using the terms "Special Jurisdiction of the Armed Forces and Chaplaincy" and "Jurisdiction of the Armed Forces and Chaplaincy" and "Bishop of the Armed Forces and Chaplaincy" and

Plaintiff's protected marks in interstate commerce and from misleading others about its ability to endorse chaplains for government service, or Plaintiff's ability to do so, or about the status of Plaintiff's president as its Bishop of the Armed Forces and Chaplaincy, and to award damages and punitive damages to Plaintiff in an amount to be determined at trial but not less than One Million Dollars, plus Plaintiff's reasonable costs and attorneys' fees.

### COUNT VII - Tortious Interference With Employer Contracts

161.    Plaintiff repeats and realleges herein every allegation stated above in Paragraphs 1 through 160, which are incorporated as if fully set forth herein.

162.    Since 2009, Plaintiff has been designated by the Armed Forces Chaplain Board ("AFCB") as the ecclesiastical endorsing organization for Anglican Chaplains who serve with the United States Armed Forces.

163.    Plaintiff has applied for the aforesaid designation annually and with the approval of the AFCB, Plaintiff has continuously enjoyed the status of endorsing organization for Anglican Chaplains with the AFCB.

164.    Plaintiff endorses Anglican Chaplains from ACNA and other Anglican Provinces. ACNA chaplains comprise only approximately twenty percent of all chaplains endorsed by Plaintiff.

165.    On or about September 22, 2025, ACNA contacted the AFCB and represented to them that the relationship between Plaintiff and ACNA had terminated, and that as a consequence Plaintiff no longer possessed the capacity to endorse Anglican Chaplains belonging to ACNA. This statement was false: Plaintiff continues to be ready, willing and able to endorse ACNA chaplains (chaplains referred by ACNA, see paras. 29-30)  despite the termination of Plaintiff's affiliation with ACNA.

166.    As a direct and intended consequence of ACNA's interference, the AFCB sent a letter to Plaintiff on September 24, 2025, asserting that Plaintiff no longer fulfilled the requirements of religious organizations providing religious ministry professionals for service in the armed forces, and therefor Plaintiff was "being placed in the 'pending status' for reapplication once a suitable Religious Organization is identified and provides written authority to the [Plaintiff] to act on their behalf."

167.    In essence, ACNA intended to cause the AFCB to end Plaintiff's capacity to endorse Anglican Chaplains for military service and temporarily succeeded in doing so by inducing the AFCB to demote Plaintiff to "pending status," i.e., to the status of an applicant for authority. For a brief time while Plaintiff was in "pending status," no ecclesiastical endorsing organization was empowered to endorse Anglican Chaplains for military service in the U.S. Armed Forces.

168.    On September 26, 2025, the AFCB rescinded its action toward Plaintiff and removed Plaintiff from "pending status," following the receipt of communications from Plaintiff. However, the AFCB rescission indicated uncertainty about the future of Plaintiff's status. It contained the following text: "The Jurisdiction of the Armed Forces and Chaplaincy is a Department of Defense recognized endorsing agent, but this is an evolving situation, and the Armed Forces Chaplains Board will be in contact to determine the relationship in the future."

169.    Despite Plaintiff's reinstatement, ACNA has continued to publish misrepresentations about Plaintiff and Plaintiff's Bishop, and about ACNA's capacity or planned capacity to provide chaplain endorsements, to all the Anglican Chaplains endorsed by Plaintiff including chaplains unaffiliated with ACNA.

170.    ACNA's communications with the AFCB and Anglican Chaplains have injured the contractual relationship between Plaintiff and the AFCB.  They had the short-term effect of causing Plaintiff's authority as the ecclesiastical endorsing organization for Anglican Chaplains to be suspended. They have had the longer-term effect of creating uncertainty in the AFCB as to Plaintiff's qualification to serve as an ecclesiastical endorsing organization, despite Plaintiff's continuous designation as such for the past 16 years.

171.    On information and belief, ACNA sent the 9/22 Wood Letter to the AFCB with malice toward Plaintiff, intending to harm Plaintiff.

172.    On information and belief, ACNA has made similar representations about Plaintiff to other chaplain-employing organizations for the same purposes.

WHEREFORE, Plaintiff requests that the Court award damages and punitive damages, in an amount to be determined at trial but no less than One Million Dollars to Plaintiff and against Defendant, for the conduct set forth in this Cause of Action.

### COUNT VIII – Tortious Interference with Chaplain Contracts

173.    Plaintiff repeats and realleges herein every allegation stated above in Paragraphs 1 through 172, which are incorporated as if fully set forth herein.

174.    More than three hundred Anglican clergy and laypersons who serve as chaplains in Government service and in other chaplain positions requiring ecclesiastical endorsement have contracted with Plaintiff to provide them with endorsement.

175.    ACNA has used deceptive devices, as set forth above, to make Anglican Chaplains believe that Plaintiff is no longer able to provide them with ecclesiastical endorsement, and that either ACNA's bishop or Vicar General is the new endorsing agent or  that chaplains require a

new endorsement and that ACNA will be locating an appropriate new endorsing organization in the near future.

