# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF SOUTH CAROLINA

### CHARLESTON DIVISION

| | |
|---|---|
| Jurisdiction of the Armed Forces and Chaplaincy,<br><br>    *Plaintiff*,<br><br> vs.<br><br>Anglican Church in North America,<br><br>    *Defendant*. | Case No.: 2:25-cv-12848-BHH<br><br><br>**DEFENDANT'S OPPOSITION TO PLAINTIFF'S MOTION FOR A TEMPORARY RESTRAINING ORDER, OR, IN THE ALTERNATIVE FOR PRELIMINARY INJUNCTION** |

Anglican Church in North America ("ACNA" or "Defendant") respectfully opposes Plaintiff Jurisdiction of the Armed Forces and Chaplaincy's Motion for Temporary Restraining Order or, in the alternative, for Preliminary Injunction (Dkt. No. 6).

## INTRODUCTION

Plaintiff seeks to enlist this Court's equitable powers to effect a schism in the ACNA. Plaintiff historically served as the endorser of chaplains holding holy orders under the ACNA. Plaintiff's leader, Derek Jones, is an ordained Bishop of the ACNA. Last month, Bishop Jones came under the ACNA's ecclesiastical discipline because of numerous credible complaints lodged against him. In an effort to evade the Church's discipline, Bishop Jones announced that he and Plaintiff had "withdrawn" from the ACNA[1]. Plaintiff now seeks to impermissibly entangle this Court in the internal operations of the

---

[1] As discussed below, a Bishop under discipline cannot make a declaration of resignation or renunciation cannot withdraw until the accusation has been dismissed or a trial concluded and sentence, if any pronounced. As such, because he was under Inhibition at the time of his attempted withdrawal, Bishop Jones' purported withdrawal from ACNA was canonically ineffective. *See* Exhibit 1, Dkt. No. 13-1, pg. 50, Title IV, Canon 7.

Church to prevent the ACNA from replacing Plaintiff as the endorser of ACNA chaplains and seeks to prevent ACNA chaplains from maintaining their allegiance to the ACNA. This Court's participation in Plaintiff's schismatic project would embroil it in a canonical dispute over the ACNA's ecclesiastical structure in clear violation of the First Amendment.

Further, granting an injunction or temporary restraining order would cause irreparable harm to the hundreds of ACNA chaplains who find themselves caught up in Plaintiff's effort to divide the church. Chaplains employed by the Military, the Department of Veterans Affairs, the Bureau of Prisons and other federal and state agencies are required to maintain an endorsement with a recognized religious organization. Failure to maintain an endorsement can result in loss of employment. Plaintiff's sudden withdrawal from the ACNA, prompted by the beginning of a canonical disciplinary process against Bishop Jones, created a crisis for all ACNA chaplains. If they wished to remain with Plaintiff, they would lose their ACNA holy orders. If they wished to remain with the ACNA they would need a new ACNA endorser, The ACNA, with the active cooperation of the War Department's Armed Forces Chaplaincy Board and other similar government entities, has appointed a new endorser, but each of the hundreds of chaplains wishing to remain with the ACNA must now work with the ACNA's new endorser to file the government paperwork necessary to maintain their endorsements. Granting Plaintiff's Motion would unconstitutionally prevent chaplains wishing to retain their ACNA holy orders from maintaining their endorsements and thus their jobs.

Plaintiff also does not deserve the extraordinary relief of a temporary restraining order or preliminary injunction because the crisis it claims to face is one entirely of its own making.  Indeed, Plaintiff's inflammatory rhetoric masks the truth; it has ruined its own

reputation by its own actions. In its Motion, Plaintiff admits ACNA suspended Bishop Derek Jones for sixty (60) days but conveniently fails to explain why. Dkt. No. 6, page 6. The why is that ACNA received a number of credible complaints against Bishop Jones' alleged abuse of ecclesiastical power. When ACNA sought to investigate and resolve these complaints, Plaintiff and Bishop Jones refused to cooperate and instead took the extreme measure of attempting to withdraw rather than face appropriate scrutiny and probable consequences of being removed from office.

Additionally, this Court's determination of Plaintiff's case requires this Court to conduct an impermissible interpretation of Defendant's Constitution and Canons, as well as and to become entangle in ACNA's determination of the status of ministers and ministries. As such, Plaintiff's claims are barred, and this Court lacks jurisdiction to hear them, under the ecclesiastical abstention doctrine set forth in *Serbian E. Orthodox Diocese for the United States & Canada v. Milivojevich*, 426 U.S. 696 (1976), *Watson v. Jones*, 80 U.S. (13 Wall.) (1871), *Dixon v. Edwards*, 290 F.3d 699, 714–15 (4th Cir. 2002), and *Bell v. Presbyterian Church (U.S.A.)*, 126 F.3d 328 (4th Cir. 1997).

For these and the following reasons, Plaintiff fails to show that it is entitled to a temporary restraining order or preliminary injunction, and this Court should deny its motion.

## FACTUAL BACKGROUND

### I.     History of ACNA and the Special Jurisdiction for the Armed Forces

Derek Jones was a bishop in ACNA from 2010 to 2025. He was received as a bishop suffragan in 2010. Declaration of Julian Dobbs, Dkt. No. 13-18, ¶8. He was installed as the Bishop of the Armed Forces and Chaplaincy in 2014. *Id.,* ¶10. He has

served continually in that role until his resignation and purported withdrawal from ACNA in September 2025. *Id*., ¶14.

Derek Jones has publicly and repeated held himself out as a Bishop Ordinary in ACNA. Plaintiff's website through 2025 described Bishop Jones as "Bishop Ordinary of the ***Jurisdiction of the Armed Forces and Chaplaincy in the Anglican Church in North America***". Exhibit 2, Dkt. No. 13-2 (emphasis added). Before his purported withdrawal from ACNA, Plaintiff's website described Bishop Jones and serving "in the College of Bishops of the Anglican Church in North America (ACNA)". *Id*. In sum, Plaintiff and Bishop Jones have held him out as a bishop elected by ACNA to oversee the Special Jurisdiction for the Armed Forces and Chaplaincy.

Derek Jones' referral to himself as the Bishop of the Armed Forces and Chaplaincy coincides with ACNA's Constitution and Canons specifically providing for the election of the Bishop of the Armed Forces and Chaplaincy:

> The ministry shall be under the oversight of the Bishop of the Armed Forces and Chaplaincy who shall be elected by the College of Bishops... The ministry shall be called. The Special Jurisdiction for the Armed Forces and Chaplaincy and shall function under the oversight of the Archbishop.

Canons of the ACNA, Title I, Canon 11.1, Exhibit 1, Dkt. No. 13-1, pg. 27.  And Bishop Jones was elected by the College of Bishops.  ACNA consecrated Bishop Jones as the Bishop of the Armed Forces and Chaplaincy in 2014 following his election[2]. Decl. Dobbs, Dkt. No. 13-18, ¶10. Bishop Jones gave a verbal Oath of Conformity in his Enthronement Service. Decl. of Katherine Harris, Dkt. No. 13-19, ¶8.  He then signed a written Oath of Conformity and Oath of Obedience to the Archbishop and his successors. Decl. Harris,

---

[2] https://drive.google.com/file/d/1Rmo_N41v4EvVX5IeqoEHdCapekEg9u-j/view?ts=68e1ae2d

Dkt. No. 13-19, ¶9, <u>Exhibit A</u> attached thereto. That same day, ACNA issued a Certificate of Investiture which specifically stated that Archbishop Foley Beach:

> Did invest our well beloved in Christ Derek Linton Sean Jones, of whose sufficiency in good learning, soundness in the faith, and purity of manners, we were fully ascertained, ***into the office of Bishop of the Special Jurisdiction of the Armed Forces and Chaplaincy in the Province of the Anglican Church in North America***, to which said Derek Linton Sean Jones hath been put forward by the clergy and people and duly elected by the College of Bishops of the said province…

Decl. Harris, Dkt. No. 13-19, ¶10, <u>Exhibit B</u> attached thereto (emphasis added).

