UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

| | |
|---|---|
| JURISDICTION OF THE ARMED FORCES AND CHAPLAINCY, | Civil Action No. 2:25-cv-12848-BHH |
| Plaintiff, | **DEFENDANT'S OPPOSITION TO PLAINTIFF'S MOTION FOR A TEMPORARY RESTRAINING ORDER, OR, IN THE ALTERNATIVE FOR PRELIMINARY INJUNCTION** |
| v. | |
| ANGLICAN CHURCH IN NORTH AMERICA, | |
| Defendant. | |

**EXHIBIT 1 –** **Constitution and Canons, Anglican Church of North America**

# THE ANGLICAN CHURCH IN NORTH AMERICA



# CONSTITUTION AND CANONS

*As ratified by the Inaugural Provincial Assembly, June 2009
and amended by the sixth Provincial Assembly, June 2024*

The Rev. Dr. Travis S. Boline

Digitally signed by The Rev. Dr. Travis S. Boline
Date: 2024.07.24 12:55:13 -04'00'

1

# THE CONSTITUTION OF
# THE ANGLICAN CHURCH IN NORTH AMERICA

**PREAMBLE**

In the Name of God, the Father, the Son and the Holy Spirit, Amen.

We are Anglicans in North America united by our faith in the Lord Jesus Christ and the trustworthiness of the Holy Scriptures and presently members of the Common Cause Partnership.

We know ourselves to be members of the One, Holy, Catholic, and Apostolic Church.

We are grieved by the current state of brokenness within the Anglican Communion prompted by those who have embraced erroneous teaching and who have rejected a repeated call to repentance.

We repent ourselves of things done and left undone that have contributed to or tolerated the rise of false teaching, and we humbly embrace the forgiveness that comes through Christ's atoning sacrifice.

We are grateful for the encouragement of Primates of the worldwide Anglican Communion who gathered at Jerusalem in June 2008 and called on us to establish a new Province in North America. We affirm the Global Anglican Future Conference (GAFCON) Statement and Jerusalem Declaration issued 29 June 2008.

We believe that this Constitution is faithful to that call and consistent with the Historic Faith and Order of the Church, and we invite the prayers of all faithful Anglicans as we seek to be obedient disciples of Jesus Christ our One Lord and Savior.

**ARTICLE I: FUNDAMENTAL DECLARATIONS OF THE PROVINCE**

As the Anglican Church in North America (the Province), being a part of the One, Holy, Catholic, and Apostolic Church of Christ, we believe and confess Jesus Christ to be the Way, the Truth, and the Life: no one comes to the Father but by Him. Therefore, we identify the following seven elements as characteristic of the Anglican Way, and essential for membership:

1.  We confess the canonical books of the Old and New Testaments to be the inspired Word of God, containing all things necessary for salvation, and to be the final authority and unchangeable standard for Christian faith and life.

2.  We confess Baptism and the Supper of the Lord to be Sacraments ordained by Christ Himself in the Gospel, and thus to be ministered with unfailing use of His words of institution and of the elements ordained by Him.

3.  We confess the godly historic Episcopate as an inherent part of the apostolic faith and practice, and therefore as integral to the fullness and unity of the Body of Christ.

4.  We confess as proved by most certain warrants of Holy Scripture the historic faith of the undivided church as declared in the three Catholic Creeds: the Apostles', the Nicene, and the Athanasian.

5. Concerning the seven Councils of the undivided Church, we affirm the teaching of the first four Councils and the Christological clarifications of the fifth, sixth and seventh Councils, in so far as they are agreeable to the Holy Scriptures.

6. We receive The Book of Common Prayer as set forth by the Church of England in 1662, together with the Ordinal attached to the same, as a standard for Anglican doctrine and discipline, and, with the Books which preceded it, as the standard for the Anglican tradition of worship.

7. We receive the Thirty-Nine Articles of Religion of 1571, taken in their literal and grammatical sense, as expressing the Anglican response to certain doctrinal issues controverted at that time, and as expressing fundamental principles of authentic Anglican belief.

In all these things, the Anglican Church in North America is determined by the help of God to hold and maintain, as the Anglican Way has received them, the doctrine, discipline and worship of Christ and to transmit the same, unimpaired, to our posterity.

We seek to be and remain in full communion with all Anglican Churches, Dioceses and Provinces that hold and maintain the Historic Faith, Doctrine, Sacraments and Discipline of the One, Holy, Catholic, and Apostolic Church.

## ARTICLE II: THE MEMBERSHIP OF THE PROVINCE

1. The founding entities of the Anglican Church in North America are the members of the Common Cause Partnership namely:

> The American Anglican Council
> The Anglican Coalition in Canada
> The Anglican Communion Network
> The Anglican Mission in the Americas
> The Anglican Network in Canada
> The Convocation of Anglicans in North America
> Forward in Faith – North America
> The Missionary Convocation of Kenya
> The Missionary Convocation of the Southern Cone
> The Missionary Convocation of Uganda
> The Reformed Episcopal Church

2. New dioceses or networks (whether regional or affinity-based) may be added to the Province by the Provincial Council, pursuant to the process outlined by canon.

3. Member dioceses (or groups of dioceses organized into distinct jurisdictions) are free to withdraw from the Province by action of their own governing bodies at any time.

## ARTICLE III: THE MISSION OF THE PROVINCE

1. The mission of the Province is to extend the Kingdom of God by so presenting Jesus Christ in the power of the Holy Spirit that people everywhere will come to put their trust in God through Him, know Him as Savior and serve Him as Lord in the fellowship of the Church. The chief agents of this mission to extend the Kingdom of God are the people of God.

2. The work of the Province is to equip each member of the Province so that they may reconcile the world to Christ, plant new congregations, and make disciples of all nations; baptizing them in the Name of the Father, and of the Son and of the Holy Spirit, and teaching them to obey everything commanded by Jesus Christ.

3. The Province will seek to represent orthodox North American Anglicans in the councils of the Anglican Communion.

## ARTICLE IV: THE STRUCTURE OF THE PROVINCE

1. The fundamental agency of mission in the Province is the local congregation.

2. Congregations and clergy are related together in a diocese or network (whether regional or affinity-based), united by a bishop.

3. Each diocese or network (whether regional or affinity-based) shall be represented in the Provincial Assembly.

4. Dioceses or networks (whether regional or affinity-based) may band together for common mission, or as distinct jurisdictions at the sub-Provincial level.

5. Each bishop in active episcopal ministry shall be included in a Provincial College of Bishops as provided by canon.

6. There shall be a Provincial Council as provided by Article VII and by Canon.

7. This Constitution recognizes the right of each diocese or network (whether regional or affinity-based) to establish and maintain its own governance, constitution and canons not inconsistent with the provisions of the Constitution and Canons of this Province.

## ARTICLE V: AREAS OF PROVINCIAL RESPONSIBILITY

The Provincial Council, subject to ratification by the Provincial Assembly, has power to make canons ordering our common life in respect to the following matters:

1. Safeguarding the Faith and Order of the Province
2. Supporting the mission of the Province
3. Common Worship
4. Standards for ordination
5. Clergy support and discipline
6. Ecumenical and international relations
7. Norms for Holy Matrimony
8. Providing for the proper administration of the Province

## ARTICLE VI: THE PROVINCIAL ASSEMBLY

1. The chief work of the Provincial Assembly shall be strengthening the mission of the Province.

2. The Provincial Assembly shall ratify Constitutional amendments and Canons adopted by the Provincial Council. The process of ratification is set forth by canon.

3. The Provincial Assembly shall be composed of representatives of all the dioceses and networks (whether regional or affinity-based) in balance and in number from the laity, bishops and other clergy as from time-to-time determined by canon.

4. The Provincial Assembly may meet as often as annually, but shall meet not less than every five years. Meetings shall be called as provided for by canon.

## ARTICLE VII: THE PROVINCIAL COUNCIL

1. The Provincial Council is the governing body for the Anglican Church in North America and shall have the authority to adopt canons and constitutional amendments for ratification by the Provincial Assembly and to establish the program and budget of the Province.

2. The membership of Provincial Council shall be composed as provided for by Canon. Initially, the Provincial Council shall be composed of the members of the Common Cause Leadership council, as constituted under the Common Cause Articles.

3. Provincial Council members hold office for five years. However, initially, each diocese shall take steps to implement a system of staggered terms.

4. A retiring member of the Provincial Council is eligible for re-election for one additional term, but not for a third.

5. The Provincial Council may appoint up to six persons as full members.

6. The Provincial Council may appoint a deputy chair, a secretary, a treasurer and such other office bearers as it deems necessary.

7. The Provincial Council will meet at least once in each calendar year.

8. Special meetings of the Provincial Council may be called as provided for by canon.

9. The Chair with the assistance of the Executive Committee and other office bearers will be responsible for the agenda of each Provincial Council meeting.

10. The Provincial Council shall have an Executive Committee, whose membership and duties may be established by canon. Initially the Executive Committee shall be composed of the members of the Common Cause Executive Committee, as constituted under the Common Cause Articles.

## ARTICLE VIII: THE LIMITS OF PROVINCIAL AUTHORITY

1. The member dioceses or networks (whether regional or affinity-based) and those dioceses banded together as jurisdictions shall each retain all authority they do not yield to the Province by their own consent. The powers not delegated to the Province by this constitution nor prohibited by this Constitution to these dioceses or jurisdictions, are reserved to these dioceses or jurisdictions respectively.

2. The Province shall make no canon abridging the authority of any member dioceses or networks (whether regional or affinity-based) and those dioceses banded together as jurisdictions with respect to its practice regarding the ordination of women to the diaconate or presbyterate.

## ARTICLE IX: THE ARCHBISHOP

1. The Archbishop will be known as the *Archbishop and Primate of the Anglican Church in North America.* The Archbishop will be elected by the College of Bishops.

2. The person elected as Archbishop will hold office for a term of five years concluding at the end of the meeting of the Assembly following the meeting of the College of Bishops which

elects the next Archbishop unless such election takes place in accordance with the provisions of Canon I.3.3. An Archbishop who has served one term of office may be elected for a second term of office but not a third.

3. The Archbishop convenes the meetings of the Provincial Assembly, Provincial Council and College of Bishops, represents the Province in the Councils of the Church and carries out such other duties and responsibilities as may be provided by canon.

## ARTICLE X: COLLEGE OF BISHOPS

1. The chief work of the College of Bishops shall be the propagation and defense of the Faith and Order of the Church, and in service as the visible sign and expression of the Unity of the Church.

2. Each bishop in active episcopal ministry shall be included in the College of Bishops as provided by canon.

3. The College of Bishops shall elect the Archbishop from among its members.

4. The College of Bishops will meet with such frequency as best serves its chief work, and at the call of the Archbishop or one quarter of the episcopal members of the Provincial Council.

5. The College of Bishops shall have authority in the election of bishops of the Province which may be: a) consent to an election from a diocese or network (whether regional or affinity-based), or b) the actual choice and consent from among two or more nominees put forward by a diocese or network (whether regional or affinity-based), in the manner set forward by canon.

## ARTICLE XI: PROVINCIAL TRIBUNAL AND OTHER COURTS

1. There shall be an ecclesiastical court of final decision to be known as the Provincial Tribunal consisting of seven members, both lay and clergy, who shall be appointed by the Provincial Council on such terms and conditions as determined by canon. The jurisdiction of the Provincial Tribunal shall be to determine matters in dispute arising from the Constitution and Canons of the Province and such other matters as may be authorized by canon.

2. There shall be a Court for the Trial of a Bishop to function as provided by canon.

3. The Provincial Council may, by canon, create such additional courts, inferior to the Provincial Tribunal, as may be necessary or appropriate to determine matters of church discipline.

4. Each Diocese shall, by canon, establish its own ecclesiastical Trial Court for the trial of a deacon or presbyter.

## ARTICLE XII: OWNERSHIP OF PROPERTY

All church property, both real and personal, owned by each member congregation now and in the future is and shall be solely and exclusively owned by each member congregation and shall not be subject to any trust interest in favor of the Province or any other claim of ownership arising out of the canon law of this Province. Where property is held in a different manner by any diocese or grouping, such ownership shall be preserved.

**ARTICLE XIII: FINANCES**

Each member diocese or network (whether regional or affinity-based) or any group of dioceses organized into a distinct jurisdiction agrees to share the cost of operating the Province as provided by canon.

**ARTICLE XIV: REMOVAL FROM MEMBERSHIP**

As may be provided by canon, a member diocese or network (whether regional or affinity-based) or any group of dioceses organized into a distinct jurisdiction may be removed from membership in the Province, after due warning from the Executive Committee, if agreed to by two-thirds of the members present and voting and at least a majority in two of the three orders of bishops, clergy and laity within the Provincial Council.

**ARTICLE XV: ADOPTION AND AMENDMENT OF THIS CONSTITUTION**

1. This Constitution has been adopted by the Leadership Council of the Common Cause Partnership serving as initial Provincial Council. It shall be submitted to the Provincial Assembly for ratification at a meeting to be called by the Provincial Council not later than 31 August 2009 and shall become effective immediately upon such ratification.

2. This Constitution may be amended by the Provincial Assembly by two-thirds of the members present and voting at any regular or special meeting called for that purpose. Any changes or amendments to the Constitution shall not become effective in less than ninety days following that meeting.

+++++++++++++++++++++++++

**We certify that the foregoing is the text of the Constitution of the Anglican Church in North America adopted by the Common Cause Leadership Council functioning as the Provincial Council and ratified with amendments by the Provincial Assembly at its meeting at Saint Vincent's Cathedral, Bedford, Texas, on the 22nd day of June in the Year of our Lord 2009.**

_____          _____
The Right Reverend Robert W. Duncan                The Venerable Charlie Masters
Archbishop of the Anglican Church in               Acting Deputy Chair and Bishop-Elect
        North America


**I certify that the text of the Constitution set out above is the text of the Constitution of the Anglican Church in North America ratified by the Provincial Assembly at its meeting at Saint Vincent's Cathedral, Bedford, Texas, on the 22nd day of June in the Year of Our Lord 2009.**

_____
The Rev. Travis S. Boline
Acting Secretary

# THE CANONS OF
# THE ANGLICAN CHURCH IN NORTH AMERICA

## *Table of Contents*

### Title I
### Organization and Administration of the Church

*Definition of Terms*..................................................................................................page 1

*Canon 1 - Of the Council*.........................................................................................page 1-3

Section 1 - Concerning Governance
Section 2 - Concerning Membership
Section 3 - Concerning Meetings of the Council
Section 4 - Concerning the Executive Committee
Section 5 - Concerning Officers of the Church

*Canon 2 - Of the Assembly*.......................................................................................page 3-4

Section 1 - Concerning Mission
Section 2 - Concerning Governance
Section 3 - Concerning Membership
Section 4 - Concerning Youth Representation
Section 5 - Concerning Meetings
Section 6 - Concerning the Presiding Officer

*Canon 3 - Of the College of Bishops*........................................................................page 4-5

Section 1
Section 2
Section 3 – Concerning Incapacity of the Archbishop
Section 4

*Canon 4 - Of Committees*..........................................................................................page 5

Concerning Initial Committees

*Canon 5 - Of Dioceses*..............................................................................................page 6-8

Section 1 - Concerning Structure
Section 2 - Concerning Governance
Section 3 - Concerning Standing Committees
Section 4 - Concerning Oversight by Other Anglican Provinces
Section 5 - Concerning Applying for Diocesan Status
Section 6 - Concerning Diocese-In-Formation Status
Section 7 - Concerning the Strengthening of Dioceses
Section 8 - Concerning Safeguarding Policies
Section 9 - Concerning Reports of Misconduct

*Canon 6 - Of Congregations*.........................................................................page 9-10

Section 1 - Concerning Congregational Mission
Section 2 - Concerning Congregations
Section 3 - Concerning Organization
Section 4 - Concerning Congregational Clergy and Lay Employees
Section 5 - Concerning Governing Boards
Section 6 - Concerning Property Ownership
Section 7 - Concerning Planting New Congregations
Section 8 - Concerning Annual Reports
Section 9 - Concerning Transfer or Disaffiliation

*Canon 7 - Of Ministry Partners, Affiliated Ministries, Religious Orders,*
     *Other Christian Communities and Solitary Religious*......................................page 10-11

Section 1 - Concerning Cooperation
Section 2 - Concerning Ministry Partners
Section 3 - Concerning Affiliated Ministries
Section 4 - Concerning Religious Orders
Section 5 – Concerning Christian Communities or Societies
Section 6 – Concerning Solitary Religious

*Canon 8 - Of Visitors* ...............................................................................page 11

*Canon 9 - Of Finances*.............................................................................page 11-12

Section 1 - Concerning the Tithe
Section 2 - Concerning Finance and Budget
Section 3 - Concerning Financial Responsibility and Accountability

*Canon 10 - Of the Laity* ............................................................................page 12-13

Section 1 - Concerning Ministry
Section 2 - Concerning Duties of the Laity
Section 3 - Concerning Membership in the Church

*Canon 11 - Of the Special Jurisdiction for the Armed Forces and Chaplaincy* .......page 13-15

Section 1
Section 2
Section 3
Section 4
Section 5
Section 6
Section 7
Section 8
Section 9
Section 10
Section 11
Section 12
Section 13

*Canon 12 - Of Missionary Districts*................................................................page 15

# Title II
## Worship and the Administration of Sacraments

*Canon 1 - Of Translations of the Bible* ..........................................................page 16