176.    Plaintiff has received many worried inquiries from Anglican Chaplains who are concerned that they have lost their endorsed status with their places of employment, and that they will lose their livelihoods in the immediate future unless they contact ACNA to arrange for an alternative endorsement.

177.    Plaintiff has already received requests from one hundred Anglican Chaplains to terminate their affiliation with Plaintiff and to transfer their oversight and canonical residence from Plaintiff to ACNA or another diocese or province of the Anglican Church.

178.    ACNA's misleading publications and its outreach to Anglican Chaplains who are in a contractual relationship with Plaintiff are interfering with Plaintiff's contracts with its Anglican Chaplains.

179.    Plaintiff's loss of canonically resident chaplains will result in a diminution of income to Plaintiff. As a historic hierarchical church organization, the JAFC relies on tithes and offerings for its sustenance. It also relies on chaplains to be a "walking advertisement" of the ministry, leading to the recruitment of new chaplains and donors.

180.    On information and belief, ACNA's  misrepresentations were made with malice toward Plaintiff and an intent to harm Plaintiff.

WHEREFORE, Plaintiff requests that the Court award damages and punitive damages, in an amount to be determined at trial but no less than One Million Dollars to Plaintiff and against Defendant, for the conduct set forth in this Cause of Action.

### COUNT IX – Slander of Title

181.    Plaintiff repeats and realleges herein every allegation stated above in Paragraphs 1 through 180, which are incorporated as if fully set forth herein.

182.    Plaintiff possesses valuable intangible property which ACNA has slandered by casting doubt upon its actual nature and value.

183.    Plaintiff's separate existence as a corporation is a valuable intangible property. which Plaintiff owns.

184.    Plaintiff's ownership of title to the Service Mark "Jurisdiction of the Armed Forces and Chaplaincy" is valuable.

185.    Plaintiff's ownership of title to the Trademark "Anglican Chaplains" is valuable.

186.    Plaintiff's ownership of the Trademarked Logo is valuable.

187.    Plaintiff's designation as the ecclesiastical endorsing organization for the U.S. Department of Defense is a valuable intangible property.

188.    Through clever wording, ACNA implied publicly in the 9/23 Wood Letter that Plaintiff is the same as ACNA's "Special Jurisdiction" and therefore inalterably a part of ACNA, by verbally conflating Plaintiff with ACNA's previously nonexistent, newly-created non-Plaintiff "Special Jurisdiction." The purpose of ACNA's verbal legerdemain was to confuse chaplains and agencies into thinking that Plaintiff lacked power to operate independently from ACNA, and therefore ACNA was the rightful endorser of Anglican Chaplains.

189.    ACNA's representatives' publications repeatedly contain such statements as "I assure you of the continuation of the Special Jurisdiction" and "the Vicar General of the Special Jurisdiction will serve as the interim endorser of chaplains." Such statements are misleading

because the endorsements for Anglican Chaplains have always come from Plaintiff, even before ACNA was formed in 2009.

190.    ACNA's representatives stated, and continue to state, that Plaintiff lacks the capacity (a matter that is determined by government regulation) to serve as the ecclesiastical endorsing organization for ACNA-affiliated chaplains.

191.    ACNA's misstatements about Plaintiff diminish the value of Plaintiff's valuable intangible properties.

192.    On information and belief, ACNA's misstatements have been made with malice and with an intent to harm Plaintiff.

WHEREFORE, Plaintiff requests that the Court award damages and punitive damages, in an amount to be determined at trial but no less than One Million Dollars to Plaintiff and against Defendant, for the conduct set forth in this Cause of Action.

### COUNT X – Temporary Restraining Order and/or Preliminary Injunction

193.    Plaintiff repeats and realleges herein every allegation stated above in Paragraphs 1 through 192, which are incorporated as if fully set forth herein.

194.    As a result of Defendant's wrongful appropriation of Plaintiff's registered marks, its masquerade using Plaintiff's identity, and its interference with Plaintiff's contracts, Plaintiff has suffered and will continue to suffer immediate and irreparable harm for which no adequate remedy at law exists.

195.    Under Rule 65 of the Federal Rules of Civil Procedure and 15 U.S.C. §1116 (enforcement of rights against trademark infringement and unfair competition), Plaintiff is entitled to injunctive relief restraining ACNA from using Plaintiff's Service Mark "Jurisdiction of the Armed Forces and Chaplaincy," Plaintiff's original corporate name "Special Jurisdiction of the

Armed Forces and Chaplaincy," Plaintiff's Trademark "Anglican Chaplains," Plaintiff's Trademarked Logo, and the title of Plaintiff's head, the "Bishop of the Armed Forces and Chaplaincy," from representing that Bishop Jones is no longer the "Bishop of the Armed Forces and Chaplaincy" or that ACNA has replaced him in that position, from representing that Plaintiff lacks the capacity to endorse Anglican Chaplains who originate from ACNA or any other Anglican diocese or province, from slandering Plaintiff or Bishop Jones in private or public and from threatening or recruiting any chaplains, mission, chapels or parishes that are in or under Plaintiff's jurisdiction.