By letter dated September 22, 2025, Plaintiff withdrew from ACNA pursuant to Article II.3 of the ACNA Constitution. *See* Dkt. No. 1-4, page 2. Contrary to his convenient claim that he was not part of ACNA, Bishop Jones attempted to withdraw from the College of Bishops and the ACNA by written letter dated September 20, 2025. Importantly, the ACNA's canons prevent a bishop under discipline from renouncing his orders, and Bishop Jones therefore remains a bishop until he is tried by an ecclesiastical court or voluntarily submits to discipline and is sentenced by the College of Bishops. ACNA thus maintains the spiritual authority to discipline Bishop Jones. *See* <u>Exhibit 1</u>, Dkt. No. 13-1, pg. 50, Title IV, Canon 7. The civil judicial system is constitutionally prohibited from interfering in, or otherwise becoming entangle with, this process lest it violate both the Free Exercise Clause and Establishment Clause of the First Amendment.

Initially, the chaplaincy ministry was called the Deanery for the Chaplaincy. Decl. Dobbs, Dkt. No. 13-18, ¶3. The Convocation of Anglicans in North America ("CANA") created the Deanery in 2008. Decl. Dobbs, Dkt. No. 13-18, ¶3. Until 2013, the website maintained by Bishop Jones referred to the ministry as "the Deanery of the Chaplaincy". <u>Exhibit 3</u>, Dkt. No. 13-3. Derek Jones was in charge of the Deanery at that time. Decl. Dobbs, Dkt. No. 13-18, ¶4.

In 2009, CANA became a founding member of ACNA. Exhibit 1, Canons and Constitution of ACNA, Dkt. No. 13-1, Article II, at 3; Decl. Dobbs, Dkt. No. 13-18, at ¶3. In 2010, ACNA received Derek Jones into its College of Bishops as a Bishop Suffragan to lead the Deanery.  Decl. Dobbs, Dkt. No. 13-18, ¶8. It is important to understand that chaplains are not employees, vendors, or customers of the Plaintiff or of the Special Jurisdiction for the Armed Forces and Chaplaincy. They are ministers of the Church. None of the endorsed Chaplains have signed covenants not to compete, non-disclosure agreements, or confidentiality agreements with Plaintiff. They have signed no contractual agreements preventing Chaplains from serving through Plaintiff or Defendant. Declaration of Jerome Cayangyang, Dkt. No. 13-17, ¶ 6.

In 2014, ACNA created the Special Jurisdiction for the Armed Forces and Chaplaincy, and installed Derek Jones as Bishop Ordinary of the Armed Forces and Chaplaincy[3]. Decl. Dobbs, Dkt. No. 13-18, ¶10. Also in 2014, the website maintained by Bishop Jones began referring to the ministry as "the Jurisdiction of the Armed Forces and Chaplaincy" or the Special Jurisdiction for the Armed Forces and Chaplaincy, and stated it was "the canonical residence for professional chaplains in the ACNA." Exhibit 4, Dkt. No. 13-4. This name change coincided with the end of the Deanery and ACNA's creation of the Special Jurisdiction for the Armed Forces and Chaplaincy. The Jurisdiction was listed as "the canonical residence for professional chaplains in the ACNA." *Id.* at 4. Until at least 2023, the website continued to list the Jurisdiction as the "canonical residence for professional chaplains with the Anglican Church in North America (ACNA)…" Exhibit 5, Dkt. No. 13-5. In 2025, before Plaintiff departed ACNA, the website stated the "JAFC is

---

[3] At that point in 2014, ACNA elevated Derek Jones from Bishop Suffragan to Bishop Ordinary.

the canonical residence and licensing agency for professional chaplains with the Anglican Church in North America (ACNA), and other participating Anglican bodies." Exhibit 6, Dkt. No. 13-6.

On or about October 3, 2016, Bishop Jones incorporated a non-profit entity he called Special Jurisdiction of the Armed Services and Chaplaincy. Dkt. No. 1-1, pp. 7-9. That name is nearly identical to the ministry established by ACNA two years prior. And the *incorporation is specifically authorized by the Constitution and Canons of ACNA*:

> The Special Jurisdiction may incorporate in any state of the United States and shall adopt Constitution and Canons not inconsistent with the Constitution and Canons of the Province. The Constitution and Canons of the Special Jurisdiction and any changes thereto shall be subject to review and approval by the Executive Committee of the Province.

Exhibit 1, Dkt. No. 13-1, at 29, Title I, Canon 11.12,. So, rather than a "stranger" to ACNA, Plaintiff's very corporate existence is authorized in the Canons of ACNA. In 2024, Bishop Jones changed the name slightly, dropping "Special" by amendment filed February 1, 2024. Dkt. No. 1-1, pp. 2-3.

Also in 2016, Plaintiff applied for a trademark registration for the term "Anglican Chaplains" and for the Logo Plaintiff describes in its Complaint. Dkt. No. 1-2. Plaintiff neither acknowledged ACNA's established marks, nor did it obtain express permission from ACNA to apply for these marks, which are inspired or enveloped by the ACNA Marks. Plaintiff's activities to register its alleged marks show it was comfortable sidestepping the ACNA and its process for monitoring and controlling its religious designations and related services.

In 2017, the IRS determined the Special Jurisdiction of the Armed Forces and Chaplaincy qualified for exemption under IRC Section 501(c)(3).  Exhibit 7, Dkt. No. 13-7.

Plaintiff waited until October of 2020 to apply for a trademark of the name "Jurisdiction of the Armed Forces and Chaplaincy". *See* Complaint, ¶31; Dkt. No. 1-2; and Plaintiff's Application record attached as Exhibit 8, Dkt. No. 13-8. At that point, the Special Jurisdiction for the Armed Forces and Chaplaincy had been in existence under ACNA's Constitution and Canons for over six (6) years. Exhibit 1, Dkt. No. 13-1. By 2025, when Plaintiff determined to sever its affiliation with Defendant, the relevant consumers had already associated the SPECIAL JURISDICTION FOR THE ARMED FORCES mark as emanating from ACNA and its bishops. Plaintiff's alleged marks ANGLICAN CHAPLAINS and JURISDICTION OF THE ARMED FORCES AND CHAPLAINCY were denied registration on the Principal Register in view of their descriptive or generic quality.  *See* Refusals to Register attached as Exhibit 9, Dkt. No. 13-9, and Exhibit 10, Dkt. No. 13-10, respectively.

Similar to a manufacturer-distributor relationship, ACNA being the established manufacturer and Plaintiff being the transitory distributor, the trademark rights are presumed to remain with the manufacturer when a distributor exits. *See, e.g., Covertech Fabricating, Inc. v. TVM Building Products, Inc.*, 855 F.3d 163 (3d Cir. 2017) (Where the initial ownership of a trademark between a manufacturer and its exclusive distributor is at issue and no contract exists, the manufacturer is the presumptive trademark owner in an infringement action unless the distributor rebuts that presumption using a multifactor balancing test designed to examine the distribution agreement in effect between the

parties. Under the Lanham Act, if a trademark infringement defendant can prove any one of the statutory defenses to the incontestability of a mark, then the plaintiff loses the presumptions of validity, ownership, and the right to protection. Where the initial ownership of a trademark between a manufacturer and its exclusive distributor is at issue and no contract exists, the manufacturer is the presumptive trademark owner in an infringement action unless the distributor rebuts that presumption using a multifactor balancing test designed to examine the distribution agreement in effect between the parties.)