*Canon 2 - Of the Standard Book of Common Prayer* ..............................page 16
Section 1
Section 2

*Canon 3 - Of the Due Celebration of the Lord's Day* ...........................page 16

*Canon 4 - Of the Administration of the Dominical Sacraments*..............page 16-17
Section 1 - General
Section 2 - Concerning Christian Formation
Section 3 - Concerning the Holy Communion

*Canon 5 - Of the Music of the Church* ........................................................page 17

*Canon 6 - Of Lay Worship Ministry*...........................................................page 17

*Canon 7 - Of Christian Marriage*................................................................page 17-19
Section 1
Section 2
Section 3
Section 4
Section 5
Section 6
Section 7
Section 8

*Canon 8 - Standards of Sexual Morality and Ethics*................................page 19
Section 1
Section 2
Section 3
Section 4

# Title III
## Of Ministers, Their Recruitment, Preparation, Ordination, Office, Practice and Transfer

*Canon 1 - Of Holy Orders in the Anglican Church in North America* ....................page 20
Section 1 - Concerning the Historic Three-fold Pattern for Holy Orders
Section 2 - Concerning Canonical Obedience to Those in Authority
Section 3 – Concerning the Domicile, Transfer, and Permission to Function of
    Presbyters and Deacons Generally
Section 4 - Concerning Norms for Ordination Generally

*Canon 2 - Of the Qualities of Those Who are to be Ordained Deacons and Presbyters*

Section 1 - Concerning General Requirements..............................................................page 20-21
Section 2 - Concerning Requirements for Deacon According to Holy Scripture
Section 3 - Concerning Requirements for Presbyter According to Holy Scripture
Section 4 - Concerning Requirements for Married Candidates With and Without Children
Section 5 - Concerning Upholding the Sanctity of Marriage Especially for Those to be Ordained
Section 6 - Concerning Pastoral Exceptions to Section 5
Section 7 - Concerning Theological Training Requirements

*Canon 3 - Of Deacons and Their Ordination* ..............................................................page 22

Section 1 - Concerning Prerequisites for Ordination
Section 2 - Concerning the Required Declaration of Ordinands
Section 3 - Concerning Length of Diaconate

*Canon 4 - Of Presbyters and Their Ordination* ..............................................................page 22-23
Section 1 - Concerning Ordination Following Period of Diaconate
Section 2 - Concerning Prerequisites for Ordination
Section 3 - Concerning the Required Declaration of Ordinands

*Canon 5 - Of Ministers Ordained in Jurisdictions not in Communion*...................page 23-24
     *with this Church*

Section 1 - Concerning Application for Holy Orders in this Church
Section 2 - Concerning Pre-Ordination Requirements
Section 3 - Concerning Ministers Ordained in Jurisdictions in the Historic
          Succession but not in Communion with this Church
Section 4 - Concerning Receiving a Bishop from another Jurisdiction not in
          Communion with this Church

*Canon 6 - Of the Acceptance and Dismissal of Clergy in this Church* ...................page 24-25

Section 1 - Concerning the Transfer of Clergy from Jurisdictions in Communion with this Church
Section 2 - Concerning Transfers from one Diocese of this Church to Another
Section 3 - Concerning Voluntary Resignation from the Ordained Ministry of this Church

*Canon 7 - Of Rectors and Other Congregational Clergy* ..........................................page 25

*Canon 8 - Of Bishops*..................................................................................................page 25-29

Section 1 – Concerning Requirements for Bishop According to Holy Scripture
Section 2 – Concerning the Ministry of Bishops
Section 3 – Concerning Criteria for the Episcopate
Section 4 – Concerning the Election of Bishops
Section 5 – Concerning the Required Declarations at Consecration
Section 6 – Concerning Bishops for Special Mission
Section 7 – Concerning Incapacity of the Diocesan Bishop
Section 8 – Procedure When the Episcopal Relationship is Imperiled or Hindered
Section 9 – Concerning Voluntary Resignation by a Bishop from Ordained Ministry of this Church

**TITLE IV**
**Ecclesiastical Discipline**

***Canon 1 - Of the Nature of Discipline in the Church*** ..................................................page 30

***Canon 2 - Of Charges against and Godly Admonitions to Bishops,*** .........................page 30-31
        ***Presbyters, or Deacon***s

Section 1 - Concerning Charges
Section 2 - Concerning Godly Admonitions

***Canon 3 - Of Presentments of Presbyters and Deacons***..............................................page 31-32

Section 1 - Concerning Accusations
Section 2 - Concerning Voluntary Submission to Discipline
Section 3 - Concerning Canonical Investigation, Presentment and Trial
Section 4 - Concerning Requirements for a Presentment

***Canon 4 - Of Presentments of Bishops*** ........................................................................page 33

Section 1 - Concerning Requirements for Presentment
Section 2 - Concerning Response to Rumors
Section 3 - Concerning the Board of Inquiry
Section 4 - Concerning the Process of Inquiry
Section 5 - Concerning Testimony and Confidentiality
Section 6 - Concerning the Findings of the Board of Inquiry

***Canon 5 - Of Courts, Membership and Procedures*** ....................................................page 33-36

Section 1 - Concerning Courts for the Trial of a Presbyter or a Deacon
Section 2 - Concerning Courts for the Trial of a Bishop
Section 3 - Concerning Court of Extraordinary Jurisdiction
Section 4 - Concerning the Provincial Tribunal
Section 5 - Concerning Appeal
Section 6 - Concerning the Process of the Appeal
Section 7 - Concerning Procedures

***Canon 6 - Of a Member of the Clergy in Any Diocese Chargeable*** ...........................page 36
        ***with Offense in Another***

***Canon 7 - Of Renunciation of Ministry*** .....................................................................page 36

***Canon 8 - Of Sentences*** ...............................................................................................page 36-37

Section 1 - Concerning the Sentencing of a Presbyter or Deacon
Section 2 - Concerning the Sentencing of a Bishop
Section 3 - Concerning Range of Sentencing
Section 4 - Concerning Length of Sentences

***Canon 9 - Of Inhibitions***..............................................................................................page 37-39

Section 1 - Concerning Inhibitions
Section 2 - Concerning Inhibition of a Presbyter or a Deacon
Section 3 - Concerning Inhibition of a Bishop

Section 4 - Concerning Inhibition of the Archbishop

***Canon 10 - Of Notification of Disciplinary Action Taken*** .........................................page 39

***Canon 11 – The Provincial List***...................................................................................page 39-40

## TITLE V
## Enactment, Amendment, and Repeal of Canons

***Canon 1 - Of Enactment, Amendment, and Repeal*** ...................................................page 41

Section 1 - Concerning New Canons
Section 2 - Concerning the Repealing of Canons
Section 3 - Concerning the Form of Amendment
Section 4 - Concerning the Form of Repeal
Section 5 - Concerning Effective Dates

## APPENDIX A
## Recognition as a New Diocese/Network or as a Diocese/Network
## "In Formation"

***Guidelines***.....................................................................................................................page 43

***Application Information*** ...............................................................................................page 44-47

***Application Form*** ..........................................................................................................page 48

# THE CANONS OF
# THE ANGLICAN CHURCH IN NORTH AMERICA

## TITLE I
## Organization and Administration of the Church

*Definition of Certain Terms*

**ASA -** "ASA" means the Average Sunday Attendance of a congregation or Diocese for the previous calendar year. ASA may include regular Saturday worship.

**Assembly -** "Assembly" means the Provincial Assembly of the Church.

**Bishop with Authority to Act** [1] – A "Bishop with authority to act" is normally the Diocesan bishop. In his absence, a duly elected Bishop Co-adjutor would have such authority, or other bishop as expressly designated by the canons of the diocese.

**Church -** The term "Church" means the Anglican Church in North America. The terms "Church" and "Province" are synonymous herein.

**Council -** The term "Council" means the Provincial Council of the Church.

**Day** [2] **-** Unless otherwise specified, the term "day" means calendar day, which shall include weekends and holidays. If "business day" is specified, the term "day" shall exclude weekends and holidays recognized by the Anglican Church in North America.

**Diocese -** The term "Diocese" includes a diocese or network (whether regional or affinity-based).

**Ecclesiastical Authority** [3] **-** The diocesan Bishop or, in the absence of a Bishop with authority to act, the Standing Committee or its equivalent.

**The Faith -** "The Faith" is the faith once for all delivered to the saints of the One, Holy, Catholic, and Apostolic church, as set forth in Article I of the Constitution.

**Presbyter -** The terms "Presbyter" and "Priest" are synonymous herein.

*Canon 1*
*Of the Council*

**Section 1 -** *Concerning Governance*
The Provincial Council is the governing body of the Church and has the authority to establish the program and budget of the Church, including such organizational decisions as may facilitate the work of the Church. The Council shall deliberate upon matters affecting the interests of the

---

[1] This definition was added by the 2020 Provincial Council and ratified by the Provincial Assembly at its meeting on June 26, 2024. It becomes effective on September 24, 2024.
[2] This definition was added by the 2023 Provincial Council and ratified by the Provincial Assembly at its meeting on June 26, 2024. It becomes effective on September 24, 2024.
[3] This definition was added by the 2020 Provincial Council and ratified by the Provincial Assembly at its meeting on June 26, 2024. It becomes effective on September 24, 2024.

TITLE I

Church and shall approve policies accordingly. The Council shall adopt changes to the Constitution by a two-thirds majority vote of those present and voting, subject to ratification by the Assembly by a two-thirds majority vote of those present and voting. The Council shall adopt changes to the Canons by a simple majority vote of those present and voting, subject to for the Assembly. The Council shall have power to affirm such covenants entered into by the Archbishop or College of Bishops that define relationships with Anglicans internationally and with other Christian jurisdictions. The Council shall consider and report, with reasonable promptness, upon any matter that a Diocese or the Assembly or the Executive Committee may refer to the Council.

**Section 2 -** *Concerning Membership*
Each Diocese (i.e., diocese or network, whether regional or affinity-based, hereafter called a "Diocese") shall select, by means not inconsistent with the Constitution and Canons of the Church, one (1) Bishop, one (1) member of the Clergy, and two (2) lay persons to be members of the Council. The Council may appoint up to six (6) persons of any order as full members. Any member of the Executive Committee who is not otherwise a member of the Council shall be an *ex officio* member. A diocese may select a replacement to serve for the unexpired term of any member selected by that diocese who does not serve his or her full term of office. A retiring member of the Council is eligible for reelection for one additional term. Notwithstanding the foregoing, the initial Council shall be composed as provided in Article VII.2 of the Constitution. The term of office of a member of the Council shall be five (5) years.

**Section 3 -** *Concerning Meetings of the Council*
The Council shall meet at least annually. Special meetings of the Council may be called by the Archbishop or by a majority of the Executive Committee or by any fifteen members of the Provincial Council. A minimum of thirty (30) days notice must be given for each meeting in writing or by appropriate electronic means. Meetings of the Council shall be conducted under rules approved by the Council.

**Section 4 -** *Concerning the Executive Committee*
The Council shall have an Executive Committee which shall be the Board of Directors of the Anglican Church in North America, a non-profit corporation. The Executive Committee shall set the agenda for meetings of the Provincial Council. Any ten members of the Council may have an item of business placed on the agenda for consideration. The members of the Executive Committee shall be the Archbishop, who shall be chairman, and twelve (12) other members, six (6) ordained and six (6) lay, elected by the Council from among its members. The Executive Committee may elect a replacement for any member of the Executive Committee who does not serve for his or her full term of office. The Executive Committee shall have custody of documents and other property of the Church not vested in any other body or person. Notwithstanding the foregoing, the initial Executive Committee shall be as provided in Article VII.10 of the Constitution and shall continue in office until its successors are elected. Members of the Executive Committee shall serve three-year staggered terms and cannot serve more than two terms consecutively. Officers of the Province shall serve as ex officio members with voice but no vote.

2

TITLE I

**Section 5 -** *Concerning Officers of the Church* [4]

1. The Archbishop shall be the Presiding Officer of the Church, and the Presiding Officer of the Council. The Council shall appoint a Deputy Chair, a chancellor, a secretary, a treasurer, and such other officers of the Church as it deems necessary. The Council shall define the duties of each officer of the Church. The Archbishop shall appoint a Provincial Dean in consultation with the College of Bishops to serve at the pleasure of the Archbishop until his successor is appointed and who may be authorized by the Archbishop to represent him in his absence.

2. The Terms of the Officers shall be as follows: The term of the Archbishop shall be as provided in Article IX of the Constitution. The terms of the remaining officers shall be:

   - The term of the Deputy Chair shall be at the pleasure of the Archbishop.
   - The term of the Chancellor shall be at the pleasure of the Archbishop.
   - The term of the Secretary shall be for three years.
   - The term of the Treasurer shall be for three years.

   A vacancy occurring in any office other than that of the Archbishop shall be filled by the Executive Committee until the next meeting of the Provincial Council.

***Canon 2***
***Of the Assembly***

**Section 1 -** *Concerning Mission*
The chief work of the Assembly shall be strengthening the mission of the Church as defined in Article III of the Constitution. The role of the Assembly is to deliberate on any matter concerning the Faith and Mission of the Church and to make recommendations to the Provincial Council concerning such matters.

**Section 2 -** *Concerning Governance*
The Assembly shall function as a unicameral body. The role of the Assembly in the governance of the Church is to ratify the Constitution and Canons and any amendments adopted by the Council. Matters not ratified shall be returned to the Council for further consideration. The Assembly shall receive reports from the Council and make recommendations to strengthen the mission of the Province.

**Section 3 -** *Concerning Membership*
The membership of the Assembly shall be composed of laity, Clergy and Bishops. Lay and Clergy delegates shall continue in office until their successors are chosen and certified. Each Diocese, at a minimum, shall be represented by its Bishop or Bishops and two (2) members of the Clergy and two (2) lay persons. One (1) additional lay person and one (1) additional member of the Clergy may be added for each additional full one thousand (1,000) ASA of the Diocese. All active members of the College of Bishops shall be members of the Assembly. Each Diocese shall make application to the Executive Committee of the Council for certification of the allowable number of its delegates to the Assembly. A Diocese shall report the names and contact

---

[4] This section was amended by the 2024 Provincial Council and ratified by the Provincial Assembly at its meeting on June 26, 2024. It becomes effective on September 24, 2024.

information of its delegates, and such alternates as it deems prudent to name, not later than sixty (60) days (thirty [30] days in the case of the initial Assembly) prior to a meeting of the Assembly. The Council shall certify to each Diocese its allowable number of delegates within fifteen (15) days of the receipt of such application. (After the initial meeting of the Assembly, the Council may delegate this responsibility to the Executive Committee.) A Diocese-in-Formation is entitled to membership in the Assembly under Canon I.5.6. Founding non-ecclesial organizations shall have representation through one (1) Bishop, one (1) member of the Clergy and one (1) lay person. The officers of the Church shall be *ex officio* members of the Assembly.

**Section 4 -** *Concerning Youth Representation*
Each Diocese may send one (1) youth representative to the Assembly for every one thousand (1,000) ASA, in addition to its other representation in the Assembly. Youth representatives must be at least sixteen (16) years of age, but not older than twenty-six (26) years of age, at the time of the convening of the Assembly. Youth representatives shall have both voice and vote.

**Section 5 -** *Concerning Meetings*
The Assembly may meet as often as annually and shall meet not less than once every five years. An Assembly will always be held to mark the end of the five-year term of an Archbishop. Special meetings of the Assembly may be called by the Archbishop or by two-thirds of the Executive Committee upon not less than ninety (90) day notice to each member of the Assembly by written or appropriate electronic means, or as provided in Title I, Canon 3, Section 4 below. Meetings of the Assembly shall be conducted under rules adopted from time to time by the Assembly. Rules for conducting the inaugural meeting of the Assembly shall be determined by the Archbishop.

**Section 6 -** *Concerning the Presiding Officer*
The presiding officer of the Assembly shall be the Archbishop or such other persons as he may designate from time to time.

*Canon 3*
*Of the College of Bishops*

**Section 1 -**
The membership and chief work of the College of Bishops is as provided in Article X of the Constitution. The College of Bishops shall order its life and develop such rules and procedures as it deems appropriate for its life and work.

**Section 2 -**
The College of Bishops shall meet in the week preceding the Provincial Assembly that marks the end of an Archbishop's term for the purpose of electing from the active members of the College with jurisdiction a new Archbishop to serve a five-year term. The Archbishop whose term is expiring shall convey the authority of the office to the newly elected Archbishop at the conclusion of the Provincial Assembly following his election. This action shall mark the beginning of his five-year term. The investiture of a new Archbishop shall be set for a time and place suited to the interests of the Province and the diocese from which he has been elected.

**Section 3. -** *Concerning Incapacity of the Archbishop*
1. When a majority of the members of the Executive Committee have significant concern

4

regarding the physical or mental capacity of the Archbishop to carry out his duties, they shall promptly notify the Dean of the Province who may appoint a pastoral representative to assist the Executive Committee in addressing the concerns with the Archbishop and his family. For purposes of this canon, in the absence of the Dean of the Province or if there is no Dean, the senior active diocesan bishop by date of consecration shall assume the duties of the Dean as provided in this canon.