196.    Plaintiff is likely to succeed on at least one, if not all, of the claims against Defendant, set forth above, including Plaintiff's clearly established claims that ACNA has used Plaintiff's Trademarked Logo, Trademark, Service Mark  and former corporate name without authorization since September 22 to compete with Plaintiff in providing an ecclesiastical endorsement service for chaplains employed by military and civil institutions.

197.    Defendant's recent intense onslaught of press releases, webposts, media interviews, and direct correspondence and telephone calls to Plaintiff's member chaplains and churches and their advisors is causing immediate and irreparable harm to Plaintiff's business reputation and goodwill. Plaintiff's expertise comes from long experience in the building and supervision of an Anglican community based on careful adherence to government regulation and ecclesiastical rules. Plaintiff's good reputation comes from its leaders' decades-long path of scrupulous respect for public, interpersonal, ecclesiastical and commercial relationships, and of respecting contracts and authorities, both secular and sacred. Due to these factors, Plaintiff's corps of chaplains and related chapels, missions and parishes has grown slowly but steadily over time, and has been recognized as one of the great success stories on North American Anglicanism.

198.    Derek Jones, who is Plaintiff's founder, bishop and president, has devoted the past eighteen years of his life to build a corps of Anglican chaplains to serve the U.S. armed forces and other government agencies. In two weeks, ACNA's campaign of vilification has destroyed his good name in the eyes of many people in the Anglican community, especially those who knew of him not personally, but solely by reputation.

199.    ACNA's campaign of misappropriation, vilification, and competition impedes and interferes with Plaintiff's provision of services to its existing clients and to its member chaplains and churches.

200.    Unless ACNA is restrained and enjoined from its illegal and unfair competitive conduct, Plaintiff will lose a substantial amount of goodwill, professional reputation, market share, income and contracts, for which no adequate remedy at law exists.

201.    Currently, Plaintiff employs fourteen individuals. Those individuals' livelihoods are also now at risk.

202.    Pursuant to 15 U.S.C. §1116, Plaintiff is entitled to a rebuttable presumption that it will suffer irreparable harm from ACNA's violation of its rights under federal trademark and unfair competition laws.

203.    Thus, Plaintiff has suffered and will continue to suffer immediate and irreparable harm without an injunction to return the Parties back to the status quo.

204.    Defendant, on the other hand, will not suffer any harm by the Court preserving the status quo ante.

205.    The balance of the interests weighs in favor of Plaintiff because hardship, if any, to Defendant from being enjoined temporarily from the misconduct listed above is modest compared

to the detrimental effect on Plaintiff should Defendant's wrongful conduct be permitted without review.

206.    Injunctive relief is in the public interest because the public has an interest in enforcing clear and unambiguous intellectual property rights and preventing unfair and deceptive market practices.

207.    Pursuant to 15 U.S.C. §1116, Plaintiff is also entitled to a court order requiring the Defendant to report within 30 days as to its compliance with the Court's injunction.

208.    Further, the public has an interest in protecting and promoting the stable and unimpeded employment of members of its armed forces and civilian agencies as Anglican Chaplains, which ACNA's actions have disrupted and are disrupting.

WHEREFORE, Plaintiff requests this Court enter a Preliminary Injunction or Temporary Restraining Order, for which a motion and memorandum in support are being filed contemporaneously with this Complaint:

    a.  Restraining ACNA from using Plaintiff's Service Mark "Jurisdiction of the Armed Forces and Chaplaincy," Plaintiff's original corporate name "Special Jurisdiction of the Armed Forces and Chaplaincy," Plaintiff's Trademark "Anglican Chaplains," Plaintiff's Trademarked Logo, and the title of Plaintiff's head, the "Bishop of the Armed Forces and Chaplaincy,"

    b.  from representing that Bishop Jones is no longer the "Bishop of the Armed Forces and Chaplaincy" or that ACNA has replaced him in that position,

    c.  from representing that Plaintiff lacks the capacity to endorse Anglican Chaplains who originate from ACNA or any other Anglican diocese or province,

d.   from slandering Plaintiff or Bishop Jones in private or public and

e.   from threatening or recruiting any chaplains, mission, chapels or parishes that are in or under Plaintiff's jurisdiction.

f.   Finally, Plaintiff respectfully requests that the Court also award Plaintiff fees, costs, and such other relief the Court deems just and proper.

Respectfully submitted,

/s/Vordman Carlisle Traywick, III
Vordman Carlisle Traywick, III (12483)
Sarah C. Frierson (13825)
ROBINSON GRAY STEPP & LAFFITTE, LLC
Post Office Box 11449
Columbia, South Carolina 29211
(803) 929-1400
ltraywick@robinsongray.com
sfrierson@robinsongray.com

Jonathan R. Nelson*
Barry Black*
NELSON MADDEN BLACK LLP
475 Park Avenue South, Suite 2800
New York, NY 10016
(212) 382-4300
jnelson@nelsonmaddenblack.com
bblack@nelsonmaddenblack.com

*Pro hac vice applications forthcoming

*Counsel for Plaintiff Jurisdiction of the Armed Forces and Chaplaincy*

October 6, 2025