Plaintiff's website through 2025 described Bishop Jones as "Bishop Ordinary of the Jurisdiction of the Armed Forces and Chaplaincy in the Anglican Church in North America". Exhibit 2, Dkt. No. 13-2, at 1, 4, 7, and 11. Plaintiff's website described Bishop Jones and serving "in the College of Bishops of the Anglican Church in North America (ACNA)". Exhibit 2, Dkt. No. 13-2, at 1, 4, and 11. In sum, Plaintiff and Bishop Jones have held him out as a bishop elected by ACNA to oversee the Special Jurisdiction for the Armed Forces and Chaplaincy.

It is clear, then, that Bishop Jones was received into ACNA as a suffragan bishop in 2010. It is likewise clear that ACNA installed Bishop Jones as Bishop Ordinary of the Special Jurisdiction for the Armed Forces and Chaplaincy. ACNA issued a formal certificate of investiture. It is certain that Bishop Jones orally and in writing gave an Oath of Obedience to the Archbishop of ACNA. Bishop Jones held himself out as a member of the College of Bishops and as the Bishop Ordinary in ACNA. ACNA's canons authorized Derek Jones to incorporate Plaintiff. And Plaintiff was clearly part of ACNA, as further confirmed by its withdrawal from ACNA on September 22, 2025. It is likewise clear that

the Special Jurisdiction involves chaplains ordained in ACNA. Exhibit 1, Dkt. No. 13-1. To further remove doubt, Plaintiff and ACNA issued a joint statement in 2021 clarifying the relationship between them:

> We work together seamlessly under the Canons of the Anglican Church in North America.
>
> There is no longer a question of the place of the Jurisdiction in the Anglican Church in North America. The Jurisdiction is fully integrated with the Anglican Church in North America, will continue to be, and we celebrate that.

Decl. Dobbs, Dkt. No. 13-18, Exhibit A attached thereto. In short, the evidence overwhelmingly shows the Plaintiff was a ministry of ACNA, fully integrated in its polity, and subject to its Canons and authority.

And despite these clear, unambiguous facts, Plaintiff and Bishop Jones unabashedly claim "[n]o ecclesiastical relationship exists between [ACNA] and the Jurisdiction or Bishop Jones…." Dkt. No. 1-5 at 3. And despite his Oath of Obedience and acknowledgement of the Constitution and Canons of ACNA as a Bishop Ordinary, Plaintiff arrogantly claims ACNA has "no legally cognizable basis for asserting any entitlement to exercise jurisdiction or discipline over" Bishop Jones. *Id*.

By letter dated September 20, 2025, Bishop Jones attempted to withdraw from the College of Bishops and the ACNA. Decl. Cayangyang, Dkt. No. 13-17, ¶2. Then Bishop Jones conducted an "All Hands Meeting"[4] wherein he confirmed his letter of purported withdrawal from the College of Bishops and ACNA, and he stated the endorsed chaplains were free to "leave" Plaintiff. Decl. Cayangyang, Dkt. No. 13-17, ¶18. Jones' purported departure from the College of Bishops and ACNA created chaos and confusion.

---

[4] https://www.youtube.com/watch?v=slc8wwp4myk

Numerous chaplains contacted Bishop Jerome Cayangyang, Jones' successor Bishop of the Armed Forces and Chaplaincy. Decl. Cayangyang, Dkt. No. 13-17, ¶12. The chaplains consistently stated both they came into the Special Jurisdiction precisely because it was operating under the ACNA, and they did not want to leave ACNA. *Id*. They feel that Plaintiff's actions have left them feeling "like a hostage". *Id.* When Plaintiff terminated its affiliation with ACNA, chaplains feel disconnected from their parishes or sending dioceses within ACNA. *Id*., ¶13. The truth is each ordained chaplain remains in the ACNA if they so wish to remain canonically.

Thereafter, as a result of the confusion caused by Bishop Jones' departure, the Provost for the endorsed chaplains, by letter dated September 20, 2025, formally asked Archbishop Steve Wood for relief:

> I, as the Provost, am responsible for the pastoral care of all endorsed chaplains. On behalf of the Chaplains of the Jurisdiction of the Armed Forces and Chaplaincy, I am formally requesting immediate temporary episcopal oversight of all Chaplains. I am also asking that all Chaplains be brought up to speed on all the recent proceedings and that we be advised on our canonical relationship with Bishop Jones, the ACNA, and the future of our Endorsement.

Decl. Cayangyang, Dkt. No. 13-17, ¶19, Exhibit A attached thereto. In response, Archbishop Wood appointed Archbishop Emeritus Robert Duncan and the Right Reverend Jerome Cayangyang "to serve as pastoral and episcopal shepherds of the Special Jurisdiction..." Dkt. No. 6-1 at pp. 6-7. And Plaintiff is asking this Court to keep Archbishop Steve Wood and ACNA from providing episcopal oversight to the chaplains ordained in ACNA by enjoining meetings.

## II.     Defendant and Its ACNA Marks

Defendant has been a religious denomination providing religious services for many years. In addition to ACNA's well-known and primary mark, the Anglican Church in North

America, Defendant also uses other designations to distinguish its large organization, including the names of its component dioceses, networks and jurisdictions.

One such jurisdiction name is the "Special Jurisdiction for the Armed Forces and Chaplaincy." In 2014, ACNA adopted Canon 11 of Title I of the Canons, creating the ministry called "Special Jurisdiction for the Armed Forces and Chaplaincy." That same year, Bishop Jones was installed as the "Bishop of the Armed Forces and Chaplaincy." Contrary to Plaintiff's assertions, Bishop Jones's role made Plaintiff part of and accountable to the ACNA College of Bishops and the Archbishop.

Collectively, these names and marks (the "ACNA Marks") symbolize ACNA's deserved reputation and goodwill.

### III.    Plaintiff's Alleged Marks

While Plaintiff boasts ownership of a number of trademark registrations, closer inspection shows that two of the three asserted in this matter are registered on the Supplemental Register.  *See* US Reg Nos. 5,608,790, attached as <u>Exhibit 11</u>, Dkt. No. 13-11, and 7,008,112, attached as <u>Exhibit 12</u>, Dkt. No. 13-12.  Namely, Plaintiff's alleged marks ANGLICAN CHAPLAINS and JURISDICTION OF THE ARMED FORCES AND CHAPLAINCY were denied registration on the Principal Register in view of their descriptive or generic quality.  *See* Refusals to Register attached as <u>Exhibit 9</u>, Dkt. No. 13-9, and <u>Exhibit 10</u>, Dkt. No. 13-10.    Plaintiff is thus not entitled to a presumption of ownership or validity of these marks. *George & Co. LLC v. Imagination Entertainment Ltd.*, 575 F.3d 383, 391 n.8, 91 U.S.P.Q.2d 1786 (4th Cir. 2009) ("Unlike registrations on the Principal Register, registrations on the Supplemental Register do not receive some of the advantages extended to marks registered on the Principal Register. 15 U.S.C. § 1094.

In particular, unlike principal registration, supplemental registration is not prima facie evidence of the validity of the registered mark, of ownership of the mark, or of the registrant's exclusive right to use the registered mark in commerce.").

The remaining logo registration also includes highly descriptive or generic terms, as evidenced directly on the registration which recites: "No claim is made to the exclusive right to use the following apart from the mark as shown 'ANGLICAN CHAPLAINS.'"  See US Reg. No. 5,601,925, attached as <u>Exhibit 13</u>, Dkt. No. 13-13.   Disclaimers are concessions by the registrant that the disclaimed terms are too descriptive for registration without other features, in this case the design.