2.  If the matter is not resolved and a majority of the Executive Committee believe that the Archbishop is no longer able to carry out his duties due to a physical or mental incapacity, the Executive Committee shall notify the Dean of the Province and ask the Archbishop to submit to examination by at least two licensed physicians or psychologists, who have a specialty appropriate to the circumstance and who shall render their opinion to the Executive Committee and to the Archbishop and his family. One of the physicians or psychologists shall be chosen by the Archbishop and one by the Dean.

3.  If, after considering the report of the physicians or psychologists the Executive Committee determines that the Archbishop is no longer able to carry out his duties due to a physical or mental incapacity, the Executive Committee may, upon a two-thirds majority vote, ask the Archbishop to resign or to take a medical leave of absence. The Executive Committee shall report this matter to the Dean of the Province, who shall ensure that appropriate pastoral care is provided to the Archbishop and his family.

4.  The Archbishop shall have the right to appeal within 30 days of receiving written notification of the determination of incapacity by the Executive Committee. The appeal shall be to the Provincial Tribunal. The Tribunal shall review all evidence relevant to the appeal, including testimony of witnesses. The Tribunal's decision shall be based on the preponderance of the evidence. A simple majority of the Tribunal shall be necessary to render a decision and the decision shall be final. Pending the outcome of the appeal, the Archbishop shall automatically be placed on paid administrative leave and the Dean of the Province shall chair the Executive Committee.

5.  If the Archbishop refuses to comply with any provision of this canon, the Dean of the Province upon consultation with the College of Bishops may issue a Godly Admonition on behalf of the College of Bishops with the approval of a two-thirds majority vote of those Bishops present and voting. If the Archbishop refuses to comply with the Godly Admonition, such refusal shall constitute a presentable offense under Canon IV.2.

6.  If the Archbishop resigns, takes medical leave, or appeals to the Provincial Tribunal under the provisions of this canon, the duties of the office of the Archbishop shall temporarily be assumed by the Dean of the Province.

7.  If the Archbishop takes medical leave, the Executive Committee shall have up to 90 days to declare the Archbishop either competent to resume his duties or unable to do so due to a permanent disability.

**Section 4 –**

In the event of the death, permanent disability, resignation, or removal of the Archbishop prior to the completion of a five-year term, the Dean of the Province (or in his absence the senior active diocesan bishop) shall promptly call a meeting of the College of Bishops for the purpose of electing a new Archbishop for a five-year term.

TITLE I

### Canon 4
### Of Committees

*Concerning Initial Committees*

At the time of the adoption of the Constitution the following Task Forces and Committees were operating: the Prayer Book and Common Liturgy Task Force, the Governance Task Force, the Admissions Committee, the Ecumenical Relations Task Force, the Education Committee, the Episcopate Task Force, the Finance, Budget and Stewardship Committee, the Mediation Panel and the Mission Committee. These Task Forces and Committees shall continue, as constituted, as Committees of the Church until further action of the Council, which shall have authority to end or alter the same and to appoint such other committees and task forces as deemed necessary.

### Canon 5
### Of Dioceses

**Section 1 -** *Concerning Structure* [5]

A Diocese is a grouping of congregations gathered for mission under the oversight of a Bishop (the "Ecclesiastical Authority"). A Diocese is composed of a minimum of twelve (12) congregations with an ASA of at least fifty (50) each and a collective ASA of at least one thousand (1,000). A diocese shall demonstrate that there is sufficient financial support for the office of the Bishop and shall provide financial support to the Province in the spirit of Canon I.9.

**Section 2 -** *Concerning Governance*

Each Diocese may establish and maintain its own governance, constitution and canons not inconsistent with the Constitution and Canons of the Church, except as hereinafter set forth. Dioceses may band together for common mission or as distinct jurisdictions within the Church. The structures of pre-existing dioceses are recognized.

**Section 3 -** *Concerning Standing Committees*

The governing body of each Diocese shall establish a Standing Committee or its equivalent. This committee shall be a council of advice to the Bishop and the Ecclesiastical Authority of the Diocese in the absence of a Bishop authorized to act. The other rights and duties of the committee shall be established by diocesan canon.

**Section 4 -** *Concerning Oversight by Other Anglican Provinces*

Dioceses gathered under the jurisdiction and oversight of another Province of the Anglican Communion at the time of the organization of the Anglican Church in North America may continue under the constitution and canons of the parent Province to the extent provided by specific protocols between all of the parties, periodically reviewed.

**Section 5 -** *Concerning Applying for Diocesan Status* [6]

A group of congregations that meet the minimum standards for diocesan status may apply to the Council to be added to the Church as a Diocese. In exceptional cases, the Provincial Council may modify these requirements on a case-by-case basis by two-thirds vote upon the affirmative recommendation by the Executive Committee. The application form shall prescribe, at a

---

[5] This section was amended by the 2021 Provincial Council and ratified by the Provincial Assembly at its meeting on June 26, 2024. It becomes effective on September 24, 2024.
[6] Ibid.

minimum, basic information concerning the history, mission and legal status of the group, current rules of governance, its individual and collective ASA and Anglican affiliation, and any justification for a modification of applicable requirements. The application shall confirm that the rector of each congregation has notified the current domestic Bishop or Bishops of the congregation's intention to be part of the group making application. The application shall contain the name of the recommended nominee or nominees for Bishop and shall contain the present and proposed group budget, including the intended financial support of a Bishop. (Such form and the guidelines for such application are included herein as Appendix "A")

**Section 6 -** *Concerning Diocese-In-Formation Status*

A grouping of congregations that do not meet the minimum standards for diocesan status may apply to the Council for temporary Diocese-in-Formation status. With the majority vote of the Council, the Archbishop (who is the Ecclesiastical Authority of a Diocese-in-Formation) may appoint a Vicar General to assist the group toward final qualification as a Diocese of the Church. A Diocese-in-Formation shall be represented in the Assembly by its Vicar General and one (1) member of the Clergy and one (1) lay person. No Diocese-in-Formation shall be continued under this provision for more than five (5) years.

**Section 7 –** *Concerning the Strengthening of Dioceses* [7]

The Executive Committee shall review the annual Diocesan Reports. In light of the standards for a diocese as provided in Section 1 of this Canon, the Executive Committee may invite a dialogue with any diocese with the objective of strengthening its mission and ministry.

**Section 8 –** *Concerning the Safeguarding Policies* [8]

It is the moral duty of the whole Church (the Province, the dioceses, and local congregations and ministries) to see that the flock of Christ is protected from abuse. As a diocese is the primary level at which the means to provide such protection can be implemented, it shall therefore be the duty of the bishop of each diocese, rather than that of the Province, to ensure that safeguarding policies and procedures both for children and for adults are adopted and implemented within the congregations, ministries, and structures of the diocese and to monitor and ensure compliance with such policies and procedures. Such policies shall be adopted no later than June 30, 2025, and shall be made publicly available to the members of the diocese.

**Section 9 –** *Concerning Reports of Misconduct* [9]

It is the moral duty of the whole Church (the Province, the dioceses, and local congregations and ministries) to see that those entrusted with leadership are subject to godly discipline as needed. As a diocese is the primary level at which discipline can be exercised, each diocese shall therefore establish processes and procedures to respond to reports of misconduct by clergy and laypersons and to facilitate care of those affected. It shall be the duty of the bishop of each diocese, rather than that of the Province, to ensure that such processes and procedures are implemented within the congregations, ministries, and structures of the dioceses, and to monitor and ensure compliance with such processes and procedures.

---

[7] This section was amended by the 2021 Provincial Council and ratified by the Provincial Assembly at its meeting on June 26, 2024. It becomes effective on September 24, 2024.
[8] This section was added by the 2024 Provincial Council and ratified by the Provincial Assembly at its meeting on June 26, 2024. It becomes effective on September 24, 2024.
[9] Ibid.

TITLE I

In developing such processes and procedures, each diocese shall adopt the following minimum standards by canon or policy on or before December 31, 2025, or else the bishop and Standing Committee of the diocese must certify to the Executive Committee by December 31, 2024, that the diocese has another disciplinary process for receiving and investigating reports that it regards as of at least equal fairness, transparency, and integrity.

1. Each diocese shall appoint at least two Diocesan Reports Receivers to receive reports of misconduct. In no event shall any Chancellor of the Diocese serve as a Diocesan Reports Receiver. Any report received regarding the abuse of a minor or vulnerable adult shall be reported to the appropriate civil authorities consistent with applicable laws and subject to constitutional and statutory exemptions and protections.

2. Subject to subsection 1 above, upon receipt of a report of misconduct by a presbyter or deacon, the Diocesan Reports Receivers shall evaluate the report in a timely manner and shall in their individual capacities recommend to the bishop whether the report discloses reasonable grounds to believe an offense under Title IV has been committed. With the advice of the Standing Committee (or its designated subcommittee), the bishop shall determine whether a report of misconduct involving a presbyter or deacon should be dismissed or if such report should proceed to investigation under subsection 6 below. If a report is dismissed, the reporting party must be promptly notified of such dismissal.

3. Each Diocese shall facilitate provision of pastoral care for those making reports not dismissed under subsection 2, as well as for the clergy who are the subject of such reports.

4. Subject to subsection 1 above, upon receipt of a report of misconduct by a layperson, the Diocesan Reports Receivers shall inform the bishop. The Diocesan Reports Receivers shall also, in consultation with the bishop, inform a Warden and/or the member of the clergy in charge of the congregation such layperson attends or in which the alleged misconduct occurred for the matter to be addressed at the level of the congregation with support, as needed, from the diocese.

5. Subject to subsection 1 above, upon receipt of a report of misconduct by a bishop, the Diocesan Reports Receivers shall refer the report in accordance with Title IV of these canons.

6. Each Diocese shall have a Diocesan Reports Investigation Committee to investigate all reports of misconduct by a presbyter or deacon referred to it under this Canon. Such Diocesan Reports Investigation Committee shall include at least one legally qualified person (meaning a person who has a degree or license in canon law, was or is a judge in Canada, Mexico, or the United States, or has been licensed to practice law for at least 5 years in any part of Canada, Mexico, or the United States).

7. The details of a report and of any subsequent investigation shall be maintained in appropriate confidence until the report is dismissed for lack of reasonable grounds or the Diocesan Reports Investigation Committee takes further action under Title IV.

8. Any diocese may agree in writing with one or more other dioceses to develop and share resources necessary to implement the requirements of this section 9, including Diocesan Reports Receivers, members of Diocesan Reports Investigation Committees, as well as pastoral care, administrative, and financial resources.

TITLE I

### Canon 6
### Of Congregations

**Section 1 -** *Concerning Congregational Mission*
The fundamental agency of the mission of the Church to extend the Kingdom of God is the local congregation. The chief agents of this mission are the people of God.

**Section 2 -** *Concerning Congregations*
A congregation in this Church is a gathered group of Christians who have organized and function in accordance with the canons of this Church attached to a diocese and under the oversight of a Bishop. Every congregation of the Church belongs to the Church by union with a Diocese of the Church or through a Diocese-in-Formation. A congregation of this Church is a gathering where the pure Word of God is preached and the sacraments are duly administered according to Christ's ordinance (Article XIX).

**Section 3 -** *Concerning Organization*
Every congregation shall be established in accordance with the laws of the State or jurisdiction where situated, shall handle its own finances, and shall carry insurance coverage in amounts specified by its Diocese, except in those Dioceses with constitutional or canonical provisions to the contrary.

**Section 4 -** *Concerning Congregational Clergy and Lay Employees*
1. No Rector may be called to or dismissed from a congregation without the consent of the Bishop. No other clergy may be called or dismissed from a congregation without consultation with the Bishop. A diocese may adopt canons not in conflict with this section.

2. All assistant clergy and lay employees of the congregation shall serve under the direction of and at the pleasure of the Rector except as may be otherwise provided under local law.

**Section 5 -** *Concerning Governing Boards*
There shall be a governing board of each congregation, often known as the vestry, which is chosen and serves according to applicable laws, diocesan canons, and the congregational by-laws. The Presbyter in charge of the congregation shall always be a member of the governing board and its presiding officer except as provided by diocesan canon. The governing board is responsible for the temporalities of the congregation and, except where otherwise provided by canon, supports the clergy in the spiritual leadership of the congregation.

**Section 6 -** *Concerning Property Ownership*
All congregational property, real and personal, owned by a member congregation is and shall be solely and exclusively owned by the congregation and shall not be subject to any trust in favor of the Province or other claim of ownership arising out of the canon law of the Church; neither may any Diocese assert any such claim over the property of any of its congregations without the express written consent of the congregation. Where property is held in a different manner by any Diocese or grouping, such ownership shall be preserved.

**Section 7 -** *Concerning Planting New Congregations*
With the leadership and consent of the Bishop, a diocese and its congregations, clergy, and people should, whenever possible, plant new congregations. The diocese shall ensure spiritual

covering and practical assistance to new plants consistent with its own missional strategies until each is self-sustaining. A new plant is self-sustaining when it meets the criteria for sustainability as determined by its diocese and Bishop.

**Section 8 -** *Concerning Annual Reports* [10]

On or before March 1 of each year every congregation shall prepare and forward to the Bishop and to the Provincial Office a report, in a form specified from time to time by the Executive Committee, reflecting the status and growth of the congregation in terms of ASA, tithes and offerings, baptisms, confirmations and receptions, marriages, burials, and other important categories of information concerning the preceding calendar year, including new initiatives for mission and ministry. On or before March 1 of each year, the Bishop shall ensure that the diocese forwards to the Executive Committee any changes to the Diocesan Constitution and Canons since its last report. The Executive Committee shall cause to be prepared a report to the Archbishop on the status and growth of the Province, with an appropriate summary also being made available on the Provincial website.

**Section 9 -** *Concerning Transfer or Disaffiliation* [11]

1. Congregations reserve the right to transfer from one Diocese to another with the permission and blessing of both the sending and receiving Diocesan bishops.

2. Congregations wishing to transfer from one Diocese to another Diocese of the Church are required first to notify their current Diocesan Bishop stating: (1) their desire to transfer, (2) the Diocese to which they request to apply for such transfer, and (3) the reason for their request to transfer.

3. If the congregation and their Diocesan bishop cannot reach agreement on such transfer, either party may request the Archbishop to mediate and facilitate a transfer or other resolution.

4. A congregation transferring into a Diocese becomes subject to the Constitution and Canons of that Diocese.

5. Congregations reserve the right to disaffiliate with the Church after consultation with their bishop.

*Canon 7*
*Of Ministry Partners, Affiliated Ministries Religious Orders,*
*Other Christian Communities and Solitary Religious*

**Section 1 -** *Concerning Cooperation*

Ministry Partners, Affiliated Ministries and Religious Orders work together with the Anglican Church in North America to extend the Kingdom of God. Those desiring admittance in one of these categories shall apply in writing to the Council to become associated with the Church. Applicants must subscribe without reservation to the Fundamental Declarations of the Church stated in Article I of the Constitution. The Council may admit an applicant upon terms deemed appropriate. Ministry Partners, Affiliated Ministries and Religious Orders may have representatives attend functions or gatherings of the Church upon invitation of the Archbishop.

---

[10] This section was amended by the 2021 Provincial Council and further amended by the 2023 Provincial Council, and then ratified by the Provincial Assembly at its meeting on June 26, 2024. It becomes effective on September 24, 2024.
[11] The title of this canon was amended by the 2020 Provincial Council and ratified by the Provincial Assembly at its meeting on June 26, 2024. It becomes effective on September 24, 2024.

Ministry Partners, Affiliated Ministries and Religious Orders may withdraw or have their status ended with or without cause.

**Section 2 –** *Concerning Ministry Partners*
A Ministry Partner may be:

1. A founding entity of the Province as listed in Article II of the Constitution.

2. A jurisdiction or coalition which is deemed to have a special relationship with the Province.

Delegates of Ministry Partners may have seat and voice at Provincial Assembly and Provincial Council as determined by the Archbishop.

**Section 3 -** *Concerning Affiliated Ministries*
An affiliated ministry may be an entity such as a seminary, mission agency, ministry organization, religious society or sodality. A diocese or other entity that is part of a jurisdiction other than the Anglican Church in North America may also apply for affiliated ministry status, so long as the requirements of Section 1 of this canon are met.

**Section 4 -** *Concerning Religious Orders*
A Religious Order of The Anglican Church in North America is defined as a society of Christians who voluntarily commit themselves for life, or a term of years, to holding their possessions in common or in trust to a celibate life in community; and obedience to their Rule and Constitution. Other rules concerning Religious Orders are as established in the Rules of the College of Bishops.

**Section 5 -** *Concerning Christian Communities or Societies*
A Christian Community or Society of The Anglican Church in North America under this Canon is defined as a society of Christians who voluntarily commit themselves for life or a term of years, in obedience to their Rule and Constitution. Other rules concerning Christian Communities or Societies are as established in the Rules of the College of Bishops.

**Section 6 -** *Concerning Solitary Religious*
Vows of any solitary religious may be received and recorded by any Diocesan Bishop having jurisdiction over the congregation of which the vowed individual is a part, at the discretion of the Bishop.

*Canon 8*
*Of Visitors*

The Archbishop may invite any person or group to observe functions of the Church, and such visitors may be accorded seat and voice as determined by the Archbishop.

*Canon 9*
*Of Finances*

**Section 1 -** *Concerning the Tithe*
The biblical tithe is the minimum standard of giving to support the Mission of the Church, and should be taught and encouraged at every level in the Church.