As for Plaintiff's alleged corporate name, (Special) Jurisdiction of the Armed Forces and Chaplaincy, or "unique title," these were not even registered on the Supplemental Register.  Dkt. No. 6, p. 3. Presumably, Plaintiff would have sought such registration as it did with the other alleged marks if it considered these names to signify more than just names. Moreover, Plaintiff filed for a name change in 2024 to remove the first word "Special."  Plaintiff is therefore no longer called by this name.

In view of these facts, ACNA contests that these are Plaintiff's names.  Simply adopting or registering a corporate name is not enough to show trademark rights. *Jefferson Bankshares, Inc. v. Jefferson Sav. Bank*, 14 U.S.P.Q.2d 1443, 1444, 1989 WL 222446 (W.D. Va. 1989) (A business does not obtain mark rights in a business name by reserving it with the relevant state agency for future use as a corporate name.). Consumers or the public should understand that a name refers to a particular source, such as through advertising.

Plaintiff has yet to show that the relevant consumers of its services know these names as indicating Plaintiff rather than ACNA such that ACNA's use of them would create confusion. Particularly when, as here, Defendant utilizes its own prominent designation "ACNA" in conjunction with its communications and advertising, confusion as between names that incorporate highly descriptive or generic terms is unlikely. *Armstrong Cork Co. v. World Carpets, Inc.*, 597 F.2d 496, 505, 203 U.S.P.Q. 19 (5th Cir. 1979) (Use of senior user's mark WORLD in competitor's new corporate name "Armstrong World Industries, Inc." was held not an infringement. "[I]t must be emphasized that Armstrong seeks merely to change its corporate name …. There is nothing in the record that suggests that Armstrong will deviate from its present policy of promoting its own admittedly well-known and distinctive trademark.")

## IV.     The Effect of Jones' resignation and Plaintiff's withdrawal from ACNA.

Once Bishop Jones purportedly withdrew and Plaintiff terminated its association with ACNA, Defendant had no choice but to communicate the circumstances to its members.  Not unlike when an attorney departs from a law firm, both the attorney and the law firm are ethically obligated to notify those clients that were serviced by the attorney. In view of the importance of religious services, new and established members alike are eager to know the scope of the religious content as well as the caliber of those teaching it.  ACNA is therefore obligated to notify them and the public of any changes of this nature. Here, ACNA did no more than communicate honestly *as it was obligated to do*. *Prestonettes, Inc., v. Coty*, 264 U.S. 359, 368, 44 S. Ct. 350 (1924) ("A trade-mark only gives the right to prohibit the use of it so far as to protect the owner's good will against the sale of another's product as his … . When the mark is used in a way that does not

deceive the public we see no such sanctity in the word as to prevent its being used to tell the truth. It is not taboo."). "The use of a competitor's trademark for purpose of comparative advertising is not trademark infringement as long as it does not contain misrepresentations or create a reasonable likelihood that purchasers will be confused as to the source, identity or sponsorship of the advertiser's product." *SSP Agricultural Equipment, Inc. v. Orchard-Rite Ltd.*, 592 F.2d 1096, 1103, 202 U.S.P.Q. 1, 1979-2 Trade Cas. (CCH) ¶ 62795 (9th Cir. 1979).

**V.    Plaintiff's relationship with the U.S. Military.**

At issue in this case is who can endorse chaplains ordained in the ACNA on behalf of the ACNA to serve in the U.S. military and other service-related agencies.  The answer seems obvious, ACNA should be able to endorse its own chaplains.  And ACNA is proceeding to do just that after Plaintiff terminated its relationship with ACNA.

Plaintiff claims to be "an endorser of chaplains for ACNA." Dkt. No. 6 at 5. As of August 2025, the online records of the Armed Forces Chaplain Board ("AFCB") show Derek Jones was the endorser official for ACNA. Exhibit 15, Dkt. No. 13-15, at 1. Plaintiff is not listed in the online records for AFCB. *Id*. Derek Jones is not listed as the endorser for any other church or religious organization. As of September 5, 2025, the U.S. Veterans Affairs' website lists Derek Jones as the endorser official for ACNA. Exhibit 14, Dkt. No. 13-14, at 1. Plaintiff is not listed in the online records for Veterans Affairs. Derek Jones is not listed as the endorser for any other church or religious organization. Plaintiff has not provided any approved DOD forms showing Plaintiff, rather than Derek Jones, is the endorsing agent for ACNA.

Derek Jones' status as the former endorsing agent for ACNA is consistent with Archbishop Wood's letter to the AFCB withdrawing Derek Jones's authority as the endorsing agent for ACNA. Dkt. No. 1-6 at 2. Archbishop Wood's letter does not even mention Plaintiff's name.

The AFCB, upon receiving Archbishop Wood's letter and a letter from "Chairman David van Esselstyn of the Jurisdiction of the Armed Forces and Chaplaincy" suspended and then reinstated two days later the Plaintiff's status as a "recognized endorsing agent." Dkt. No. 1-7 at 2 and Dkt. No. 1-8 at 2. Because Archbishop Wood's letter did not mention Plaintiff, the only logical conclusion is Chairman van Esselstyn's letter caused the AFCB to suspend Plaintiff.

Accordingly, Defendant hereby opposes any injunctive relief that would prevent ACNA from sharing pertinent, true information about its services.

## **LEGAL STANDARD**

"Preliminary injunctions are extraordinary remedies involving the exercise of very far reaching power to be granted only sparingly and in limited circumstances." *MicroStrategy Inc. v. Motorola, Inc.*, 245 F.3d 335, 339 (4th Cir. 2001) (affirming denial of preliminary injunction)(quoting *Direx Israel, Ltd. V. Breakthrough Med. Corp.*, 956 F.2d 802, 816 (4th Cir. 1992).    To obtain a preliminary injunction, the movant must make a "clear showing" on each of the following four elements: "(1) [it] is likely to succeed on the merits, (2) that he is likely to suffer irreparable harm in the absence of preliminary relief, (3) that the balance of the equities tips in his favor, and (4) that an injunction is in the public interest." *Low Tide Brewing, LLC v. Tideland Mgmt. LLC*, No. 2:21-cv-0775-DCN, 2021 U.S. Dist. LEXIS 70286, at *5-6 (D.S.C. Apr. 12, 2021)(denying preliminary

injunction) (quoting *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008)).  "Where, as here, the balance of the hardship 'does not tilt decidedly in plaintiff's favor' then a plaintiff must demonstrate a 'strong showing of likelihood of success' or a substantial likelihood of success' by 'clear and convincing evidence' in order to obtain relief." *MicroStrategy*, 245 F.3d at 340 (quoting *Direx*, 952 F.2d at 818).  Because Plaintif has failed to make a sufficient showing on any of the required elements, its motion should be denied.

## ARGUMENT

### I.     Plaintiff is Not Likely to Succeed on the Merits of its Claims.

To prevail on its claims for trademark infringement, unfair competition, and false designation of origin, Plaintiff must show that (1) it has a valid, protectable mark; and (2) Defendant's use of a colorable imitation of the trademark is likely to cause confusion among consumers. *Lone Star Steakhouse & Saloon, Inc. v. Alpha of Va., Inc*., 43 F.3d 922, 930 (4th Cir. 1995).[5] At this early stage, Plaintiff is unable to show it has both a valid, protectable mark, and that Defendant's use of certain marks is likely to cause confusion among consumers.