TITLE I

## Section 2 - *Concerning Finance and Budget*

The Executive Committee, with the assistance of the Finance, Budget and Stewardship Committee, shall develop the program and budget of the Church based on commitments of the Dioceses and other monies raised. The program and budget shall be presented annually to the Council for adoption. The Finance, Budget and Stewardship Committee shall consult with any Diocese that is not able to meet the requested support of the Church.

## Section 3 - *Concerning Financial Responsibility and Accountability*

Financial responsibility and accountability are the obligations of the Church at every level. Every Diocese shall provide for an annual independent audit or review of all its accounts. Every Diocese shall provide standards for recordkeeping, financial accountability, insurance, investments and the bonding of financial officers for both the Diocese and its congregations and missions. The Executive Committee shall provide for an annual independent audit of all accounts of the Province.

### *Canon 10*
### *Of the Laity*

## Section 1 - *Concerning Ministry*

The people of God are the chief agents of the Mission of the Church to extend the Kingdom of God by so presenting Jesus Christ in the power of the Holy Spirit that people everywhere will come to put their trust in God through Him, know Him as Savior and serve Him as Lord in the fellowship of the Church. The effective ministry of the Church is the responsibility of the laity no less than it is the responsibility of Bishops and other Clergy. It is incumbent for every lay member of the Church to become an effective minister of the gospel of Jesus Christ, one who is spiritually qualified, gifted, called, and mature in the faith. Each diocese may establish standards for the ministry of the laity.

## Section 2 - *Concerning Duties of the Laity*

With the help of God's grace, it shall be the duty of every member of the Church:

1. To worship God, the Father, and the Son and the Holy Spirit, every Lord's Day in a Church unless reasonably prevented;

2. To engage regularly in the reading and study of Holy Scripture and the Doctrine of the Church as found in Article I of the Constitution of this Church;

3. To pray regularly for their needs and those of others, for the Church and its mission, and for the concerns of the world;

4. To observe their baptismal vows, to lead an upright and sober life, and not give scandal to the Church;

5. To present their children and those they have led to the Lord for baptism and confirmation;

6. To give regular financial support to the Church, with the biblical tithe as the minimum standard of giving;

7. To practice forgiveness daily according to our Lord's teaching;

8. To receive worthily the Sacrament of Holy Communion as often as reasonable;

9. To observe the feasts and fasts of the Church set forth in the Anglican formularies;

TITLE I

10. To affirm and follow the biblical standards of sexual morality and ethics in Canon II.8;

11.  To continue their instruction in the Faith so as to remain an effective minister for the Lord Jesus Christ;

12. To serve their neighbor, sacrificially demonstrating the love of Christ to the poor, the sick and those in need.

13. To devote themselves to the ministry of Christ and the proclamation of the Gospel among those who do not know Him, utilizing the gifts that the Holy Spirit gives them, for the effective extension of Christ's Kingdom.

**Section 3 -** *Concerning Membership in the Church*

Membership in the Church requires that a person has received the Sacrament of Baptism with water in the Name of the Father, and of the Son, and of the Holy Spirit, and that such a person be accepted as a member of the Church by a congregation of this Church in compliance with the Constitution of the Church. Such a person is a baptized member of the Church. A confirmed member is a baptized member who has been confirmed or received by a Bishop of the Church. Dioceses and congregations may establish the norm and standards for membership in good standing.

*Canon 11*
*Of the Special Jurisdiction for the Armed Forces and Chaplaincy*

**Section 1 –**

There shall be a Special Jurisdiction to oversee the Church's ministry of clergy serving in Endorsed Chaplaincies to include Governmental agencies, such as the Armed Forces of the United States, Veteran's Administration, and Department of Justice, and non-governmental agencies which require formal ecclesiastical endorsement. Provision for armed forces or governmental chaplaincy in Canada is not covered by this canon. The ministry shall be under the oversight of the Bishop of the Armed Forces and Chaplaincy, who shall be elected by the College of Bishops and, at his request, may be assisted by a Bishop por Suffragan(s) as needed and approved by the Archbishop and the College of Bishops. This Bishop of the Special Jurisdiction shall have the rights and authority of a diocesan bishop. The ministry shall be called the Special Jurisdiction for the Armed Forces and Chaplaincy and shall function under the oversight of the Archbishop. The Bishop of the Armed Forces and Chaplaincy is the ecclesiastical endorser for chaplains in this Church as may be needed to meet the professional requirements of governmental and institutional chaplaincies.

**Section 2 –**

The ministry shall be conducted by chaplains duly ordained in this Church. It is normative for full-time or active duty chaplains endorsed for U.S. Governmental service to be domiciled in the Special Jurisdiction. Chaplains serving other institutions and agencies may be domiciled or licensed in the Special Jurisdiction.

**Section 3 –**

Clergy domiciled in a diocese of the Anglican Church in North America may be received into the Special Jurisdiction by transfer from the Bishop of that diocese or may be ordained into the Special Jurisdiction by its Bishop following the requirements, standards and procedures of Title III of the Provincial Canons. Chaplains previously ordained in jurisdictions in the historic succession but not in Communion with this Church may be received into the Church in accordance with Provincial

Canon III.5.3. Chaplains previously ordained in jurisdictions that are not ordered in the historic succession must be ordained in accordance with Provincial Canon III.5.1-2.

**Section 4 –**
Military chaplains are commissioned officers of the Armed Forces of the United States and, as such, are subject to military discipline and order. All chaplains domiciled in the Special Jurisdiction of the Armed Forces and Chaplaincy are subject to the discipline of the Anglican Church in North America and to any canons established by the Special Jurisdiction. The Special Jurisdiction may establish a Trial Court by canon not inconsistent with Title IV of the Provincial Canons.

**Section 5 –**
A chaplain of the Special Jurisdiction who functions in local church ministry or other ministry outside of the institution for which the chaplain is endorsed shall exercise that ministry under license from the Bishop of the local diocese.

**Section 6 –**
All baptisms, confirmations, marriages and burials performed in the Special Jurisdiction shall be recorded in the official records of the Special Jurisdiction and reported in accordance with Provincial Canon I.6.8. Those baptized or confirmed shall be transferred to a local congregation of a diocese of this Church as soon as is practicable.

**Section 7 -**
Financial support of the ministry shall be conducted under a plan submitted by the Bishop of the Armed Forces and Chaplaincy, approved by the Special Jurisdiction's Standing Committee or its equivalent, and reported to the Archbishop. Annual budgets and audits shall be submitted to the Special Jurisdiction's Standing Committee or its equivalent and the Executive Committee of the Province. Solicitations of funds in support of the ministries of the Special Jurisdiction shall be the responsibility of the Special Jurisdiction.

**Section 8 -**
Chaplains of the Special Jurisdiction shall gather as a Convocation annually as the Bishop of the Armed Forces and Chaplaincy directs. The Convocation shall make annual written reports on the mission and ministries of the Special Jurisdiction to the College of Bishops, Provincial Executive Committee, and Provincial Council.

**Section 9 -**
The Bishop of the Armed Forces and Chaplaincy and two delegates chosen by the Special Jurisdiction shall be members with seat, voice, and vote in the Provincial Council and Provincial Assembly.

**Section 10 –**
Whenever possible, chaplains shall use the liturgies of this Church. Chaplains of the Special Jurisdiction may conduct ecumenical services with the consent of, or at the direction of, the Bishop of the Armed Forces and Chaplaincy.

**Section 11 -**
Provincial oversight of the Special Jurisdiction rests with the Archbishop. The Archbishop, in consultation with the College of Bishops, may appoint a committee of Bishops to serve, along

TITLE I

with the Provincial Chancellor, as a council of advice to the Bishop of the Armed Forces and Chaplaincy.

**Section 12 -**
The Special Jurisdiction may incorporate in any state of the United States and shall adopt Constitution and Canons not inconsistent with the Constitution and Canons of the Province. The Constitution and Canons of the Special Jurisdiction and any changes thereto shall be subject to review and approval by the Executive Committee of the Province.

**Section 13 –**
Endorsement of Chaplains by the Reformed Episcopal Church shall continue in practice until an effective method of unified endorsement can be established.

*Canon 12*
*Of Missionary Districts*

1. On the recommendation of the College of Bishops and the Executive Committee, the Provincial Council may establish one or more Missionary Districts.

2. Missionary Districts are intended to advance the ministry of the Province in extending the Kingdom of God into new areas of the Province or beyond consistent with the Fundamental Declarations and Mission of the Church.

3. A missionary district may be the initiative of one or more dioceses or may be the initiative of the Provincial Council on behalf of the Province.

4. Where the initiative is of one or more dioceses, they shall provide episcopal oversight and financial support. Clergy and congregations shall be domiciled in the diocese or dioceses to which the Missionary District belongs.

5. Where the initiative is of the Provincial Council, the College of Bishops may elect a Bishop for Special Mission, who shall be domiciled in an existing diocese of the Province. Financial support of the Missionary District shall be the responsibility of the District and of the Province, not of the Bishop for Special Mission's diocese of domicile. Clergy and congregations shall be domiciled in the Diocese in which the Bishop for Special Mission is domiciled. The Bishop for Special Mission shall owe canonical obedience to the Archbishop and College of Bishops, and the clergy of the Missionary District shall owe canonical obedience to the Bishop for Special Mission. [12]

6. In establishing Missionary Districts care shall be taken not to intrude or conflict with the ministries of existing dioceses, congregations or other missions within the Anglican Church in North America, or within any national or regional Church in communion with the Anglican Church in North America.

---

[12] This section was amended by the 2020 Provincial Council and ratified by the Provincial Assembly at its meeting on June 26, 2024. It becomes effective on September 24, 2024.

# TITLE II
## Worship and the Administration of Sacraments

### Canon 1
### *Of Translations of the Bible*

The Lessons used in services of public worship shall be read from translations of the Holy Scriptures as authorized by the Bishop with jurisdiction.

### Canon 2
### *Of the Standard Book of Common Prayer*

**Section 1 -**
The Book of Common Prayer as set forth by the Church of England in 1662, together with the Ordinal attached to the same, are received as a standard for Anglican doctrine and discipline, and, with the Books which preceded it, as the standard for the Anglican tradition of worship. The Book of Common Prayer of the Province shall be the one adopted by the Anglican Church in North America. All authorized Books of Common Prayer of the originating jurisdictions shall be permitted for use in this Church.

**Section 2 -**
It is understood that there is a diversity of uses in the Province. In order to use these rich liturgies most advantageously, it is the responsibility of the Bishop with jurisdiction to ensure that the forms used in Public Worship and the Administration of the Sacraments be in accordance with Anglican Faith and Order and that nothing be established that is contrary to the Word of God as revealed in the Holy Scriptures.

### Canon 3
### *Of the Due Celebration of the Lord's Day*

All members of this Church are called to celebrate and keep the Lord's Day by regular participation in the public worship of the Church, by hearing the Word of God read and taught, by partaking of the Sacrament of Holy Communion and by other acts of devotion and deeds of charity, according to God's holy will and pleasure.

### Canon 4
### *Of the Administration of the Dominical Sacraments*

**Section 1 -** *General*
1. The Sacraments of Baptism and Holy Communion shall be administered by the duly ordained Clergy of this Church in accordance with their order of ministry. This provision shall not preclude the administration of emergency baptism by any baptized person.

2. It is normative that baptized children and adults be presented to the Bishop for Confirmation.

**Section 2 -** *Concerning Christian Formation*
All Clergy shall take care that all within their cures are instructed in the doctrine, sacraments, and discipline of Christ, as the Lord has commanded and as they are set forth in the Holy Scriptures, in the Book of Common Prayer, and in the Church Catechism.

TITLE II

**Section 3 -** *Concerning the Holy Communion*

1. Presiding at the Celebration of the Holy Communion is reserved to Bishops and Presbyters;

2. No one shall receive the Sacrament of Holy Communion except they be baptized, with water, in the Name of the Father, and of the Son, and of the Holy Spirit;

3. It is the duty of all who have been confirmed to receive the Holy Communion regularly, and especially at the festivals of Christmas, Easter and Whitsun or Pentecost;

4. The admission of baptized young children to the Holy Communion is permitted in this Province;

5. Members in good standing of other branches of Christ's Church, who have been baptized, with water, in the Name of the Father, and of the Son and of the Holy Spirit, are welcomed to receive the Sacrament of Holy Communion. The qualifications concerning rightly and worthily receiving the Supper of the Lord with faith are provided in Article XXVIII of the Thirty-Nine Articles of Religion.

## Canon 5
### Of the Music of the Church

It shall be the duty of every member of the Clergy in charge of a congregation to appoint for use psalms, hymns and spiritual songs which are appropriate for worship. The member of the Clergy in charge is the final authority in the administration of matters pertaining to music in the congregation.

## Canon 6
### Of Lay Worship Ministry

Lay persons may be appointed to assist the Clergy in various tasks of worship to further the ministry of the Word and Sacrament.

## Canon 7
### Of Christian Marriage

**Section 1 -**

The Anglican Church in North America affirms our Lord's teaching that Holy Matrimony, commonly called a Sacrament (Article 25 and ACNA Catechism 124-125), is a lifelong covenant between one man and one woman, binding both to self-giving love and exclusive fidelity. Jesus Christ teaches that God is the author of marriage from the beginning of time. "So God created man in his own image, in the image of God he created him, male and female he created them" (Genesis 1:27; cf. Matthew 19:4-6). God's design for marriage has always involved one man and one woman (Genesis 2:24). Marriage is established by God for the procreation of children and their nurture in the knowledge and love of the Lord; for mutual joy, and for the help and comfort given one another in prosperity and adversity; to maintain purity, so that husbands and wives, with all the household of God, might serve as holy and undefiled members of the Body of Christ; and for the upbuilding of Christ's kingdom in family, church, and society, to the praise of his holy Name.

**Section 2 -**

It shall be within the discretion of any member of the Clergy to decline to solemnize any marriage.

**TITLE II**

## Section 3 -

Members of the Clergy of this Church shall conform to the Canons of this Church governing the solemnization of Holy Matrimony.

1. Both parties shall be baptized. Any exception to this requires the permission of the Bishop;

2. There shall be thirty (30) days notice of intention to marry unless waived for weighty reasons, in which case the Bishop shall be notified immediately and in writing;

3. The Clergy shall provide counsel to both parties on Holy Matrimony with respect to theological and social implications and responsibilities;

4. The Clergy shall ascertain that the man and woman, parties to the marriage, have a valid marriage license.

## Section 4 -

As marriage is a lifelong covenant between a man and a woman in which the two become one flesh, it is both an ordinance of Creation, affirmed as such by our Lord, and commended by Saint Paul as a sign of the mystical union between Christ and His Church (Matthew 19:3-9; Ephesians 5:22-32). Therefore, the failure of a marriage is always a tragedy. Scripture acknowledges our fallen nature and does provide guidance to know when a marriage may be declared a nullity or dissolved and allows the possibility of a subsequent marriage in certain circumstances (Matthew 19 and 1 Corinthians 7).

1. Couples who request to be married by a member of the Clergy of this Church must have approval from their Bishop if either party has ever been divorced;

2. When a divorced person seeks permission to remarry, the Clergy must ascertain the pertinent facts concerning a declaration of nullity or termination of marriage; and in the absence of a declaration of nullity, forward such information to the Bishop in writing for his godly advice and consent;

3. The Diocese is responsible to create a process by which this discernment may be made with reasonable promptness.

## Section 5 -

1. No Clergy knowingly, after due inquiry, shall solemnize any marriage if they have unresolved concerns regarding any of the following impediments:
   (a) Consanguinity and affinity as defined in the 1662 Book of Common Prayer;
   (b) Mistaken identity;
   (c) Absence of the capacity for free and intelligent choice;
   (d) Bigamy, evidence of sexual perversion or conviction of a sexually related crime;
   (e) Fraud, coercion, abuse or duress.
   (f) Failure to conform to the teaching of this Church regarding man, woman, and marriage as set forth in the Holy Scriptures and in these Canons.

2. Any declarations of nullity may only be granted by a Bishop with jurisdiction and shall be based upon Scriptural principles including the foregoing impediments to marriage.

TITLE II

**Section 6 -**

The Clergy shall require the parties to sign the following declaration:

> *"We, N.N. and N.N., desiring to receive the blessing of Holy Matrimony in the Church, do solemnly declare that we hold marriage to be a lifelong union of husband and wife as it is set forth in the Book of Common Prayer. We believe it is established by God for the procreation of children and their nurture in the knowledge and love of the Lord; for mutual joy, and for the help and comfort given one another in prosperity and adversity; to maintain purity, so that husbands and wives, with all the household of God, might serve as holy and undefiled members of the Body of Christ; and for the upbuilding of Christ's kingdom in family, church, and society, to the praise of his holy Name. We do engage ourselves, so far as in us lies, to make our utmost effort to establish this relationship and to seek God's help thereto.*

**Section 7 -**

In all cases marriages shall be solemnized according to the forms contained in an authorized Book of Common Prayer, or other rite authorized by this Church and permitted by the Bishop.

**Section 8 -**

The Clergy shall cause to be recorded in the permanent records of the congregation the name, age, and residence of each party. Such record shall be signed by the member of the Clergy, the married parties, and at least two witnesses.

### Canon 8
### Of Standards of Sexual Morality and Ethics

**Section 1 -**

Clergy and lay leaders of this Church are called to be exemplary in all spheres of morality as a condition of being appointed or remaining in office.