### 1.  Plaintiff's Alleged Marks are Descriptive if not Generic.

Plaintiff fails to show it owns valid and protectable marks.  As evidenced by the findings and conclusions of the United States Patent and Trademark Office (*see* Exhibits

---

[5] The elements of trademark infringement, unfair competition, and false designation of origin under the Lanham Act and South Carolina are the same. *See Scurmont LLC v. Firehouse Rest. Grp.*, 2011 WL 2670575, at *24 n.6 (July 8, 2011); *see also Shakespeare Co. v. Silstar Corp. of Am., Inc.*, 802 F.Supp 1386, 1399 (D.S.C. 1992), *rev'd on other grounds* 9 F.3d 1091 (4th Cir. 1993) ("The elements of trademark infringement and unfair competition under South Carolina law are identical to the elements for those claims under the Lanham Act."); *See also AvePoint, Inc., v. Power Tools, Inc.*, 981 F. Supp. 2d 496, 518 (W.D. Va. 2013) ("A claim for false designation of origin requires proof of the same elements as a claim for trademark infringement.").

9, Dkt. No. 13-9, and 10, Dkt. No. 13-10), Plaintiff was denied exclusivity in terms deemed descriptive or generic, such as "ANGLICAN," "CHAPLAIN," "JURISDICTION," and "ARMED FORCES." Plaintiff's own admissions of record indicate these marks are not inherently distinctive. Trademark law protects the public use those commonly used words and phrases that the public has adopted, denying to any one competitor a right to corner those words and phrases by expropriating them from the public linguistic commons. *Moke America LLC v. Moke International Limited*, 126 F.4th 263 (4th Cir. 2025).

What is more, ACNA asserts it, not Plaintiff, owns superior rights in the names ACNA first adopted and used, including "Special Jurisdiction for the Armed Forces and Chaplaincy," and "Bishop of the Armed Forces and Chaplaincy." *Flying Pigs, LLC v. RRAJ Franchising, LLC*, 757 F.3d 177, 182, 111 U.S.P.Q.2d 1644 (4th Cir. 2014) (Quoting treatise that trademark ownership is not acquired by registration, but by prior use.); *Dewberry Engineers Inc. v. Dewberry Group, Inc.*, 77 F.4th 265, 280 (4th Cir. 2023), cert. granted, 144 S. Ct. 2681 (2024) (Use, not registration, creates priority and common law rights in a mark.)

2. <u>Defendant's Use of the Plaintiff's Alleged Marks is Not Likely to Cause Consumer Confusion.</u>

In the Fourth Circuit, courts consider the following nine factors to guide their likelihood of confusion analysis:

(1) The strength of plaintiff's mark;
(2) The similarity of the parties' marks;
(3) The similarity of the goods and services the marks identify;
(4) The similarity of the facilities the two parties use in their businesses;
(5) The similarity of advertising used by the two parties;
(6) The defendant's intent;
(7) Actual confusion;
(8) The quality of the defendant's product; and
(9) The sophistication of the consuming public.

*See Rosetta Stone Ltd. v. Google, Inc.*, 676 F.3d 144, 153 (4th Cir. 2012). "These factors are not always weighted equally, and not all factors are relevant in every case." *Id.* at 154. In the instant case, the relevant factors weigh against a finding of a likelihood of confusion.

> i.     The strength of Plaintiff's Alleged Marks

The first *Rosetta Stone* factor looks at the strength of the mark, which is "the degree to which a consumer in the relevant population, upon encountering the mark, would associate the mark with a unique source." *CareFirst v. First Care*, 434 F.3d 263, 269 (4th Cir. 2006). "The strength of a mark is evaluated in terms of its conceptual strength and commercial strength." *Id.* A mark's conceptual strength is determined by evaluating the mark's distinctiveness, as well as "the frequency of prior use of a mark's text in other marks, particularly in the same field of merchandise or service. . ." *Variety Stores, Inc. v. Wal-Mart Stores, Inc.*, 888 F.3d 651, 662-63 (4th Cir. 2018). The commercial strength of a mark is assessed by considering the following factors: "(1) the plaintiff's advertising expenditures; (2) consumer studies linking the mark to a source; (3) the plaintiff's record of sales success; (4) unsolicited media coverage of the plaintiff's business; (5) attempts to plagiarize the mark; and (6) the length and exclusivity of the plaintiff's use of the mark." *Fuel Clothing Co. v. Nike, Inc.*, 7 F. Supp. 3d 594, 613 (D.S.C. 2014).

ACNA disputes Plaintiff owns valid, protectable marks.  Assuming this Court disagrees, none of Plaintiff's asserted marks is conceptually or commercially strong.  The marks include highly descriptive or generic terms, such as ANGLICAN CHAPLAIN, JURISDICATION, and ARMED FORCES.  In the context of the parties' religious services

19

offered to those in the armed forces, these marks are weak to the point they are not entitled to registration on the Principal Register.

### ii.    The similarity of the parties' marks

In assessing the similarity of the parties' marks, "the Fourth Circuit has directed that district courts focus on the dominant portion of the parties' marks and consider whether there exists a similarity in sight, sound, and meaning which would result in confusion." *Fuel Clothing*, 7 F. Supp. 3d 594, 615 (D.S.C. 2014). District courts in the Fourth Circuit routinely find marks to be similar when there is an overlap in the critical or dominant portion of the respective marks. *See Lone Star Steakhouse*, 43 F.3d at 936.

ACNA maintains that the marks at issue are either ACNA's marks or are merely descriptive names.  This is not a typical trademark case.  ACNA has not used Plaintiff's alleged mark or name in connection with offering ACNA's religious services.  Rather, ACNA has notified its members about the circumstances of Plaintiff's disassociation.  At no point did ACNA attempt to use Plaintiff's alleged marks as its own.  ACNA purposefully identified Plaintiff and made clear that the parties were not affiliated.

### iii.    The Defendant's intent.

As ACNA has repeatedly asserted, its only intention in using any of the marks or names at issue was to inform its members and the public of the truth of the situation.

### iv.    Evidence of actual confusion

"Evidence of actual confusion is often paramount in the likelihood of confusion analysis." *George & Co., LLC v. Imagination Ent. Ltd.*, 575 F.3d 383, 393 (4th Cir. 2009). As the Fourth Circuit held over two decades ago:

> If the strength of the senior mark is the alpha of infringement analysis, then evidence of actual confusion is surely the omega; where the defendant in

an infringement case has elected to use a mark similar to that of a competitor's distinctive mark, and, as a result, has actually confused the public, our inquiry ends almost as soon as it begins.

*Sara Lee Corp. v. Kayser-Roth Corp.*, 81 F.3d 455, 467, 38 USPQ2d 1449 (4th Cir. 1996).

Plaintiff has not alleged any legitimate instances of actual confusion. That chaplains that have the option of departing with Plaintiff choose to stay with the ACNA is not confusion, it is an informed choice. To the extent Plaintiff argues those notified had any initial confusion under circumstances, such does not arise to actual confusion among consumers as to the source. The relevant consumers understood the source of the notification and services was ACNA.

The Fourth Circuit has rejected the use of the initial interest confusion analysis in a similar trademark dispute. *Lamparello v. Falwell*, 420 F.3d 309, 76 U.S.P.Q.2d 1024 (4th Cir. 2005), *cert. denied*, 126 S. Ct. 1772, 164 L. Ed. 2d 516 (U.S. 2006). In that case, the court said that confusion must be adjudged by evaluating the accused domain name in conjunction with the content of the Web site. Thus, the court said that there could be no likelihood of confusion where a gripe site targeting the Rev. Jerry Falwell used Falwell's name in the domain name. The court held that once a web user saw the Web site, the user would not believe that Falwell, the target of the gripe site, would sponsor a site criticizing himself, and disapproving of his positions and his interpretations of the Bible. Falwell's own authorized Web site was at www.falwell.com. The court found that the domain name www.fallwell.com, identifying a non-commercial gripe site criticizing the Reverend Jerry Falwell, was neither an infringement nor an ACPA violation.