**Section 2 -**

In view of the teaching of Holy Scripture, the Lambeth Conference of 1998 and the Jerusalem Declaration, this Church upholds faithfulness in marriage between a man and a woman in lifelong union, and believes that abstinence is right for those who are not called to marriage, and cannot legitimize or bless same sex unions or ordain persons who engage in homosexual behavior. Sexual intercourse should take place only between a man and a woman who are married to each other.

**Section 3 -**

God, and not man, is the creator of human life. The unjustified taking of life is sinful. Therefore, all members and clergy are called to promote and respect the sanctity of every human life from conception to natural death.

**Section 4 -**

The Church is called upon to show Christ-like compassion to those who have fallen into sin, encouraging them to repent and receive forgiveness, and offering the ministry of healing to all who suffer physically or emotionally as a result of such sin.

# TITLE III
## Of Ministers, Their Recruitment, Preparation, Ordination, Office, Practice and Transfer

### Canon 1
### Of Holy Orders in the Anglican Church in North America

**Section 1 -** *Concerning the Historic Three-fold Pattern for Holy Orders*

The Anglican Church in North America affirms what Anglicanism has always held, namely the normality of the threefold pastoral ministry of Bishop, Presbyter and Deacon. Persons shall be admitted to the office of Bishop, Presbyter or Deacon in this Church, and allowed to exercise any of these offices, who have been called, examined, and ordained according to an authorized ordinal of this Church, or ordained in some church whose orders are recognized and accepted by this Church.

**Section 2 -** *Concerning Canonical Obedience to Those in Authority*

Any person who has received authority to be a Presbyter or a Deacon in any Diocese of this Church owes canonical obedience in all things lawful and honest to the Bishop of the Diocese, and the Bishop of each Diocese owes canonical obedience in all things lawful and honest to the Archbishop of this Church. In the absence of a Bishop, a Presbyter or a Deacon owes such obedience to the Ecclesiastical Authority of the Diocese or to the Ecclesiastical Authority of a Diocese-in-Formation.

**Section 3 -** *Concerning the Domicile, Transfer, and Permission to Function of Presbyters and Deacons Generally*

In order to function as a Presbyter or a Deacon one must be under the episcopal authority of the Bishop of a Diocese (that Diocese being one's "Domicile"). No member of the Clergy shall function in any Diocese other than the one in which the member of the Clergy is domiciled within the meaning of this section without written permission from the Ecclesiastical Authority of the Diocese in which the member of the Clergy desires to officiate. Permission to function as a Presbyter or a Deacon in a Diocese other than one's Domicile may be granted by the Bishop of such other Diocese. Transfer of one's Domicile to a different Diocese may be granted by the Bishop of such other Diocese upon consent of the Bishop of one's own Diocese. A Diocese may adopt canonical provisions not in conflict with these Canons concerning such Transfers or Permissions.

**Section 4 -** *Concerning Norms for Ordination Generally*

Except as hereinafter provided, the norms for ordination shall be determined by the Bishop having jurisdiction.

### Canon 2
### Of the Qualities of Those Who are to Be Ordained Deacons or Presbyters

**Section 1 -** *Concerning General Requirements*

Every Bishop shall take care that he admit no person into Holy Orders but such as he knows either by himself, or by sufficient testimony, to have been baptized and confirmed, to be sufficiently instructed in Holy Scripture and in the doctrine, discipline and worship of this Church, as defined by this Province, to be empowered by the Holy Spirit and to be a wholesome example and pattern to the entire flock of Christ.

TITLE III

**Section 2 -** *Concerning Requirements for Deacon According to Holy Scripture*
In accordance with Holy Scripture, a Deacon must be worthy of respect, sincere, not indulging in much wine, not pursuing dishonest gain, and one who holds the deep truths of the faith with a clear conscience. They must first be tested, and then if there is nothing against them, let them serve as Deacons (1 Timothy 3:8-13).

**Section 3 -** *Concerning Requirements for Presbyter According to Holy Scripture*
In addition to the qualifications above, and in accordance with Holy Scripture, a Presbyter must be above reproach, not self-pleasing but self-controlled, upright, holy, disciplined, temperate, hospitable, not given to drunkenness, not violent but gentle, not quarrelsome, not a lover of money, not a recent convert, one who loves what is good and one who has a good reputation with outsiders. A Presbyter must be able to preach and teach, holding firmly to the trustworthy message as it has been taught, in order to encourage others by sound doctrine and to refute those who oppose it (1 Timothy 3:1-7; 5:17; Titus 1:6-9).

**Section 4 -** *Concerning Requirements for Married Candidates With and Without Children*
In the case of persons who are or have been married, and/or have children, every Bishop shall take care that such persons manage their own family well, for as Holy Scripture attests, "If anyone does not know how to manage his own family, how can he take care of God's church?" (1Timothy 3:4-5, 12; Titus 1:6).

**Section 5 -** *Concerning Upholding the Sanctity of Marriage Especially for Those to Be Ordained*
Marriage as a lifelong covenant between a man and a woman, where the two become one flesh, is both an ordinance of Creation, affirmed as such by our Lord, and commended by Saint Paul as a sign of the mystical union between Christ and his Church (Matthew 19:3-9; Ephesians 5:22-32). As wholesome examples and patterns to the entire flock of Christ, all married persons to be admitted to Holy Orders shall remain married to their spouse for life, and in accordance with the vows they exchanged in Holy Matrimony. Subject to Section 6 of this Canon, no person shall be admitted into Holy Orders who has divorced and remarried.

**Section 6 -** *Concerning Pastoral Exceptions to Section 5*
The Archbishop of this Church, on an application made to him by the Bishop sponsoring a person who by reason of Section 5 of this Canon could not otherwise be admitted into Holy Orders may, upon a showing of good cause and particularly in light of the exceptions in Matthew 19 and 1 Corinthians 7, remove the impediment imposed by that section to the admission of the person into Holy Orders. Pastoral exceptions may be made in accordance with the directions given from time to time by the Archbishop acting in consultation with the College of Bishops.

**Section 7 -** *Concerning Theological Training Requirements*
No person shall be admitted into Holy Orders who has not been properly trained in Holy Scripture, and the Doctrine, Discipline and Worship of this Church.

*Canon 3*
*Of Deacons and Their Ordination*

**Section 1 -** *Concerning Prerequisites for Ordination*
No person shall be ordained a Deacon in this Church until that person shall have passed a satisfactory examination conducted by those appointed by the Bishop for this purpose, and shall

**TITLE III**

have demonstrated sufficient knowledge of Holy Scripture, the Doctrine, Discipline and Worship of this Church, and any other topics the Bishop shall deem necessary for the office and ministry of Deacons.

**Section 2 -** *Concerning the Required Declaration of Ordinands*

No persons shall be ordained a Deacon in the Church until such person shall have subscribed without reservation the following declaration:

> *"I do believe the Holy Scriptures of the Old and New Testaments to be the Word of God and to contain all things necessary to salvation, and I consequently hold myself bound to conform my life and ministry thereto, and therefore I do solemnly engage to conform to the Doctrine, Discipline and Worship of Christ as this Church has received them. And I do promise, here in the presence of Almighty God and of the Church, that I will pay true and canonical obedience in all things lawful and honest to the Bishop of _____, and his successors, so help me God."*

**Section 3 -** *Concerning Length of Diaconate*

1. We recognize the importance of the Vocational Diaconate as an essential and historic ministry of the Church.

2. A Transitional Deacon shall not be ordained to the office of Presbyter for at least one year, unless the Bishop having jurisdiction shall find good cause for the contrary, so that the Deacon's manner of life and ministry may be tested and observed before admission to the order of Presbyter.

*Canon 4*
*Of Presbyters and Their Ordination*

**Section 1 -** *Concerning Ordination Following Period of Diaconate*

No person shall be ordained a Presbyter in this Church until that person shall have been ordained a Deacon.

**Section 2 -** *Concerning Prerequisites for Ordination*

No person shall be ordained a Presbyter in this Church until that person shall have passed a satisfactory examination conducted by those appointed by the Bishop for this purpose, and shall have demonstrated sufficient knowledge of Holy Scripture and the Doctrine, Discipline and Worship of this Church by examination in the following subjects, and any other qualities that the Bishop deems necessary for the office of Presbyter:

1. *Holy Scripture:* The Bible, its contents and historical background and interpretive methods;

2. *Church History;*

3. *Anglican Church History;*

4. *Doctrine:* The Church's teaching set forth in the Creeds and the Offices of Instruction;

5. *Liturgics:* The contents and use of the Book of Common Prayer, and knowledge of the proper use of church music;

6. *Moral Theology and Ethics;*

**TITLE III**

7. *Ascetical Theology:* With an emphasis on the prayer life and spirituality of the minister, including the use of the Daily Office;

8. *Practical Theology:* The office and work of a Presbyter; the conduct of public worship; principles of sermon composition and delivery; principles and methods of Christian education in the parish; Constitution and Canons of this Church and the Diocese to which the candidate belongs; and the use of the voice in reading and speaking;

9. *The Missionary Work of the Church:* How the Gospel has been passed from one language, tribe and nation to another; basic principles of cross-cultural communication; mission strategies; and personal relational evangelism and apologetics.

**Section 3 -** *Concerning the Required Declaration of Ordinands*

No Deacon shall be ordained a Presbyter in the Church until the Deacon shall have subscribed the following declaration:

> *"I do believe the Holy Scriptures of the Old and New Testaments to be the Word of God and to contain all things necessary to salvation, and I consequently hold myself bound to conform my life and ministry thereto, and therefore I do solemnly engage to conform to the Doctrine, Discipline and Worship of Christ as this Church has received them. And I do promise, here in the presence of Almighty God and of the Church, that I will pay true and canonical obedience in all things lawful and honest to the Bishop of _____, and his successors, so help me God."*

### Canon 5
### Of Ministers Ordained in Jurisdictions not in Communion with this Church

**Section 1 -** *Concerning Application for Holy Orders in this Church*

When Ministers ordained in a Jurisdiction not ordered in the Historic Succession nor in communion with this Church desire to be a Deacon or Presbyter in this Church, they shall apply to a Bishop of this Church for ordination to the diaconate and presbyterate.

**Section 2 -** *Concerning Pre-Ordination Requirements*

If such ministers furnish evidence satisfactory to the Bishop for eligibility for ordination pursuant to Canons 2 through 4 of this Title, they shall be examined on the points of Doctrine, Discipline, Polity and Worship in which the Jurisdiction from which they have come differs from this Church, and any other subject which the Bishop deems necessary and appropriate.

**Section 3 -** *Concerning Ministers Ordained in Jurisdictions in the Historic Succession but not in Communion with this Church*

When a Minister ordained in a Jurisdiction by a Bishop of the Historic Succession but not in communion with this Church desires to be received as a member of the Clergy of this Church, the person shall comply with Sections 1 and 2 of this Canon. Thereafter, being satisfied of the person's theological qualifications and successful completion of the examination specified in Canon III.3.1 and soundness in the faith, the Bishop may, with the advice and consent of the Standing Committee or its equivalent:

1. Receive the person into this Church in the Orders to which already ordained by a Bishop in the Historic Succession; or

**TITLE III**

2. If the person was ordained by a Bishop whose authority to convey such orders has not been recognized by this Church, ordain the person as a Deacon conditionally, and, in accordance with Canon III.3.3.2, ordain the person a Presbyter conditionally (if previously ordained a Presbyter), having previously baptized and confirmed the person conditionally if necessary.

**Section 4 -** *Concerning Receiving a Bishop from another Jurisdiction not in Communion with this Church*

No Bishop from another jurisdiction not in Communion with this Church shall be received as a Bishop of this Church except by the consent of the College of Bishops and in accordance with the Canons of this Church.

*Canon 6*
*Of the Acceptance and Dismissal of Clergy in this Church*

**Section 1 -** *Concerning the Transfer of Clergy from Jurisdictions in Communion with this Church*

A Bishop may accept by Letter of Transfer a Deacon or Presbyter in good standing from any Jurisdiction in communion with this Church. The accepting Bishop shall inquire of the transferring Bishop concerning any past or existing disciplinary matter or other impediment affecting the ministry of the transferring member of the Clergy.

**Section 2 -** *Concerning Transfers from One Diocese of this Church to Another*

1. Any Deacon or Presbyter of this Church transferring into a Diocese or other Jurisdiction of this Church shall, in order to become a member of that Jurisdiction, present to the Bishop and Diocese, a testimonial from the Bishop or other Ecclesiastical Authority of the Jurisdiction in which he last had membership, setting forth the Deacon or Presbyter's true standing and character. The Testimonial, known as Letter of Transfer, which must be presented within six months from the date of issue, may be in the following words:

   *"We hereby certify that the Reverend A. B., who has signified desire to be transferred to the Ecclesiastical Authority of (name of Diocese Network or other Jurisdiction) is a Presbyter (or Deacon) of (name of Diocese Network or other Jurisdiction) in good standing."     (Signed)*

2. The transferring Bishop shall disclose to the accepting Bishop any past or existing disciplinary matter or other impediment affecting the ministry of the transferring member of the Clergy.

**Section 3 -** *Concerning Voluntary Resignation from the Ordained Ministry of this Church* [13]

1. Any Deacon or Presbyter in good standing may resign from the Ordained Ministry of this Church by sending a resignation in writing to the Bishop with jurisdiction. The Bishop or other Ecclesiastical Authority shall record the declaration and request so made, and shall determine that the Deacon or Presbyter is not under discipline as defined in Title IV of these canons, and that the resignation is not occasioned by misconduct or irregularity, but is voluntary and for causes which do not affect the moral character of the Deacon or Presbyter.

   Upon making this determination, the Bishop or other Ecclesiastical Authority shall defer formal action upon the declaration for two months, and meanwhile shall lay the matter before

---

[13] The Title of Section 3 and Sections 3 and 4 were combined and amended by the 2020 Provincial Council and ratified by the Provincial Assembly at its meeting on June 26, 2024. It becomes effective on September 24, 2024.

TITLE III

the Standing Committee or its equivalent for advice and consent. With its advice and consent, the Bishop or other Ecclesiastical Authority may pronounce that such resignation is accepted and that the Deacon or Presbyter is released from the obligations of the Ministerial office, and that the Deacon or Presbyter relinquishes the right to exercise in this Church the gifts and spiritual authority as a Minister of God's Word and Sacraments conferred in ordination.

2. The Bishop's declaration shall state that the resignation was for causes which do not affect the Deacon or Presbyter's moral character, and shall, if requested, give a certificate to this effect to the person so removed from the ministry of this Church. In all other cases of resignation or renunciation of the ordained ministry, where there may be a question of misconduct or irregularity, the Bishop shall follow the procedures outlined in Canon IV.7.

3. Any Deacon or Presbyter whose resignation has been accepted under this canon may request that the Bishop write a commendatory letter to another Christian denomination or jurisdiction.

4. A Deacon or Presbyter having voluntarily resigned from the ordained ministry of this Church and not under the discipline of any ecclesial body may petition the Bishop having jurisdiction in the diocese from which the Deacon or Presbyter resigned to restore the right to exercise in this Church the gifts and spiritual authority as a Minister of God's Word and Sacraments conferred in ordination. The terms and conditions of such restoration shall be entirely within the discretion of the Bishop having jurisdiction in the diocese from which the Deacon or Presbyter resigned, with the advice and consent of the Standing Committee or its equivalent.

### Canon 7
### Of Rectors and Other Congregational Clergy

Norms for the calling, duties and support of Rectors and other Clergy, and the dissolution of a pastoral relation shall be provided by each Diocese. Rectors shall be domiciled in the diocese to which their congregation belongs.

### Canon 8
### Of Bishops

**Section 1 -** *Concerning Requirements for Bishop According to Holy Scripture*
A Bishop is called by God and the Church to be a shepherd who feeds the flock entrusted to his care. A Bishop is an overseer of the flock and as such is called to propagate, to teach, and to uphold and defend the faith and order of the Church willingly and as God wants him to – not greedy for money, but eager to serve; not lording it over those entrusted to his care, but being a wholesome example to the entire flock of Christ (1 Peter 5:2-3). These requirements are in addition to the requirements set forth in Canon 2 for Deacon (1 Timothy 3:8-13) and for Presbyter (1 Timothy 3:1-7; 5:17; Titus 1:6-9).

**Section 2 -** *Concerning the Ministry of Bishops*
By the tradition of Christ's One, Holy, Catholic, and Apostolic Church, Bishops are consecrated for the whole Church and are successors of the Apostles through the grace of the Holy Spirit given to them. They are chief missionaries and chief pastors, guardians and teachers of doctrine, and administrators of godly discipline and governance.

TITLE III

**Section 3 -** *Concerning Criteria for the Episcopate*

To be a suitable candidate for the episcopate, a person must:

1. Be a person of prayer and strong faith;
2. Be pious, have good morals and exhibit Godly character;
3. Have a zeal for souls;
4. Have demonstrated evidence of the fruit of the Holy Spirit;
5. Possess the knowledge and gifts which equip him to fulfill the office;
6. Be held in good esteem by the faithful;
7. Be a male Presbyter at least 35 years old;
8. Have demonstrated the ability to lead and grow the Church.

**Section 4 -** *Concerning the Election of Bishops*

1. With the consent of the College of Bishops, a diocese may commence the process of election of a Bishop. This consent to commence the process may be by electronic or telephonic meeting of the College of Bishops. Such election will be subject to the approval of the College of Bishops as described in this section.