Similarly, those reviewing the ACNA materials appreciated that the source of those materials emanated from ACNA and that Bishop Jones did not endorse those materials.

*v.     The sophistication of the consuming public*

Further mitigating any risk of confusion, the relevant customers are sophisticated and discerning.   *Electronic Design & Sales Inc. v. Electronic Data Systems Corp.*, 21 USPQ2d 1388 (Fed. Cir. 1992) (sophistication is important and often dispositive because sophistication consumers may be expected to exercise greater care).     Specifically, church clergy and personnel are less likely to be confused as to the source of the services when faced with ACNA's or Plaintiff's alleged marks.  Especially in view of the descriptive components of Plaintiff's alleged marks, consumers are not likely to be confused.

## II.     Plaintiff has not suffered irreparable harm.

"When analyzing the irreparable harm element, there are two inquiries: (1) whether the plaintiff is indeed suffering actual and imminent harm; and (2) whether that harm is truly irreparable, or whether it can be remedied at a later time with money damages." *Nutramax Lab'ys, Inc. v. Pure Supplements Ltd.*, 2017 WL 2772485, at *4 (D.S.C. June 27, 2017) (quoting *First Quality Tissue SE, LLC v. Metso Paper USA, Inc.*, 2011 WL 6122639, at *2 (D.S.C. Dec. 9, 2011)). "Trademark harms are inherently different than harms that can be quantified and redressed later through monetary damages." *Sink*, 407 F. Supp. 3d at 559. In trademark cases, courts in the Fourth Circuit apply a presumption of irreparable injury once the plaintiff has demonstrated a likelihood of confusion. *See Sink*, 407 F. Supp. 3d at 559; *Nutramax Lab'ys, Inc. v. Nutra Max Labs Inc.*, 2017 WL 4707447, at *5 (D.S.C Oct. 20, 2017) (holding that "irreparable harm is presumed" upon a showing of likelihood of success on claims of trademark infringement and granting preliminary injunction); *see also Lone Star Steakhouse*, 43 F.3d at 939 (noting that "a

finding of irreparable injury ordinarily follows when a likelihood of confusion or possible risk to reputation appears").

Plaintiff's failure to demonstrate a likelihood of confusion shows it has not been irreparably harmed.   Any harm Plaintiff experienced was of its own making.   ACNA did not force Plaintiff to leave.   To the contrary, Plaintiff's rash departure caused tremendous disruption and harm to Defendant in view of the sensitive nature of the underlying services and consumers involved.

### III.     The balance of equities favors Defendant.

The balance of equities factor analyzes the "degree of harm that will be suffered by the plaintiff or the defendant if the injunction is improperly granted or denied." *Scotts Co. v. United Indus. Corp.*, 315 F.3d 264, 285 (4th Cir. 2002). In evaluating this factor, a court "must balance the immediate and irreparable harm to the plaintiff against any harm to the defendant." *La Michoacana Natural, LLC v. Maestre*, 2018 WL 2465478, at *3 (W.D.N.C. June 1, 2018). On one hand, the evidence demonstrates that Plaintiff chose to sever ties with ACNA after the ACNA began to act on credible complaints against Derek Jones' ecclesiastical conduct.

On the other hand, Defendant would suffer cognizable harm if it is not allowed to use marks and names ACNA either owns or are in the public domain.     ACNA needs to maintain transparency with its congregations, dioceses, clergy, chaplains, and the public.

### IV.     The public interest weighs in favor of Defendant.

The granting of a preliminary injunction serves the public if it "prevent[s] customer confusion in the marketplace. . ." *Pure Supplements*, 2017 WL 2772485, at *5; *see also Augusta Nat'l, Inc. v. Exec. Golf Mgmt., Inc.*, 996 F. Supp. 492, 499 (D.S.C. 1998) ("The

right of the public to be free from the deception that results from a defendant's use of a plaintiff's trademark is transcendent."). As demonstrated in analysis above, Defendant has only tried to provide accurate information to the relevant consumers. Accordingly, entering a preliminary injunction in this case does not service the public interest in transparency among religious organizations.

**V.    The District Court lacks jurisdiction to determine ecclesiastical rights or enjoin meetings between the Chaplains of ACNA and ACNA.**

Plaintiff, in its Motion, seeks, among other relief, to enjoin Defendant ACNA from "recruiting any chaplains, missions, chapels or parishes that are in or under Plaintiff's jurisdiction." Dkt. No. 6 at 8, 26. At the emergency hearing, Plaintiff requested this Court to enjoin a meeting scheduled for October 8, 2025 between Bishop Jerome Cayangyang and the any chaplains that may choose to attend. Dkt. No. 6-2. Plaintiff has advanced no contractual agreement that prohibits any such meeting, and none of the causes of action set forth in the Complaint authorize an order for prior restraint. Nothing in the record before this Court indicates that chaplains are compelled to attend this or any meeting. In fact, ACNA has repeatedly stated that Bishop Derek Jones and Plaintiff are free to withdraw from the ACNA. Dkt. No. 6-2, pp 7-8.

Meanwhile, Bishop Jones conducted an All Hands Meeting of the chaplains. Decl. Cayangyang, Dkt. No. 13-17, ¶18. During that meeting, Bishop Jones admitted he withdrew from ACNA and stated that any chaplains were free to remain ordained and ministering in ACNA. *Id.*, ¶18.

Plaintiff believes that the chaplains are "Plaintiff's chaplains." See, e.g. Dkt. No. 6, at 5, 8, 17, 19, and 20 (describing the chaplains as "Plaintiff's chaplains"). Plaintiff's claim in turn appears based on the following allegations:

- "Other Anglican provinces and dioceses … may submit individuals for consideration to become Anglican Chaplains *through transfer to Plaintiff's jurisdiction*." Compl., ¶1.

- "…Plaintiff receives '*letters dimissory*' from each of the provinces and dioceses, including ACNA, that *transfer the canonical residency* of the chaplain candidates to Plaintiff." Compl., ¶27.

- "[N]o members of ACNA's churches became authorized to serve as Anglican Chaplains in government service *except through transfer to Plaintiff's jurisdiction*…" Compl. ¶28.

- "Plaintiff is the endorsing agency for chaplains who profess *membership* as Anglicans". Compl. ¶35.

- "About 80% of the Anglican Chaplains who are endorsed by the Plaintiff are *canonically resident* (members of, or domiciled) in the JAFC". Compl. ¶39.

- "Plaintiff will need to cut its staff as a direct result of ACNA's attacks on Plaintiff's reputation and its raid on *Plaintiff's membership*". Compl. ¶66.

- "Plaintiff has already received requests from one hundred Anglican Chaplains to terminate their affiliation with Plaintiff and to *transfer their oversight and canonical residence from Plaintiff to ACNA* or another diocese or province of the Anglican Church." Compl., ¶177.

In these allegations, Plaintiff concedes that it accepts candidates for chaplaincy by *transfer* from "other churches in the Anglican tradition." Dkt. No. 6-1 at 4, ¶8. The "sending" churches issue *Letters Dimissory*, "which release the candidates … and permit Plaintiff to accept them into the Jurisdiction of the Armed Forces and Chaplaincy

as full members, entitled to spiritual support of Plaint and subject to Plaintiff's oversight and discipline." *Id*. Plaintiff concedes that a significant portion of its "membership" has been transferred from ACNA churches. *Id*. In support of its position, Plaintiff states that Canon I.11, which authorizes the Special Jurisdiction for the Armed Forces and establishes the seat for the Bishop of the Armed Forces and Chaplaincy, does not really "signal anything" and that ACNA "never had any actual operation". Dkt. No. 6 at 5.