2. Bishops shall be chosen by a Diocese in conformance with the constitution and canons of the Diocese and consistent with the Constitution and Canons of this Church.

3. An electing body from the Diocese shall certify the election of a Bishop for consent by the College of Bishops, or may certify two or three nominees from which the College of Bishops may select one for the Diocese.

4. Where the originating body is newly formed, that body shall normally nominate two or three candidates, from whom the College of Bishops may select one.

5. Consent or choice by the College of Bishops shall be based upon the canons for Holy Orders as provided in Title III, Canon 2.4-6 and Canon 8. Consent or choice shall require the affirmative vote of two-thirds of the membership of the College of Bishops present and voting, which consent shall normally be given by the next regular meeting of the College of Bishops and in writing to the originating body. For purposes of the election of Bishops at a meeting of the College, a quorum shall be a majority of the active members of the College. [14]

6. Upon the consent or choice of a Bishop-elect by the College of Bishops, the Archbishop shall take order for the consecration and/or installation of such Bishop.

7. In the event the Bishop-elect or the nominees are rejected by the College of Bishops, the College shall so inform the originating body in writing.

**Section 5 -** *Concerning the Required Declarations at Consecration*

No Presbyter shall be consecrated a Bishop in the Church until he shall have subscribed the following declaration:

> *"I do believe the Holy Scriptures of the Old and New Testaments to be the Word of God and to contain all things necessary to salvation, and therefore, I consequently hold myself*

---

[14] This subsection was amended by the 2021 Provincial Council and was ratified by the Provincial Assembly at its meeting on June 26, 2024. It becomes effective on September 24, 2024.

> *bound to conform my life and ministry thereto, and I do solemnly engage to conform to the Doctrine, Discipline and Worship of Christ as this Church has received them."*

> *"And I do promise, here in the presence of ~~by~~ Almighty God and of the Church, that I will pay true and canonical obedience in all things lawful and honest to the Archbishop of the Anglican Church in North America, and his successors; so help me God."*

**Section 6 -** *Concerning Bishops for Special Mission* [15]

Bishops for Special Mission are Bishops elected by and serving directly under the College of Bishops for a specific missionary purpose. The office of any Bishop for Special Mission shall be created in consultation with the Executive Committee. Any male Presbyter of this Church qualified by these Canons may be elected as a Bishop for Special Mission by the College of Bishops.

**Section 7 -** *Concerning Incapacity of the Diocesan Bishop*

1. When a majority of the members of the Standing Committee or its equivalent have significant concern regarding the physical or mental capacity of the diocesan bishop to carry out his duties, they shall promptly notify the Archbishop who may appoint a pastoral representative to assist the Standing Committee in addressing the concerns with the bishop and his family.

2. If the matter is not resolved and a majority of the Standing Committee believe that the Bishop is no longer able to carry out his duties due to a physical or mental incapacity, the Standing Committee shall notify the Archbishop and ask the Bishop to submit to examination by at least two licensed physicians or psychologists who have a specialty appropriate to the circumstance and who shall render their opinion to the Standing Committee and to the Bishop and his family. One of the physicians or psychologists shall be chosen by the Bishop and one by the Standing Committee.

3. If, after considering the report of the physicians or psychologists the Standing Committee determines that the Bishop is no longer able to carry out his duties due to a physical or mental incapacity, the Standing Committee may, upon a two-thirds majority vote, ask the bishop to resign or to take a medical leave of absence. The Standing Committee shall report this matter to the Archbishop, who shall ensure that appropriate pastoral care is provided to the Bishop and his family.

4. The Bishop shall have the right to appeal within 30 days of receiving written notification of the determination of incapacity by the Standing Committee. The appeal shall be to the Provincial Tribunal. The Tribunal shall review all evidence relevant to the appeal, including testimony of witnesses. The Tribunal's decision shall be based on the preponderance of the evidence. A simple majority of the Tribunal shall be necessary to render a decision and the decision shall be final. Pending the outcome of the appeal, the Bishop shall automatically be placed on paid administrative leave.

5. If the Bishop refuses to comply with any provision of this canon, the Archbishop may issue a Godly Admonition. If the Bishop refuses to comply with the Archbishop's Godly Admonition, such refusal shall constitute a presentable offense under Canon IV.2.

---

[15] This section was amended by the 2020 Provincial Council and ratified by the Provincial Assembly at its meeting on June 26, 2024. It becomes effective on September 24, 2024.

**TITLE III**

6.  If the Bishop resigns, takes medical leave, or appeals to the Provincial Tribunal under the provisions of this canon, the Ecclesiastical Authority shall be the Bishop Coadjutor, if there be one, or the Standing Committee.

7.  While the Bishop is on medical leave, the Bishop Coadjutor, if there be one, or the Standing Committee shall be the Ecclesiastical Authority until the Archbishop declares either the Bishop competent to resume his duties or unable to do so. If the Archbishop declares the Bishop unable to resume his duties, the Standing Committee may declare the office vacant and the Diocese may proceed to seek the consent of the College of Bishops for the election of a new Bishop pursuant to Canon III.8.4.1.

**Section 8 –** *Procedure When the Episcopal Relationship is Imperiled or Hindered*

1.  Whenever the Bishop or a majority of the Standing Committee of the diocese (or its equivalent) believe the pastoral relationship between the Bishop and the Diocese to be imperiled or hindered by reason of dissension, either or both shall present the matter to the Archbishop.

2.  Upon notification of such imperilment or hindrance, the Archbishop shall promptly seek reconciliation by whatever means he believes appropriate that is not inconsistent with Holy Scripture. Both the Bishop and the Standing Committee of the diocese (or its equivalent) shall participate cooperatively in the process. The Archbishop may issue interim directives appropriate to the matter.

3.  After good faith participation in this process, the Bishop or a two-thirds majority of the Standing Committee may appeal to the Archbishop to issue a final judgment. Prior to issuing a final judgment, the Archbishop shall consult with the Executive Committee and the Chancellor of the Province. The Executive Committee may schedule a conference with the Bishop and Standing Committee of the diocese before rendering its advice to the Archbishop. At such conference, the parties may be heard and may be represented by a person or persons of their choice.

4.  The judgment of the Archbishop may include a leave of absence with pay for the Bishop, a refusal to dissolve the episcopal relationship or a judgment of dissolution.

5.  If the relationship is to be dissolved, the judgment may include terms and conditions for compliance by both parties and must include a financial settlement to be determined at the discretion of the Archbishop. The Archbishop shall in all cases render pastoral support to the Bishop. Upon issuing such judgment, the Archbishop shall report the judgment to the College of Bishops.

**Section 9** – *Concerning Voluntary Resignation by a Bishop from the Ordained Ministry of this Church* [16]

1.  Any Bishop in good standing may resign from the Ordained Ministry of this Church by sending a resignation in writing to the Archbishop. The Archbishop shall record the declaration and request so made, and shall determine that the Bishop is not under discipline as defined in Title IV of these canons, and that the resignation is not occasioned by misconduct or irregularity, but is voluntary and for causes which do not affect the moral character of the Bishop.

---

[16] This section was added by the 2022 Provincial Council and ratified by the Provincial Assembly at its meeting on June 26, 2024. It becomes effective on September 24, 2024.

**TITLE III**

Upon making this determination, the Archbishop shall defer formal action upon the declaration for sixty days, and meanwhile shall lay the matter before the College of Bishops for advice and consent. With its advice and consent, the Archbishop may pronounce that such resignation is accepted and that the Bishop is released from the obligations of the Ministerial office, and that the Bishop relinquishes the right to exercise in this Church the gifts and spiritual authority of a shepherd of the flock.

2. The Archbishop's declaration shall state that the resignation was for causes which do not affect the Bishop's moral character, and shall, if requested, give a certificate to this effect to the person so released from the ministry of this Church. In all other cases of resignation or renunciation of the Ordained Ministry of a Bishop, where there may be a question of misconduct or irregularity, the Archbishop shall follow the procedures outlined in Canon IV.7 and IV.4. Any Bishop who is released under this canon is also released from his ministry as a Presbyter and Deacon within this Province.

3. Any Bishop whose resignation has been accepted under this canon may request that the Archbishop write a commendatory letter to another Christian denomination or jurisdiction. The Archbishop has sole discretion as to whether to grant such a request.

4. A Bishop having voluntarily resigned from the Ordained Ministry of this Church and not under the discipline of any ecclesial body may petition the Archbishop to restore the right to exercise in this Church the gifts and spiritual authority as a Bishop conferred in ordination. The terms and conditions of such restoration shall be entirely within the discretion of the Archbishop, with the advice of the Standing Committee of the Bishop's previous diocese and with the advice and consent of the College of Bishops.

# TITLE IV
## Ecclesiastical Discipline

### Canon 1
#### Of the Nature of Discipline in the Church

The Church has its own inherent right to discipline the faithful who commit offenses. Penalties are established only insofar as they are essential for repentance, reformation, and ecclesiastical discipline and order.

### Canon 2
#### Of Charges against and Godly Admonitions to Bishops, Presbyters, or Deacons [17]

**Section 1 -** *Concerning Charges*

The following are the charges or accusations on which the Archbishop, a Bishop, a Presbyter, or a Deacon in this Church may be presented:

1.  Apostasy from the Christian Faith;

2.  Heresy, false doctrine, or schism;

3.  Violation of ordination vows;

4.  Conduct giving just cause for scandal or offense, including the abuse of ecclesiastical power;

5.  A conviction by a court of competent jurisdiction for felony or other serious offenses;

6.  Sexual immorality;

7.  Acceptance of membership in a religious jurisdiction with purpose contrary to that of this Church;

8.  Violation of any provision of the Constitution of this Church;

9.  Disobedience to, or willful contravention of the Canons of this Church or the constitution or canons of the Diocese in which the charged or accused member of the clergy holds office;

10. Habitual neglect of the duties of the charged or accused member of the clergy's office;

11. Habitual neglect of public worship, and the Holy Communion, according to the order and use of this Church;

12. Willful refusal to follow a lawful Godly Admonition.

**Section 2 -** *Concerning Godly Admonitions*

A Godly Admonition is a written directive from (a) a Bishop with jurisdiction to a member of the Clergy under his jurisdiction, (b) the Archbishop to a Bishop, or (c) the Dean of the Province to the Archbishop. No Admonition shall be issued until the Bishop, Archbishop, or Dean of the Province (or such person to whom authority has been validly delegated under these canons) shall have met personally with the one receiving the Admonition and the issues have been clearly and fairly discussed. The written Admonition shall be specific concerning the matter complained of

---

[17] The title of this canon, its structure and its contents were amended by the 2021 Provincial Council and was further amended by the 2022 Provincial Council. It was ratified by the Provincial Assembly at its meeting on June 26, 2024. It becomes effective on September 24, 2024.

**Title IV**

and the canonical or theological basis for the complaint, and shall provide a reasonable time for any required action to be taken. A temporary suspension from the exercise of ministry requires an Inhibition pursuant to Canon IV.9.

In the case of an Admonition to a Bishop, the Archbishop must first obtain the written consent of three of the five senior active diocesan members of the College of Bishops by date of admission (exclusive of the Archbishop, any bishop who is the subject of the Admonition, and any Bishop who may recuse himself) to the contents of the Admonition before its issuance.

In the case of an Admonition to the Archbishop, the Dean of the Province must first obtain the written consent of three of the five senior active diocesan members of the College of Bishops by date of admission (exclusive of the Dean of the Province and the Archbishop, and any Bishop who may recuse himself) to the contents of the Admonition before its issuance.

### Canon 3
### Of Presentments of Presbyters and Deacons

**Section 1 -** *Concerning Accusations*

1. An accusation or accusations of conduct believed by the accuser(s) to be in violation of Canon IV.2 may be brought against a Presbyter or a Deacon. Whenever possible the Bishop shall meet with the accuser(s) in person to assess their credibility and the credibility of the accusation(s).

2. The accusation(s) shall be in a writing that contains the facts supporting the allegations of wrongdoing and shall be signed and sworn to by the accuser(s) and delivered to the Bishop.

3. If the Bishop deems the accuser(s) or the accusation(s) to be credible, he shall cause an investigation to be made by a canonical investigator. If the Bishop deems the accuser(s) not to be credible or the accusation(s) to be without any merit, or both, he shall inform the accuser(s) of his determination in writing and the accuser(s) shall have the right, within 30 days of such determination by the Bishop to appeal his decision to the Standing Committee. The Standing Committee shall then have 30 days to determine whether the accuser(s) and the accusation(s) are credible, or to affirm the bishop's decision. If they reverse the bishop's determination, in whole or in part, they shall cause an investigation to be made by a canonical investigator. [18]

4. Whenever the bishop believes he cannot fairly assess the credibility of the accuser(s), the accusation(s), or the accused, or fairly impose sentence, he shall recuse himself and delegate the investigation, presentment, and/or sentencing to another bishop having jurisdiction, or to a bishop formerly having had jurisdiction who is still an active member of the College of Bishops. [19]

5. During the pendency of the investigation, the details of the accusation(s) and the investigation shall be maintained in appropriate confidence.

---

[18] This subsection was amended by the 2020 Provincial Council and ratified by the Provincial Assembly at its meeting on June 26, 2024. It becomes effective on September 24, 2024.
[19] This subsection was amended by the 2024 Provincial Council and ratified by the Provincial Assembly at its meeting on June 26, 2024. It becomes effective on September 24, 2024.

**Title IV**

**Section 2 -** *Concerning Voluntary Submission to Discipline*

At any time after the receipt of an accusation(s), the accused may confess to the truth of the allegation(s) and submit to the discipline of the Church.

**Section 3 -** *Concerning Canonical Investigation, Presentment and Trial*

1. Each Diocese shall appoint a canonical investigator to ascertain the merit of the accusations and make a recommendation to the Ecclesiastical authority as to whether further juridical process should be pursued.

2. (a) No presentment shall be made or conviction had for any offense under Canon IV.2 unless the offense shall have been committed within ten years immediately preceding the time of the presentment. Such time may be extended by written permission of the Archbishop.

   (b) For any offense covered by Canon IV.2.5, a presentment may also be made at any time within one year after such conviction.

3. The accused shall be entitled to notice of an ongoing investigation. The accused has the right to retain legal counsel or another representative and may submit his or her defense in writing. The presenters also have the right to retain legal counsel or another representative.

4. The canonical investigator shall report the findings and make a recommendation to the Diocesan authority within a reasonable time.

5. If it is determined by the Ecclesiastical authority that a trial should occur, then a presentment shall be prepared and procedures followed according to the norms of ecclesiastical law. Such procedures shall acknowledge the presumption of innocence of the accused, the right to representation by counsel, the right to confront and examine witnesses and shall be consistent with principles of fairness, due process and natural justice and shall require expeditious handling consistent with those principles. No new rule of procedure shall be made while a matter is pending that would be affected by that rule. [20]

6. The Presbyter or Deacon accused in the presentment has the right to a trial within a reasonable time, unless personally waived.

**Section 4 -** *Concerning Requirements for a Presentment*

1. When, after investigation of an accusation, the Ecclesiastical authority has determined that the matter should proceed forward, Articles of Presentment shall be prepared and personally served within a reasonable time upon the Presbyter or Deacon against whom the accusation has been made.

2. Each Diocese shall have a person (lay or ordained) appointed by the Bishop for the drafting of presentments and the presentation of the same before the Diocesan Trial Court.

3. The Articles of Presentment shall be made in a writing signed by a representative of the diocesan authority, wherein shall be specified all particulars of time, place, and circumstances alleged.

---

[20] This subsection was amended by the 2020 Provincial Council and ratified by the Provincial Assembly at its meeting on June 26, 2024. It becomes effective on September 24, 2024.

Title IV

## Canon 4
## Of Presentments of Bishops

**Section 1 -** *Concerning Requirements for Presentment*

A Bishop may be charged under Canon IV.2 by three Bishops of this Church with jurisdiction, or by not fewer than ten Presbyters, Deacons, or adult baptized members of this Church in good standing, of whom at least two shall be Presbyters. One Presbyter and not fewer than six lay persons shall belong either to the Diocese in which the alleged offense was committed or to the Diocese in which the Bishop is canonically resident. Such charges shall be in writing, signed and sworn to by all the accusers and shall be presented to the Archbishop, the Archbishop's delegate, or the College of Bishops. The grounds of accusation must be set forth with reasonable certainty of time, place and circumstance. The charges shall be referred to the Board of Inquiry.

**Section 2 -** *Concerning Response to Rumors*

Whenever a Bishop shall have reason to believe that there are in circulation rumors, reports, or allegations affecting his personal or official character, he may, with the consent of two other members of the College of Bishops, demand in writing of the Archbishop, the Archbishop's delegate, or the College of Bishops, that investigation of such rumors, reports and allegations be made.

**Section 3 -** *Concerning the Board of Inquiry*

The Archbishop upon receipt of a presentment under Section 1 or of a demand under Section 2 shall select a Board of Inquiry of five Presbyters and five adult baptized members in good standing, none of whom shall belong to the Diocese of the accused, of whom eight shall form a quorum, and refer the matter to it.

**Section 4 -** *Concerning the Process of Inquiry*

The Board of Inquiry shall investigate such rumors, reports, or charges, as the case may be. In conducting the investigation, the Board shall hear the accusations and such proof as the accusers may produce, and shall determine whether, upon matters of law and fact, as presented to them, there are reasonable grounds to put the accused to trial.