For this Court to understand Plaintiff's claims on the chaplains, though, this Court will have to engage in an unconstitutional interpretation of the canonical meaning of terms like "members", "transfer", "jurisdiction", and "canonically resident". All of which depends on the meaning and interpretation of "letters dimissory" which allegedly transfer the chaplains to Plaintiff's "jurisdiction" in the first place. It also requires interpreting canonical requirements and other ecclesiastical issues. To understand under whose authority or "jurisdiction" these chaplains serve, this Court will have to dive deep into ecclesiastical matters. In rejecting the district court's jurisdiction in similar facts, the Fourth Circuit Court of Appeals has noted "[a] bishop, priest, or deacon of the Episcopal Church is canonically resident within a diocese when he or she (1) has been ordained there, or (2) has been canonically received into the diocese by the ecclesiastical authority thereof by acceptance of what are called letters dimissory. Members of the clergy serving under the jurisdiction of the ecclesiastical authority of a diocese are canonically resident in that diocese." *Dixon v. Edwards*, 290 F.3d 699, 705 (4th Cir. 2002).

Under the Supreme Court of the United States' precedent, this Court may not become so entangled in the internal organizational and disciplinary affairs of the Church and should not interpret the Constitution and Canons of ACNA or review any

ecclesiastical decisions about its ministers, ministries, and authorized agents. As a result, ACNA's determination of the status of Bishop Jones and his ecclesiastical authority, are entitled to full acceptance, without question, by this Court. Similarly, ACNA's determination of status of the Special Jurisdiction for the Armed Forces and Chaplaincy, and its ministries, is entitled to full acceptance by this Court. Finally, whether chaplains are ordained under the Constitution and Canons of ACNA, and subject to the oversight by ACNA, is also entitled to full acceptance by this Court.

Civil courts lack any authority to resolve disputes arising under religious law. *Serbian E. Orthodox Diocese for the United States & Canada v. Milivojevich*, 426 U.S. 696, 709, 96 S.Ct. 2372, 49 L.Ed.2d 151 (1976). As a result, civil courts "must defer to the highest ecclesiastical tribunal within a hierarchical church applying its religious law." *Id*. at 709. As the Supreme Court of the United States has held:

> whenever the questions of discipline, or of faith, or ecclesiastical rule, custom, or law have been decided by the highest of the[ ] church judicatories to which the matter has been carried, the legal tribunals must accept such decisions as final, and as binding on them, in their application to the case before them.

*Watson v. Jones*, 80 U.S. (13 Wall.) 679, 20 L.Ed. 666 (1871). "Under the constraints of the First Amendment, when a subordinate in a church hierarchy disputes a decision of the highest ecclesiastical tribunal, the civil courts may not constitutionally intervene." *Dixon v. Edwards*, 290 F.3d 699, 714–15 (4th Cir. 2002). This is precisely the question presented here in Plaintiff's challenge to (1) Derek Jones' status as the Bishop of the Armed Forces and Chaplaincy; (2) the nature, existence, or function of the Special Jurisdiction for the Armed Forces and Chaplaincy and (3) the status of chaplains ordained in the ACNA. Any attempt by government to restrict a church's free choice of its leaders thus constitutes a burden on the church's free exercise rights. *Rayburn v. Gen. Conf. of*

*Seventh-Day Adventists*, 772 F.2d 1164, 1168 (4th Cir. 1985). That is because "[e]cclesiastical decisions are generally inviolate" and "civil courts are bound to accept the decisions of the highest judicatories of a religious organization of hierarchical polity on matters of discipline, faith, internal organization, or ecclesiastical rule, custom, or law." *Rayburn*, 772 F.2d at 1167 (4th Cir. 1985)(quoting *Serbian Orthodox Diocese v. Milivojevich*, 426 U.S. 696, 713, 96 S.Ct. 2372, 2382, 49 L.Ed.2d 151 (1976)).

    1. <u>ACNA is hierarchical in structure</u>

In *Dixon v. Edwards*, the Court of Appeals for the Fourth Circuit delineated the five (5) "Milivojevich" factors "which, if met, support the conclusion that a church is hierarchical." *Dixon v. Edwards*, 290 F.3d 699, 715 (4th Cir. 2002). Plaintiff does not contest that ACNA is a hierarchical church.

    2. <u>The Archbishop, Provincial Council, and College of Bishops are the ecclesiastical authority for ACNA</u>

ACNA is governed by Under the Constitution and Canons of ACNA. <u>Exhibit 1</u>, Dkt. No. 13-1. The Provincial Council "is the governing body of the Church…." *Id*. at 15, Title I, Canon 1.1. The Archbishop is elected by the College of Bishops. *Id*. at 6, Article X.3; *id.* at 18, Title I, Canon 3.1. The College of Bishops has "authority in the election of bishops of the Province" under certain circumstances. *Id*. at 6, Article X.5. With regard the Special Jurisdiction for the Armed Forces and the Chaplaincy, the College of Bishops is the sole authority to elect the Bishop of the Armed Forces and Chaplaincy. *Id*. at 27, Title I, Canon 11.1. The Special Jurisdiction for the Armed Forces and Chaplaincy may adopt Constitution and Canons, as long as such documents are "not inconsistent with the provisions of the Constitution and Canons of" ACNA. *Id*. at 29, Title I, Canon 11.12. Thus,

the Special Jurisdiction for the Armed Forces and Chaplaincy is a subordinate organization to ACNA.

3.  ACNA's ecclesiastical determinations are final

ACNA has the right to discipline Bishops and has adopted procedures regarding the same. *See* Exhibit 1, Dkt. No. 13-1, pp. 44-54, Title IV. Included within that discipline is the Archbishop's right to issue a Godly Admonition to a bishop. *Id.* at 44, Title IV, Canon 2.2(b). The Archbishop has the authority to inhibit a bishop of the Province up to sixty (60) days. *Id.* at 52, Title IV, Canon 9.3. A bishop so inhibited has rights to seek a modification or revocation of such inhibition. *Id.*, Canon 9.3.3. Bishops can be tried before the Church, and the results can be appealed. *Id.* pp. 33-36, Title IV, Canon 5.

4.  ACNA determined Derek Jones' is no longer the Bishop of the Armed Forces and Chaplaincy.

The College of Bishops elected Derek Jones to the position of Bishop of the Armed Forces and Chaplaincy pursuant to Title I, Canon 11.1. Derek Jones accepted the position, swore his Oath of Conformity and Oath of Obedience, and received his Certificate of Investiture. At a meeting of the College of Bishops dated September 25, 2025, the College of Bishops determined and passed a resolution that Derek Jones vacated the position of Bishop of the Armed Forces and Chaplaincy under the Constitution and Canons of ACNA. Exhibit 16, Dkt. No. 13-16, at 2. At the same meeting, the College of Bishops elected Jerome Cayangyang as Bishop of the Armed Forces and Chaplaincy, succeeding Derek Jones in that position. *Id.* at 3. The same College that installed Bishop Jones determined his position was vacant, and elected a successor to the position.