**Section 5 -** *Concerning Testimony and Confidentiality*

The testimony to the Board of Inquiry shall be recorded and transcribed and shall be preserved in the archives of the College of Bishops. The proceedings of the Board as to the investigation of rumors shall be confidential; provided however that if the Board determines that the rumor is unfounded it shall issue to the requesting Bishop a written statement to that effect.

**Section 6 -** *Concerning the Findings of the Board of Inquiry*

If in the judgment of two-thirds of the Board of Inquiry there is probable cause to present the accused Bishop for trial for violation of Canon 2 of this Title, it shall make a public declaration to that effect.

## Canon 5
## Of Courts, Membership and Procedures

**Section 1 -** *Concerning Courts for the Trial of a Presbyter or a Deacon*

Title IV

1. In each Diocese there shall be an ecclesiastical Trial Court for the trial of any Presbyter or Deacon subject to the jurisdiction of that Diocese.

2. It shall be the duty of each Diocese to provide by canon for the establishment of such court and the mode of conducting trials in the same.

3. In case of conviction by the Trial Court, the Bishop shall not proceed to sentence the accused before the expiration of thirty days after he shall have been served with notice of the decision of the court, nor in case an appeal is taken shall sentence be pronounced pending the hearing and determination thereof.

## Section 2 - *Concerning Courts for the Trial of a Bishop*

1. There shall be a Court for the Trial of a Bishop, whose jurisdiction shall be limited to proceedings against a Bishop of this Church, including the Archbishop, arising under these Canons. [21]

2. The members of this Court shall be three Bishops who are members of the College of Bishops, two Presbyters, and two adult confirmed members in good standing. The members of this Court shall be elected by the Provincial Council, each Order electing its representatives by majority vote of that Order. An equal number of alternate members of this Court shall be elected in the same manner, and such alternate(s) shall serve in the event of any vacancies on the Court or the recusal of a member of the Court. In the event the list of alternates is exhausted for an Order, the Archbishop shall fill those vacancies in consultation with the Executive Committee until the Provincial Council meets to elect members of the court or alternates. The term of each member of the Court shall be three years or until a successor is elected and qualified. [22]

3. The senior diocesan member of the College of Bishops in date of consecration shall be the President of the Court (exclusive of the Bishop under trial and any Bishop who may recuse himself). The Archbishop, or, in the case of a proceeding against the Archbishop, the Dean of the Province, shall also appoint a legal advisor to the Court who shall be trained in canon law, and a prosecutor, also trained in canon law, to bring and prosecute presentments when necessary. [23]

## Section 3 - *Concerning the Court of Extraordinary Jurisdiction*

1. There shall be a Court of Extraordinary Jurisdiction, whose jurisdiction shall be limited to proceedings either:

   (a) referred by Bishops of this Church who have oversight of Clergy canonically attached to other Anglican Provinces or Dioceses in those cases where such Provinces or Dioceses have waived their jurisdiction in favor of the Court of Extraordinary Jurisdiction; or

   (b) in which a member of the Clergy who is amenable to presentment under these canons is attached to a Diocese not possessed of a trial court. Cases may be referred to the Court of Extraordinary Jurisdiction by the Bishop under whose authority the accused serves.

---

[21] This subsection was amended by the 2021 Provincial Council and ratified by the Provincial Assembly at its meeting on June 26, 2024. It becomes effective on September 24, 2024.

[22] This subsection was amended by the 2022 Provincial Council and ratified by the Provincial Assembly at its meeting on June 26, 2024. It becomes effective on September 24, 2024.

[23] This subsection was amended by the 2021 Provincial Council and ratified by the Provincial Assembly at its meeting on June 26, 2024. It becomes effective on September 24, 2024.

2. The members of this Court shall be three Presbyters, three adult confirmed members in good standing, and one Bishop, appointed by the Archbishop. The President of the Court shall be elected by the members of the Court. The Archbishop shall also appoint a legal advisor to the Court who shall be trained in canon law, and a prosecutor, also trained in canon law, to bring and prosecute presentments when necessary. The term of each member of the Court shall be three years or until a successor is elected and qualified.

### Section 4 - *Concerning the Provincial Tribunal*

1. There shall be a Provincial Tribunal as provided in the Constitution of the Church. The Provincial Tribunal shall serve: (1) as a court of review in the case of a conviction after trial of a Bishop, Presbyter, or Deacon; and (2) as a court of original jurisdiction: (a) to hear and decide matters in dispute arising from the Constitution and Canons of the Province, except in Title IV prior to the role assigned to it in clause (1) above, (b) to hear and decide disputes between Dioceses, (c) to hear and decide appeals by a bishop pursuant to Canons I.3.3(d) and III.8.7(d) and (d) to issue nonbinding advisory opinions on issues submitted by the College of Bishops, the Provincial Council, or the Provincial Assembly. [24]

2. The Provincial Tribunal shall consist of seven members who shall be elected by the Provincial Council. At least two members shall be Bishops; the senior Bishop in date of admission shall serve as the President of the Court. At least two members shall be lawyers, knowledgeable in canon and ecclesiastical law. The term of each member of the Court shall be three years or until a successor is elected and qualified. An equal number of alternate members of this Tribunal shall be elected in the same manner, and such alternate(s) shall serve in the event of any vacancies on the Tribunal or the recusal of a member of the Tribunal. [25]

### Section 5 - *Concerning Appeal*

1. An appeal may be made within thirty days of the decision of a Court for the Trial of a Presbyter or a Deacon, the Court for the Trial of a Bishop, or the Court of Extraordinary Jurisdiction. The appeal shall be made in writing to the Bishop who is the Presiding Officer of the Provincial Tribunal, stating the nature of the case and the reason(s) for the appeal.

2. The Provincial Tribunal shall, within thirty days, request the entire transcript of the trial and upon receipt of the transcript shall notify promptly all parties of the time and place for the hearing of the appeal which shall be within three months but not fewer than two months from the date of notification, unless agreed otherwise by all the parties.

3. The Provincial Tribunal shall render its decision on the appeal within thirty days of the hearing. The expenses of the appeal shall be paid by the appellant, unless the appellant is successful or the Provincial Tribunal orders otherwise.

### Section 6 - *Concerning the Process of the Appeal*

1. The Provincial Tribunal shall hear the appeal based solely upon the record in the trial court. The parties may submit written briefs and may request oral argument. The Provincial

---

[24] This subsection was amended by the 2023 Provincial Council and ratified by the Provincial Assembly at its meeting on June 26, 2024. It becomes effective on September 24, 2024.

[25] This subsection was amended by the 2022 Provincial Council and further amended by the 2024 Provincial Council. It was ratified by the Provincial Assembly at its meeting on June 26, 2024. It becomes effective on September 24, 2024.

Title IV

Tribunal may reverse or affirm, in whole or in part, the appealed decision, or, if in its opinion justice shall require, may grant a new trial.

2. Should the appellant fail to appear for the hearing, the Provincial Tribunal shall, at its discretion, dismiss the appeal, or proceed to hear and determine the appeal.

**Section 7 -** *Concerning Procedures* [26]

The Provincial Tribunal, the Court for Trial of a Bishop, the Court of Extraordinary Jurisdiction, and the Trial Courts of the several Dioceses shall establish their own procedures, to include the appointment of a recorder of proceedings. Such procedures shall acknowledge the presumption of innocence of the accused, the right to representation by counsel, the right to confront and examine witnesses and shall be consistent with principles of fairness, due process and natural justice and shall require expeditious handling consistent with those principles. No new rule of procedure shall be made while a matter is pending that would be affected by that rule. In all courts of original jurisdiction, the standard of proof shall be by clear and convincing evidence. Unless a higher standard is required by diocesan Canon for a Diocesan Trial Court, the affirmative vote of not fewer than a majority of the members of a Court shall be required for any determination by that Court.

### Canon 6
### *Of a Member of the Clergy in Any Diocese Chargeable with Offense in Another*

If a member of the Clergy belonging to any Diocese shall have conducted himself in another Diocese in such a manner as to be liable to presentment under the provisions of Canon 2, the Ecclesiastical Authority thereof shall give notice of the same to the Ecclesiastical Authority where the member of the Clergy is canonically resident, exhibiting, with the information given, reasonable ground for proceeding. If the Ecclesiastical Authority of the alleged offender, after due notice given, shall omit, for the space of three months, to proceed against the offending member of the Clergy, or shall request the Ecclesiastical Authority of the Diocese in which the offense or offenses are alleged to have been committed to proceed against him, it shall be within the power of the Ecclesiastical Authority of the Diocese within which the offense or offenses are alleged to have been committed to institute proceedings as provided by the canons of that Diocese.

### Canon 7
### *Of Renunciation of Ministry*

If a member of the Clergy making a declaration of resignation or renunciation of the ministry under Canon III.6.4, be under accusation or presentment for any canonical offense, or if they shall have been placed on trial for the same, the Ecclesiastical Authority to whom such declaration is made, shall not consider or act upon such declaration until after the accusation or presentment shall have been dismissed, or the trial shall have been concluded and sentence, if any, pronounced. If the Ecclesiastical Authority to whom such declaration is made shall have ground to suppose that the member of the Clergy making the same is liable to presentment for any canonical offense, such member of the Clergy may, in the discretion of the Ecclesiastical Authority, be placed on trial for such offense, notwithstanding such declaration of resignation or renunciation of the ministry.

---

[26] This section was amended by the 2020 Provincial Council and ratified by the Provincial Assembly at its meeting on June 26, 2024. It becomes effective on September 24, 2024.

Title IV

### Canon 8
### Of Sentences

**Section 1 -** *Concerning the Sentencing of a Presbyter or a Deacon* [27]
The Bishop alone has the authority to pronounce sentence on a Presbyter or a Deacon convicted, whether by trial or voluntary submission to the discipline of the Church, as indicated in these canons. The Bishop may, upon recusing himself, delegate the sentencing to another Bishop having jurisdiction or to a bishop formerly having had jurisdiction who is still an active member of the College of Bishops. If there is no Bishop, the Archbishop or another Bishop designated by the Archbishop shall pronounce sentence.

**Section 2 -** *Concerning the Sentencing of a Bishop* [28]
The College of Bishops, speaking through the Archbishop or his designate, has the sole responsibility and authority to pronounce sentence on a Bishop convicted, whether by trial or voluntary submission to the discipline of the Church, as indicated in these canons.

**Section 3 -** *Concerning Range of Sentencing*
Sentence shall be:
1. Censure and/or admonishment;
2. Suspension, for a definite period, not to exceed five years;
3. Suspension for life; or
4. Deposition from the sacred ministry.

In addition, other measures for restoration of the accused may be required.

**Section 4 -** *Concerning Length of Sentences*
Upon a showing of good cause:

1. A sentence of suspension of a Presbyter or a Deacon may be terminated or shortened by the Bishop of the Diocese in which the Presbyter or Deacon was convicted with the advice and consent of the Archbishop, in consultation with the Executive Committee;

2. A sentence of suspension of a Bishop may be terminated or shortened by the College of Bishops with the consent of the Archbishop.

### Canon 9
### Of Inhibitions

**Section 1 -** *Concerning Inhibitions* [29]
An Inhibition is a temporary suspension of a Bishop (including the Archbishop), a Presbyter, or a Deacon from the exercise of ministry, in whole or in part, when one having authority under these canons believes, upon reasonable grounds, that the accused has engaged in conduct upon which the accused may be presented and that it is in the best interests of the Church to do so, pending an accusation, canonical investigation, presentment, trial or voluntary submission to discipline

---

[27] This section's title and content was amended by the 2020 Provincial Council further amended by the 2024 Provincial Council, and then ratified by the Provincial Assembly at its meeting on June 26, 2024. It becomes effective on September 24, 2024.
[28] Ibid.
[29] This section's title and its content was amended by the 2021 Provincial Council and ratified by the Provincial Assembly at its meeting on June 26, 2024. It becomes effective on September 24, 2024.

**Title IV**

under these canons. An Inhibition may be used alone or in conjunction with a Godly Admonition (ACNA IV.2.2). An inhibition shall be in writing, signed by one having authority under this canon or one to whom authority has been validly delegated under these canons.

**Section 2 -** *Concerning Inhibition of a Presbyter or a Deacon [30]*

1. A Bishop may temporarily Inhibit a Presbyter or a Deacon under this canon. Such temporary Inhibition shall last no longer than sixty (60) days. With the advice and consent of the Standing Committee or its equivalent, any Inhibition of a Presbyter or a Deacon may be extended until such time as the Bishop lifts the Inhibition (with notice to the Standing Committee or its equivalent), any charges arising from a presentment are dropped, action is taken by a Trial Court, or the accused voluntarily submits to the discipline of the Church.

2. Upon application by a Presbyter or a Deacon who has been Inhibited under this Canon and upon a showing of good cause, the Archbishop or his designate may modify or revoke the Inhibition. Such decision shall be rendered within thirty (30) days of the application.

**Section 3 -** *Concerning Inhibition of a Bishop [31]*

1. The Archbishop may temporarily Inhibit a Bishop under this canon. Prior to such temporary Inhibition, the Archbishop must first obtain the written consent of the four of the five senior active diocesan members of the College of Bishops by date of admission (exclusive of the Archbishop, the Bishop who is the subject of the Inhibition, and any Bishop who may recuse himself). Such temporary Inhibition shall last no longer than sixty (60) days.

2. With the written consent of four of the five senior active diocesan members of the College of Bishops by date of admission (exclusive of the Archbishop, the Bishop who is the subject of the Inhibition, and any Bishop who may recuse himself), any Inhibition of a Bishop may be extended until the Archbishop lifts the Inhibition (with notice to the Standing Committee of the Diocese of the Bishop inhibited and the panel of Bishops which authorized an extension of the Inhibition), any charges arising from a presentment are dropped, action is taken by a Court for the Trial of a Bishop, or the accused voluntarily submits to the discipline of the Church.

3. Upon application by a Bishop who has been Inhibited under this Canon and upon a showing of good cause, the five senior active diocesan members of the College of Bishops by date of admission (exclusive of the Bishop who is the subject of the Inhibition, any Bishop involved in the original Inhibition, and any Bishop who may recuse himself) may by majority vote modify or revoke the Inhibition in writing. Such decision shall be rendered within thirty (30) days of the application.

**Section 4 -** *Concerning Inhibition of the Archbishop [32]*

---

[30] This section's title was added and its content was amended by the 2021 Provincial Council. It was further amended by 2022 Provincial Council and ratified by the Provincial Assembly at its meeting on June 26, 2024. It becomes effective on September 24, 2024.

[31] This section was amended by the 2021 Provincial Council. It was further amended by 2022 Provincial Council and ratified by the Provincial Assembly at its meeting on June 26, 2024. It becomes effective on September 24, 2024.

[32] This section was added by the 2021 Provincial Council and amended by the 2022 Provincial Council. It was further amended by the 2023 Provincial Council. It was ratified by the Provincial Assembly at its meeting on June 26, 2024. It becomes effective on September 24, 2024.

Title IV

1. The Dean of the Province may temporarily Inhibit the Archbishop under this canon. Prior to such Inhibition, the Dean of the Province must first obtain the written consent of four of the five senior active diocesan members of the College of Bishops by date of admission (exclusive of the Archbishop, the Dean of the Province, and any Bishop who may recuse himself). Such temporary Inhibition shall last no longer than sixty (60) days. Notice shall be given to the Standing Committee of the Diocese of the Archbishop within twenty-four (24) hours of such Inhibition.

2. With the written consent of four of the five senior active diocesan members of the College of Bishops by date of admission (exclusive of the Archbishop, the Dean of the Province, and any Bishop who may recuse himself), any Inhibition of the Archbishop may be extended until the Dean of the Province lifts the Inhibition (with the notice to the Standing Committee of the Archbishop's Diocese and the panel of Bishops who authorized an extension of the Inhibition), any charges arising from a presentment are dropped, action is taken by a Court for the Trial of a Bishop, or the accused voluntarily submits to the discipline of the Church. [33]

3. Upon application by the Archbishop and upon a showing of good cause, the five senior active diocesan members of the College of Bishops by date of admission (exclusive of the Archbishop, any Bishop involved in the original Inhibition, and any Bishop who may recuse himself) may by majority vote modify or revoke the Inhibition in writing. Such decision shall be rendered within thirty (30) days of the application.

### Canon 10
### Of Notification of Disciplinary Action Taken [34]

The Bishop or Archbishop pronouncing sentence shall within thirty (30) days after the sentence becomes final and not subject to appeal, notify the Office of the Archbishop, who shall notify all Bishops with jurisdiction and shall maintain a permanent record of the action. The sentencing Bishop shall also notify all of the clergy in the diocese in which the deacon or presbyter has been sentenced. Such required notice shall be limited to the offence under Canon IV.2 for which the member of the clergy has been presented, tried, and convicted, or voluntarily submitted to the discipline of the Church, and the sentence imposed under Canon IV.8. Should a sentence be amended or terminated, notification of such amendment or termination shall also be reported to the Office of the Archbishop who shall promptly give notice to all Bishops with jurisdiction and record the amendment or termination in the permanent record.

### Canon 11
### The Provincial List

1. The Office of the Archbishop shall maintain a list of all those clergy who have been tried and convicted, or who have voluntarily submitted to the discipline of the Church, for any offense listed in Canon IV.2. [35]

---

[33] The subsection was amended by the 2023 Provincial Council and ratified by the Provincial Assembly at its meeting on June 26, 2024. It becomes effective on September 24, 2024.