5. <u>ACNA determined the Special Jurisdiction for the Armed Forces and Chaplaincy continues</u>

In a Canon adopted in 2014, ACNA created the Special Jurisdiction for the Armed Forces and Chaplaincy. This is a ministry of ACNA established to

> Oversee the Church's ministry of clergy serving in Endorsed Chaplaincies to include Governmental agencies, such as the Armed Forces of the United States, Veteran's Administration, and Department of Justice…

<u>Exhibit 1</u>, Dkt. No. 13-1, at 27. ACNA has never abandoned this ministry, which was under the authority of Derek Jones until his purported withdrawal and is now under the authority of Bishop Cayangyang. *Id.*, Title I, Canon 11.1. To further this ministry, ACNA has elected Jerome Cayangyang to the position of Bishop of the Armed Forces and Chaplaincy. <u>Exhibit 16</u>, Dkt. No. 13-16.

6. <u>ACNA determined the chaplains remain ordained in ACNA</u>

Plaintiff complains that ACNA is attempting to "deprive Plaintiff of its member chaplains." Dkt. No. 6 at 2. The chaplains formerly endorsed by Derek Jones are chaplains holding holy orders in the ACNA. They have always been ACNA chaplains and will remain so unless they resign their holy orders. And Plaintiff's connection with the chaplains specifically arises out of Letters Dimissory issued by ACNA churches. Dkt. No. 6-1 at 4, ¶8. As Plaintiff's own Declaration shows, Letters Dimissory

> release the candidates from their "domicile" in other churches and permit Plaintiff to accept them into the Jurisdiction of the Armed Forces and Chaplaincy as full members, entitled to spiritual support of Plaintiff and subject to Plaintiff's oversight and discipline.

Dkt. No. 6-1, ¶8. "Spiritual support", "oversight", and "discipline" are all ecclesiastical matters. In fact, chaplains ordained in ACNA must subscribe a declaration of "canonical obedience" to the bishop of the diocese ***and his successors***. <u>Exhibit 1</u>, Dkt. No. 13-1,

pg. 36, Canon III.3.2, and pg. 37, Canon III.4.3. Jones is no longer the Bishop of the Armed Forces and Chaplaincy, so chaplains ordained in ACNA and serving in the Special Jurisdiction for the Armed Forces and Chaplaincy are no longer under Jones' jurisdiction. And Plaintiff simply cannot alter the requirements or interpretations of ACNAs canons. In fact, Plaintiff and Derek Jones explicitly state that they are no longer affiliated with ACNA.

After Derek Jones withdrew from the College of Bishops and ACNA, on September 20, 2025, Plaintiff's Provost over the chaplains, Lawrence "Mac" McElrath, requested Archbishop Steve Wood to provide "immediate temporal episcopal oversight of all Chaplains." Decl. Cayangyang, Dkt. No. 13-17, <u>Exhibit A</u> attached thereto. While Plaintiff couches its argument as ACNA attempting to change Plaintiff's bylaws and inner workings, it is clear that ACNA was protecting the right to minister to its chaplains. And ACNA has an unfettered right to minister to chaplains ordained in ACNA, unless those chaplains wish to withdraw from ACNA.

7.  <u>These determinations are binding on this Court.</u>

ACNA's determination that Bishop Jones vacated the position of the Bishop of the Armed Forces and Chaplaincy is final and binding on this Court. Similarly, ACNA's election of Jerome Cayangyang as successor Bishop of the Armed Forces and Chaplaincy also binds this Court. "Anything less would ask this Court to become involved with the question of who is the proper religious leader of a diocese, something that would necessitate impermissible entangling with a religious controversy." *vonRosenberg v. Lawrence*, 412 F. Supp. 3d 612, 631 (D.S.C.).

So strong is the First Amendment's prohibition in this area, Plaintiff's claims arising out of ACNA's removal of Derek Jones as Bishop of the Armed Forces and Chaplaincy

and election of his successor are barred under *Milivojevich* and its progeny. Because Plaintiff's claims are rooted in ACNA's inhibition and discipline of Bishop Jones, Plaintiff cannot maintain claims for defamation, tortious interference, or similar state law claims. *See, McRaney v. N. Am. Mission Bd. of the S. Baptist Convention, Inc*., No. 23-60494, 2025 WL 2602899, at *17 (5th Cir. Sept. 9, 2025) ("Resolving these claims would impermissibly require a court 'to decide matters of faith and doctrine.'").

In *McRaney*, the plaintiff sued the defendants for claims of tortious interference with business relationships, defamation, and intentional infliction of emotional distress. *Id.* at *2. Invoking the ecclesiastical abstention doctrine, the U.S. Court of Appeals for the Fifth Circuit explained that courts must recognize "a sphere of independence that courts cannot pierce" to protects churches' decisions in terminating ministers. *Id.* at *6. The Fifth Circuit then held "[t]he First Amendment's protection of a religious organization's right to decide "who will personify its beliefs, … and who will minister to the faithful…, extends just as strongly to ministries structured through voluntary associations and at-will partnerships." *McRaney*, No. 23-60494, 2025 WL 2602899 at *18.

In *Bell v. Presbyterian Church (U.S.A.)*, 126 F.3d 328 (4th Cir. 1997), the plaintiff accused the defendants of focusing on "taking over" his ministry, or "on his personal life", or on "unjustified claims of financial misconduct".  *Id.* at 331. The Fourth Circuit held the ecclesiastical abstention doctrine barred the pastor's claims against defendants. *Id*. at 332–33. Otherwise, resolving the claims would "interpose the judiciary into ... the decisions of ... constituent churches, relating to how and by whom they spread their message and ***specifically their decision to select their outreach ministry*** through the granting or withholding of funds." *Id*. at 332 (emphasis added). As a result, the Fourth

Circuit affirmed the dismissal of Bell's claims for breach of contract, tortious interference, and wrongful termination. *Id*. at 332-33.

ACNA's decision to withhold Derek Jones' and Plaintiff's authority to endorse Chaplains ordained in ACNA is similarly "beyond the ken" of civil courts. *Id.* at 331. Because Plaintiff's claims center solely on ACNA's choice of "how and by whom they spread their message and specifically their decision to select" another endorser of its chaplains, this Court cannot and should not enjoin ACNA. *Bell,* 126 F.3d at 332. Even Plaintiff's accusation of "poisonous jealousy", Dkt. No. 6 at 6, does not take ACNA's actions out of the protection of the ecclesiastical abstention doctrine, because this Court would have to examine ACNA's motives, an examination which is also barred. *Bell,* 126 F.3d at 331-32. And couching these claims as secular claims does not save Plaintiff's claims. Derek Jones was clearly a minister of ACNA, and Plaintiff clearly undertook to carry out some ministries of ACNA.

## CONCLUSION

For the reasons stated herein, Defendant ACNA respectfully requests this Court deny Plaintiff's Motion for Temporary Restraining Order, or, in the alternative, for Preliminary Injunction. Plaintiff is not entitled to a presumption of ownership of its marks, Defendant has common law rights to its marks, and this Court should honor the immunity doctrine set forth in *Milivojevich* and its progeny.

Respectfully submitted,

*/s/ R. Bruce Wallace*
R. Bruce Wallace, FED ID 7018
MAYNARD NEXSEN PC
Post Office Box 486
Charleston, SC 29402
T:843-577-9440
E: bwallace@maynardnexsen.com

Sara C. Kanos, FED ID 9978
MAYNARD NEXSEN PC
Post Office Drawer 2426
Columbia, SC 29202
T: 803-771-8900
E: skanos@maynardnexsen.com

Richard S. Dukes,  FED ID 7340
TURNER PADGET GRAHAM & LANEY
P.O. Box 22129
Charleston, SC 29413
T: 843-576-2810
E: rdukes@turnerpadget.com

Carmelo B. "Sam" Sammataro, FED ID 9174
TURNER PADGET GRAHAM & LANEY
Post Office Box 1473
Columbia, SC 29202
T: 803-254-2200
E:    ssammataro@turnerpadget.com