[34] This canon was amended by the 2021 Provincial Council and further amended by the 2022 Provincial Council. It was ratified by the Provincial Assembly at its meeting on June 26, 2024. It becomes effective on September 24, 2024.

[35] This section has been amended by the 2020 Provincial Council and ratified by the Provincial Assembly at its

**Title IV**

2.  The list shall include (a) the name of the clergyperson, (b) the offense under Canon IV.2 for which they were presented, tried and convicted, or voluntarily submitted to the discipline of the Church, (c) the sentence imposed under Canon IV.8 and any other measures required for the restoration of the clergyperson and the victims, (d) the date of the sentence, and (e) the name of the Bishop who imposed the sentence.

3.  It is the responsibility of each Bishop with jurisdiction to ensure that the diocesan records are complete and accurate and that the information required under this canon has been provided to the Office of the Archbishop pursuant to Canon IV.10.

4.  Those marked on the list will be informed of its entry and its content by the Office of the Archbishop.

5.  The Provincial List may be accessed only by the Archbishop, Bishops having jurisdiction, Provincial Chancellors and Diocesan Chancellors, provided however that the Archbishop and Bishops having jurisdiction may designate in writing such persons on their respective staffs who shall have access to the Provincial List for the limited purposes of administration of the list or screening candidates for deployment. [36]

6.  Where a sentence has been shortened or terminated for a clergyperson under these canons, the Office of the Archbishop shall note the date and name of the Bishop who shortened or terminated the sentence in the entry for that clergyperson.

---

meeting on June 26, 2024. It becomes effective on September 24, 2024.

[36] This section has been amended by the 2020 Provincial Council and ratified by the Provincial Assembly at its meeting on June 26, 2024. It becomes effective on September 24, 2024.

# TITLE V
# Enactment, Amendment, and Repeal of Canons

### *Canon 1*
### *Of Enactment, Amendment, and Repeal*

**Section 1 -** *Concerning New Canons*
No new canon shall be enacted or existing canon amended or repealed, except by majority vote of the Provincial Council and ratification of such action by majority vote of the Provincial Assembly.

**Section 2 -** *Concerning the Repealing of Canons*
Whenever a canon which repeals another canon, or part thereof, shall itself be repealed, such previous canon or part thereof shall not thereby be revived or re-enacted without express provision to that effect.

**Section 3 -** *Concerning the Form of Amendment*
The following form shall be used in all cases of enactment or amendment of existing canons:
*"Title ___, Canon ___, Section___ is hereby [enacted] [amended] to read as follows: [Here insert the new reading]."*

In the event of the insertion of a new canon, or of a new section or clause in a canon, the numbering of the canons or divisions of a canon which follow shall be changed accordingly.

**Section 4 -** *Concerning the Form of Repeal*
The following form shall be used in all cases for the repeal of a canon:
*"Title ___, Canon ___, Section___ [or Canon ___ in its entirety] is hereby repealed."*

In the event of the repeal of a canon, or of a section or clause in a canon, the numbering of the canons or divisions of a canon which follow shall be changed accordingly.

**Section 5 -** *Concerning Effective Dates*
Any amendment to these canons, or repeal thereof, shall not become effective until ninety (90) days following ratification by the Provincial Assembly. In the case of the adoption of the initial set of canons by the inaugural Assembly, such canons shall become effective immediately upon their ratification by majority vote of the Assembly.

**Title V**

**We certify that the foregoing is the text is the text of the Canons of the Anglican Church in North America adopted by the Common Cause Leadership Council functioning as the Provincial Council and ratified with amendments by the Provincial Assembly at its meeting at Saint Vincent's Cathedral, Bedford, Texas, on the 22nd day of June in the Year of our Lord 2009.**

_____          _____

The Right Reverend Robert W. Duncan          The Venerable Charlie Masters
Archbishop of the Anglican Church in          Acting Deputy Chair and Bishop-Elect
    North America

**I certify that the text of the Canons set out above is the text of the Canons of the Anglican Church in North America ratified by the Provincial Assembly at its meeting at Saint Vincent's Cathedral, Bedford, Texas, on the 22nd day of June in the Year of Our Lord 2009.**

_____

The Rev. Travis S. Boline
Acting Secretary

Title V

# APPENDIX A

## Guidelines for Submitting an Application Form to the Provincial Council for Recognition as a New Diocese/Network or as a Diocese/Network "In Formation"

Step one is to obtain an application form and application guidelines, which can be downloaded at the ACNA website (www.anglicanchurch-na.org). Please bear in mind the following principles as you pray over your application.

### Principles for the Application Process for New Diocese/Network:

We ask each group applying for recognition as a diocese or network of the Anglican Church in North America to commit to the following principles:

1.   The new province is committed to organizing itself around the historic principle that parishes form around a bishop. Simultaneously, it recognizes that either geographic proximity or affinities because of relationship are equally valid ways of practicing that principle. The additional principles that follow are designed to respect the choice of each congregation for either affinity or geography as its organizing principle.

2.   The application process will be open to the whole of the province of ACNA from the start of each application. The purpose of this principle of openness is so that each congregation and church-start in the area of the group may be invited to participate and so that the whole Provincial Council will be informed of all congregations being invited to consider participation in a new grouping.

3.   The leadership of each group applying will practice the principles of invitation and blessing. The principle of invitation refers to the attitude and practice of inviting every congregation and church-start to come and participate fully in the organizing of the proposed new diocese or network. The principle of blessing means that we are all committed to bless any congregation choosing to remain in its existing jurisdiction rather than participate in a new group.

4.   Each congregation commits to openness with its existing bishop/jurisdiction concerning its participation in the formation of the diocese/ network that, if accomplished, might have the effect of removing that congregation from its present affiliation with that bishop/jurisdiction.

5.   In the early work of the Province it is anticipated that some congregations are making a preliminary affiliation, subject to subsequent realignment for emerging new missionary reasons as new congregations and new dioceses/networks emerge.

6.   Bishops and priests who are leading groups that are considering application to form new dioceses/networks will promptly notify other bishops with churches in the area considered after determining which congregations will be invited to participate in organizing a new grouping.

7.   Bishops and priests who are leading existing or potential dioceses/ networks should take geographical considerations into account so that regional ministry is encouraged.

Step two is to consider the counsel provided in these guidelines to assist you in filling out the application form. The guidelines are keyed to each item on the application form.

**Title V**

# APPLICANT INFORMATION

1. **Recognition Sought.** Canon I.5.1 specifies that a diocese or network is a grouping gathered for mission under the oversight of a bishop consisting of a minimum of twelve congregations with an ASA of at least 50 each and a collective ASA of at least 1,000. Canon I.5.1 notes, however, that a grouping not meeting these minimum specifications may be recognized on a case-by-case basis at the discretion of the Provincial Council. Therefore, each potential grouping must decide whether it meets the normal minimal standards as stated above, or whether it might qualify as an exception to policy based on other considerations (See 8 below), or if it might more appropriately apply as a grouping "In Formation." Note also that Article II of the Constitution specifies that new groupings (dioceses or networks) can be either regional or affinity based.

2. **Rationale for Becoming a Diocese/Network or Diocese/Network "In Formation".** Answers to the following five questions must be submitted along with the completed application.

   (1) Is there a compelling missional reason for not becoming a part of an existing ACNA diocese in your geographic area?

   (2) How will your application support the development of ACNA as one, united Biblical and missionary church reaching North America with the transforming love of Jesus Christ?

   (3) What other reasons do you have for forming a new diocese or diocese-in-formation?

   (4) Are all of the diocesan bishops and vicar-generals of existing ACNA dioceses or dioceses-in-formation which have churches in the geographic area where you are forming in agreement with your application?

   (5) If not, what efforts have you made to address their concerns?

3. **Proposed Name.** For the sake of consistency, the form of the name shall be "The Diocese of _____" or "The _____ Network." Names may be geographical such as "Pittsburgh" or "the Mid West," symbolic such as "Forward in Faith" or "Living Waters," or for a saint such as "St. Stephen" or "St. James." Proposing an alternative name is suggested in the event that Provincial Council is aware that the first proposed name is already taken by another ACNA entity or is deemed inappropriate for other good reason.

4. **Recommended Nominees.** All groupings are to be united by a bishop (Article IV) except those "In Formation," which may be led by a Vicar General at the discretion of the Archbishop (Canon I.5.6). The College of Bishops has authority in the election of bishops as set out in Article X.5. Canon I.5.5 states that the application shall contain the name of the recommended nominee or nominees for Bishop. In the case of a newly formed originating body, Canon III.8.4.3 states that that body shall normally nominate two or three candidates. In the case of a single nominee the College may grant consent for his consecration, or in the case of multiple nominees the College may choose one and grant consent for his consecration (Article X). Canon III.8.3 provides further criteria for the episcopate, to include the stipulation that an eligible candidate for bishop will be a duly ordained male presbyter of at least 35 years of age.

Title V

5. **Name/Phone/Email Address of Primary Contact.** This individual will serve as the primary point of contact if the Provincial Council needs further information or clarification.

Note that the information requested in Items 5-12 should be provided on attached pages.

6. **Summary History and Mission.** This section provides an opportunity for groupings to give a brief summary of how and when they came together and how they've progressed over time with regard to local mission, ministry, governance, fellowship, discipleship, and common worship. It will be most helpful to include evidence of ministry that is bearing fruit in terms of souls coming to know Christ, congregations being planted, aspirants for Holy Orders being raised up, discipleship going deeper, and future plans. Again, this section need not be lengthy.

7. **Legal Status.** Each grouping of congregations should obtain 501(c)(3) status at the group level even if constituent congregations have their own non-profit status. Each congregation will want to have non-profit status if it intends to own property. Information on the status of group and constituent congregation insurance programs will be helpful. Also useful will be information on grouping and constituent congregation constitution and canons, by-laws, or other governing documents. It is not necessary to attach such documents to this application. Article IV recognized the right of each grouping to establish and maintain its own governance, constitution and canons not inconsistent with the provisions of the Constitution and Canons of the Province. While not required at this time, future canons may require each grouping to write a constitution and canons in support of the Provincial Constitution and Canons.

8. **Group and Constituent Congregations ASA (average Sunday attendance for all Sundays).**

   a. Give the total number of congregations with an ASA of 50 or more, and their current Anglican affiliations. Also, provide the name, location, and name of rector for each of these congregations.

   b. Identify every other congregation in the grouping by name, location, name of rector, ASA, and current Anglican affiliation.

   c. Only the total ASA for the entire grouping is required here. Count all congregations to include both those over and under an ASA of 50.

9. **Request for Waiver of Canon I.5.1 Standards.** As stated in 1 above, Canon I.5.1 provides for a possible exception to standards for those groupings that may fall short of the numerical standards and yet by virtue of other factors believe that they should not be placed in the temporary "In Formation" status. This section provides the opportunity to describe other factors that the Provincial Council might consider in granting full status as an exception to numerical standards. Such factors could include such matters as falling a bit short of twelve congregations with an ASA of 50 but having a collective ASA well above 1,000 or perhaps falling a bit short in both categories but demonstrating outstanding fruit in areas of evangelism, church planting and congregational growth.

10. **Vestry Verification.**

   a. This is a simple certification statement that the vestry or comparable governing board of each congregation in the grouping has officially subscribed to the Constitution and Canons of the Anglican Church in North America.

   b. This too is a certification statement that each constituent congregation has notified its domestic bishop, or overseas bishop if that congregation does not have a domestic bishop, of intention to change jurisdiction by becoming part of a new grouping that will receive its own bishop. By endorsing the Constitution and Canons, the ACNA bishops have already granted permission for their congregations to enter into new groupings. Therefore, while only notification rather than permission is required, it is only prudent, godly, and gracious for each congregation to discuss this matter with its bishop prior to a decision to become part of a new grouping. Note however, that approval of an application for recognition as a new ACNA grouping would not in and of itself constitute actual release and transfer from an overseas jurisdiction. Such actual release and transfer can come only when the appropriate overseas jurisdictional bishops have in fact granted said release and transfer. Note that as stated in Principle 2 above, no congregation is required to join a new grouping to be a member of the ACNA. A congregation may remain in its existing jurisdiction. Congregations that choose to remain under the overseas jurisdictions of Kenya, Uganda, and the Southern Cone are considered members of the Province by virtue of belonging to the Missionary Convocations of Kenya, Uganda, and the Southern Cone as stated in Article II. However, it should be noted that overseas jurisdiction has always been intended to be temporary, and the time may be approaching when overseas bishops will release their congregations to the jurisdiction of the ACNA and those congregations will then need to transfer to some grouping (diocese or network) within the ACNA.

11. **Budget.** Article XIII states that each grouping agrees to share in the cost of operating the Province as provided by canon. Canon I.9 states that the biblical principles of tithing shall be taught and encouraged at every level within the Province. While acknowledging the tithe as the underlying principle of the new province, it is accepted that some ACNA jurisdictions already have a giving procedure in place that cannot be immediately altered easily. Permission is therefore given to continue those current systems of giving that it is understood must stay in place for now, but with intentional steps and designs in place to move into the uniformity of the tithe as the standard for all the province. Congregations moving into new groupings are encouraged to give ten percent of local income to the new grouping, while each new grouping is encouraged to give ten percent of group income to the support of the cost of operating the Province. Each grouping therefore should describe in this section its current and proposed budget and the procedures and levels for congregational financial support of the grouping. A key concern should be to demonstrate plans for the support of the office of the local bishop, who will need minimal staffing, compensation, and operational funds even if part of his support comes from his position as rector of a parish. Although the tithe is encouraged at all levels, giving levels are voluntary. There will be some as yet undetermined time of transition with regard to giving to overseas provinces. Their fellowship, godly oversight, and mutual ministry are some of the greatest gifts we have received during these last few years. All ACNA groupings and congregations are expected to further develop the depth of Mission Partnerships with our overseas

**Title V**

brothers and sisters. Financial support to them will need to transition from the tithe portion of budgets to the world missions/outreach portion of budgets.

12. **Application Decision.** Describe briefly how the grouping and its constituent congregations decided to band together in submitting this application to include a description of the process used to recommend nominees for Bishop or Vicar General as appropriate.

13. **Other Relevant Information.** Use this section as needed to describe any other information pertinent to this application but not provided for above.

14. **Signatures.** The application needs to be signed by the governing committee or council of the grouping. These signatures constitute verification that the information provided is true and accurate. It is also an acknowledgement of and commitment to the Principles for the Application Process set out above.

Title V

# PROVINCE OF THE ANGLICAN CHURCH IN NORTH AMERICA (ACNA)

## APPLICATION TO THE PROVINCIAL COUNCIL FOR RECOGNITION AS A NEW DIOCESE/CLUSTER/NETWORK
## OR
## DIOCESE/CLUSTER/NETWORK "IN FORMATION"

| APPLICANT INFORMATION |
|---|

1. Recognition being sought -- Diocese/Cluster/Network <u>or</u> Diocese/Cluster/Network "In Formation":

2. Existing or proposed name for the Diocese/Cluster/Network (an alternative name may also be proposed):

3. a. Existing bishop(s) :

   b. Recommended nominee(s) for Bishop or for Vicar General (details on each nominee are attached):

4. Name/Phone/Email Address of Primary Contact if further information is needed:

| PROVIDE THE FOLLOWING INFORMATION (AS APPLICABLE) ON PAGES ATTACHED TO THIS FORM |
|---|
| ~~Founding dioceses should complete only #7 below~~ |

5. Describe in summary the history and mission of the group making application, including information regarding joint mission efforts, fruits of those efforts, anticipated growth and other related information.

6. Provide basic information regarding the –
   a.   legal status of the group making application, including incorporation, 501(c)(3) status, insurance, etc.; and
   b.   current rules of governance of the group and their intentions to develop a Constitution and Canons.

7. With regard to the group making application and each of the Congregations in the group:
   a.   List the names and total number of congregations with an ASA (average Sunday attendance for all Sundays) of 50 or above and their current Anglican affiliation.
   b.   List every other congregation, including its ASA, and its current Anglican affiliation.
   c.   Provide the collective ASA for the group.

8. If the group making application does not meet the requirements of Provisional Canon 1 for recognition as a Diocese/Cluster/Network (twelve Congregations with ASA of at least 50 and collective ASA of 1000) but, requests that the requirements be modified —please provide additional information to justify the modification.

9. With regard to each listed Congregation, verify that the Vestry of the Congregation –
   a.   has subscribed to the Constitution and Canons of the Anglican Church in North America; and
   b.   has notified their current domestic bishop of their intention to be part of the group making application.

10. Provide details of the current and proposed group budget, including support of the Bishop and his office.

11. Describe how the decision to make this application was made, including the involvement of each congregation.

12. Provide any other information you believe is relevant for consideration by the Provincial Council.

| SIGNATURES OF THE GROUP'S GOVERNING COMMITTEE OR COUNCIL |
|---|

We hereby make application for the requested recognition pursuant to the Constitution and Canons of the Anglican Church in North America and verify that the information provided is true and accurate. We also acknowledge and commit ourselves to the statement of Principles For The Applications Process contained in the Application Guidelines.

| Printed name, title and signature: | Date: |
|---|---|
|  |  |
|  |  |
|  |  |
|  |  |
|  |  |